**FILED**
CLERK, U.S. DISTRICT COURT

October 24, 2018

CENTRAL DISTRICT OF CALIFORNIA
BY: _____VPC_____ DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

No. ED 5:18-cv-02104-SJO-PLA

**Federal Trade Commission**,

    Plaintiff,

    v.

**Jason Cardiff, et al.,**

    Defendants.

**PRELIMINARY INJUNCTION WITH ASSET FREEZE, RECEIVER, AND OTHER EQUITABLE RELIEF AGAINST REDWOOD SCIENTIFIC TECHNOLOGIES, INC. (CA); REDWOOD SCIENTIFIC TECHNOLOGIES, INC. (NV); REDWOOD SCIENTIFIC TECHNOLOGIES, INC. (DE); IDENTIFY, LLC; ADVANCED MEN'S INSTITUTE PROLONGZ LLC; RUN AWAY PRODUCTS, LLC; AND CAROLS PLACE LIMITED PARTNERSHIP**

1

On October 3, 2018, Plaintiff, the Federal Trade Commission, filed its Complaint for Permanent Injunction and Other Equitable Relief pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), the Restore Online Shoppers' Confidence Act, ("ROSCA"), 15 U.S.C. §§ 8401-8405, and the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §§ 1693-1693r, and Section 6 of the Telemarketing and Consumer Fraud and Abuse Prevention Act (the "Telemarketing Act"), 15 U.S.C. § 6105, and moved, pursuant to Fed. R. Civ. P. 65(b), for a temporary restraining order, asset freeze, other equitable relief, and an order to show cause why a preliminary injunction should not issue against Defendants Jason Cardiff, Eunjung Cardiff, a/k/a Eunjung Lee, a/k/a Eunjung No, Danielle Cadiz, a/k/a Danielle Walker, Redwood Scientific Technologies, Inc. (California), Redwood Scientific Technologies, Inc. (Nevada), Redwood Scientific Technologies, Inc. (Delaware), Identify, LLC, Advanced Men's Institute Prolongz LLC, Run Away Products, LLC, and Carols Place Limited Partnership.

A Temporary Restraining Order was entered by this Court on October 10, 2018, setting a Preliminary Injunction hearing for October 23, 2018 at 2:00 p.m. Plaintiff and the Temporary Receiver appeared at the hearing. Plaintiff and the individual Defendants stipulated in advance of the October 23 hearing to an extension of the Temporary Restraining Order and a continuance of the Preliminary Injunction hearing as to the individual Defendants until such date as the Court set.

The seven Corporate Defendants were served with the Temporary Restraining Order on October 12, 2018 through their owners, directors, and officers. They did not answer or appear at the October 23 hearing to show cause why a Preliminary Injunction should not issue. The Court, therefore, now enters the following Preliminary Injunction as to the following Corporate Defendants: Redwood Scientific Technologies, Inc. (California); Redwood Scientific

Technologies, Inc. (Nevada); Redwood Scientific Technologies, Inc. (Delaware); Identify, LLC; Advanced Men's Institute Prolongz LLC; Run Away Products, LLC; and Carols Place Limited Partnership.

## FINDINGS OF FACT

The Court, having entered a Temporary Restraining Order and having considered the declarations, exhibits, and the memorandum of points and authorities filed in support thereof, and being otherwise advised, finds that:

A.     This Court has jurisdiction over the subject matter of this case, and there is good cause to believe that it will have jurisdiction over all parties hereto and that venue in this district is proper.

B.     In numerous instances, Defendants have misrepresented the effectiveness of their dissolvable film strip products for smoking cessation, weight loss, and improved male sexual performance, thereby misleading vulnerable consumers.  Defendants have then further injured many consumers by placing them on unauthorized continuity plans that resulted in additional charges to their credits cards or withdrawals from their debit accounts.  Defendants have also made false earnings claims as part of a multilevel marketing plan, and illegally caused more than one million robocalls to be made to consumers' telephones.

C.     There is good cause to believe that Defendants Jason Cardiff, Eunjung Cardiff, Danielle Cadiz, Redwood Scientific Technologies, Inc. (California), Redwood Scientific Technologies, Inc. (Nevada), Redwood Scientific Technologies, Inc. (Delaware), Identify, LLC, Advanced Men's Institute Prolongz LLC, Run Away Products, LLC, and Carols Place Limited Partnership have engaged in and are likely to engage in acts or practices that violate Sections 5(a) and 12 of the FTC Act, Section 4 of ROSCA, Section 907(a) of EFTA, EFTA's implementing Regulation E, and the Telemarketing Sales Rule ("TSR"), and that Plaintiff is therefore likely to prevail on the merits of this action.  As demonstrated by Defendants' own advertising and communications, consumer complaints,

declarations, and the additional documentation filed by the FTC, the Commission has established a likelihood of success in showing that Defendants have deceptively marketed TBX-FREE, Eupepsia Thin, and Prolongz, placed consumers on continuity plans without their prior authorization, charged consumers' credit cards and debited their bank accounts without authorization, caused robocalls to be made to more than one million consumers to induce the sale of goods or services, and misrepresented the earnings that people who join their multi-level marketing program are likely to make.

D.    The FTC is likely to succeed in showing that Corporate Defendants Redwood Scientific Technologies, Inc. (California), Redwood Scientific Technologies, Inc. (Nevada), Redwood Scientific Technologies, Inc. (Delaware), Identify, LLC, Advanced Men's Institute Prolongz LLC, Run Away Products, LLC, and Carols Place Limited Partnership operate as a common enterprise and are the alter egos of Jason Cardiff and Eunjung Cardiff.

E.    There is good cause to believe that immediate and irreparable harm will result from Defendants' ongoing violations of the FTC Act, ROSCA, EFTA and Regulation E, and the TSR unless Defendants are restrained and enjoined by order of this Court.

F.    There is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for consumers – including monetary restitution, rescission, or disgorgement – will occur from the sale, transfer, destruction or other disposition or concealment by Defendants of their assets or records, unless Defendants are restrained and enjoined by order of this Court.

G.    Good cause exists for continuing the receivership and the asset freeze imposed pursuant to the TRO issued in this case, and permitting Plaintiff and the Receiver to take expedited discovery.

H.     Weighing the equities and considering Plaintiff's likelihood of ultimate success on the merits, this Order is in the public interest.

I.     This Court has authority to issue this Order pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), Federal Rule of Civil Procedure 65, and the All Writs Act, 28 U.S.C. § 1651.

J.     No security is required of any agency of the United States for issuance of a Preliminary Injunction.  Fed. R. Civ. P. 65(c).

## DEFINITIONS

For the purpose of this Order, the following definitions shall apply:

A.     "Asset" means any legal or equitable interest in, right to, or claim to, any property, wherever located and by whomever held.

B.     "Continuity Program" means any plan, arrangement, or system under which a consumer is periodically charged for products or services, without prior notification by the seller before each charge.

C.     "Corporate Defendant(s)" means Redwood Scientific Technologies, Inc. (California), Redwood Scientific Technologies, Inc. (Nevada), Redwood Scientific Technologies, Inc. (Delaware), Identify, LLC, Advanced Men's Institute Prolongz LLC, Run Away Products, LLC, and Carols Place Limited Partnership, and each of their subsidiaries, affiliates, successors, and assigns.

D.     "Defendant(s)" means Corporate Defendants, Jason Cardiff, Eunjung Cardiff, and Danielle Cadiz, individually, collectively, or in any combination.

E.     "Document" is synonymous in meaning and equal in scope to the usage of "document" and "electronically stored information" in Federal Rule of Civil Procedure 34(a), Fed. R. Civ. P. 34(a), and includes writings, drawings, graphs, charts, photographs, sound and video recordings, images, Internet sites, web pages, websites, electronic correspondence, including email and instant messages, contracts, accounting data, advertisements, FTP Logs, Server Access Logs, books, written or printed records, handwritten notes, telephone logs,

5

telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, computer records, customer or sales databases, and any other electronically stored information, including Documents located on remote servers or cloud computing systems, and other data or data compilations from which information can be obtained directly or, if necessary, after translation into a reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term.

F. "Electronic Data Host" means any person or entity in the business of storing, hosting, or otherwise maintaining electronically stored information. This includes, but is not limited to, any entity hosting a website or server, and any entity providing "cloud based" electronic storage.

G. "Individual Defendant(s)" means Jason Cardiff, Eunjung Cardiff, and Danielle Cadiz, individually, collectively, or in any combination.

H. "Negative Option" means, in an offer or agreement to sell or provide any good or service, a provision under which the consumer's silence or failure to take an affirmative action to reject a good or service or to cancel the agreement is interpreted by the seller or provider as acceptance or continuing acceptance of the offer or agreement.

I. "Person" means a natural person, organization, or other legal entity, including a corporation, partnership, proprietorship, association, cooperative, or any other group or combination acting as an entity.

J. "Preauthorized Electronic Fund Transfer" means an electronic fund transfer authorized in advance to recur at substantially regular intervals.

K. "Receiver" means the receiver identified in Section XIV of this Order and any deputy receivers that shall be named by the receiver.

L. "Receivership Entities" means Corporate Defendants as well as any other entity that has conducted any business related to Defendants' marketing and sale of dissolvable film strips and promotion of the Rengalife multilevel marketing

program, including receipt of Assets derived from any activity that is the subject of the Complaint in this matter, and that the Receiver determines is controlled or owned by any Defendant.

M. "Receivership Property" means any Assets, wherever located, that are: (1) owned, controlled, or held by or for the benefit of the Receivership Entities; (2) in the actual or constructive possession of the Receivership Entities; or (3) owned, controlled, or held by, or in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, trust, or other entity directly or indirectly owned or controlled by the Receivership Entities.

## ORDER

## I. PROHIBITED BUSINESS ACTIVITIES

**IT IS THEREFORE ORDERED** that Corporate Defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, or offering for sale of any goods, services, or programs are preliminarily restrained and enjoined from misrepresenting or assisting others in misrepresenting, expressly or by implication:

A. Any material fact about TBX-FREE, Eupepsia Thin, or Prolongz, including, but not limited to:

1. That TBX-FREE is an effective smoking cessation product;

2. That TBX-FREE is more effective than either nicotine patches or nicotine gum in enabling cigarette smokers to stop smoking;

3. That TBX-FREE enables many cigarette smokers to quit in seven to ten days;

4. That TBX-FREE has an 88% success rate, including among people who have smoked cigarettes for more than five years;

5. That smokers should not need to purchase more than one month of TBX-FREE;

6. That clinical studies have been conducted on TBX-FREE, and have shown that TBX-FREE is an effective smoking cessation product;

7. That TBX-FREE has been proven in clinical studies to be more effective than nicotine patches or nicotine gum in enabling smokers to stop smoking;

8. That clinical studies of TBX-FREE conducted on 10,600 people have shown that TBX-FREE has an "88% success rate";

9. That The New England Journal of Medicine ("NEJM"), Harvard Health Publications, and Johns Hopkins University have published clinical studies proving that TBX-FREE is an effective smoking cessation product;

10. That NEJM's clinical studies showed that TBX-FREE is ten times more effective for smoking cessation than nicotine replacement therapy;

11. That Eupepsia Thin is an effective appetite suppressant and weight loss aid;

12. That Eupepsia Thin starts working in less than 20 seconds, and suppresses a user's appetite within minutes;

13. That Eupepsia Thin enables users to lose 10, 20, or even 100 pounds without dieting, giving up their favorite foods, or increasing their exercise;

14. That Eupepsia Thin users can lose 15 pounds their first month without dieting or changing their food or lifestyle;

15. That Eupepsia Thin users can lose as much as 20 pounds in one month and as much as 50 pounds in three months;

8

16. That Eupepsia Thin is more effective at causing weight loss than conventional calorie reduction and meal plans;

17. That Eupepsia Thin enables consumers to avoid gaining back weight they lose, without any lifestyle changes.

18. That clinical studies have been conducted on Eupepsia Thin and those studies show that it is an effective appetite suppressant and weight loss aid;

19. That Prolongz substantially increases ejaculation control and the duration of sex;

20. That Prolongz treats or prevents premature ejaculation;

21. That Prolongz is clinically proven to increase ejaculation control and the duration of sex for more than 97% of users;

22. That Eupepsia Thin is made in the United States;

23. That individuals appearing in advertising for Eupepsia Thin used that product successfully to lose weight; and

24. That consumers who are not satisfied with the product they purchased will get their money back;

B. Any material fact about any multi-level marketing plan, including, but not limited to, the income that participants in the plan are likely to earn; and

C. Any other fact material to consumers concerning any good or service, such as: the total costs; any material restrictions, limitations, or conditions; or any material aspect of its performance, efficacy, nature, or central characteristics.

## II. PROHIBITIONS AGAINST UNFAIR AND DECEPTIVE NEGATIVE OPTION MARKETING PRACTICES

**IT IS FURTHER ORDERED** that Corporate Defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or

9

participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the sale of any good or service are preliminarily restrained and enjoined from charging, causing to be charged, assisting others in charging, or attempting to charge any consumer in any sale of a good or service sold through a negative option without:

A. Clearly and conspicuously disclosing all material terms of the negative option features before obtaining the consumer's billing information;

B. Obtaining a consumer's express informed consent, written or similarly authorized, to the negative option features before making any charge; and

C. Providing a simple mechanism for a consumer to stop recurring charges from being placed on the consumer's credit card, debit card, or other financial account.

## III. PROHIBITIONS AGAINST UNAUTHORIZED CHARGES

**IT IS FURTHER ORDERED** that Corporate Defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are preliminarily restrained and enjoined from charging, causing to be charged, assisting others in charging, or attempting to charge any consumer for any good or service without first obtaining the consumer's express informed consent, written or similarly authorized, to the charge.

## IV. PROHIBITIONS AGAINST DEBITING CONSUMERS' BANK ACCOUNTS WITHOUT AUTHORIZATION

**IT IS FURTHER ORDERED** that Corporate Defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the sale of any good or service, are preliminarily restrained and enjoined from:

A. Failing to timely obtain written authorization signed or similarly authenticated by the consumer for any Preauthorized Electronic Fund Transfer from a consumer's account before initiating any Preauthorized Electronic Fund Transfer; and

B. Failing to provide to the consumer a copy of a valid written authorization signed or similarly authenticated by the consumer for any Preauthorized Electronic Fund Transfer from a consumer's account.

## V. PROHIBITION OF PRERECORDED MARKETING CALLS

**IT IS FURTHER ORDERED** that Corporate Defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from initiating or causing the initiation of outbound telephone calls delivering prerecorded messages to induce the sale of goods or services.

## VI. PROHIBITION ON RELEASE OF CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Corporate Defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from:

A. Selling, renting, leasing, transferring, or otherwise disclosing, the name, address, birth date, telephone number, email address, credit card number, bank account number, Social Security number, or other financial or identifying information of any person that any Defendant obtained in connection with any activity that pertains to the subject matter of this Order; and

B. Benefitting from or using the name, address, birth date, telephone number, email address, credit card number, bank account number, Social Security number, or other financial or identifying information of any person that any

Defendant obtained in connection with any activity that pertains to the subject matter of this Order.

Provided, however, that Corporate Defendants may disclose such identifying information to a law enforcement agency, to their attorneys as required for their defense, as required by any law, regulation, or court order, or in any filings, pleadings or discovery in this action in the manner required by the Federal Rules of Civil Procedure and by any protective order in the case.

## VII. ASSET FREEZE

**IT IS FURTHER ORDERED** that Corporate Defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are preliminarily restrained and enjoined from:

A. Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, relinquishing, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any Assets that are:

1. Owned or controlled, directly or indirectly, by any Defendant, including, but not limited to, those for which any Defendant is a signatory on the account;

2. Held, in part or in whole, for the benefit of any Defendant;

3. In the actual or constructive possession of any Defendant; or

4. Owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant.

B. Opening or causing to be opened any safe deposit boxes, commercial mail boxes, or storage facilities titled in the name of any Defendant or subject to

access by any Defendant, except as necessary to comply with written requests from the Receiver acting pursuant to its authority under this Order;

C.  Incurring charges or cash advances on any credit, debit, or ATM card issued in the name, individually or jointly, of any Corporate Defendant or any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Defendant, or of which any Defendant is an officer, director, member, or manager. This includes any corporate bankcard or corporate credit card account for which any Defendant is, or was on the date that this Order was signed, an authorized signer; or

D.  Cashing any checks or depositing any money orders or cash received from consumers, clients, or customers of any Defendant;

The Assets affected by this Section shall include: (1) all Assets of Defendants as of the time this Order is entered; (2) all Assets obtained by Defendants after this Order is entered if those Assets are derived from any activity that is the subject of the Complaint in this matter or that is prohibited by this Order; and (3) all Assets owned or controlled, directly or indirectly, by Defendants, including, but not limited to, the Jurikel Family Trust, or Carols Place Trust. This Section does not prohibit any transfers to the Receiver or repatriation of foreign Assets specifically required by this Order.

## VIII.  DUTIES OF ASSET HOLDERS AND OTHER THIRD PARTIES

**IT IS FURTHER ORDERED** that any financial or brokerage institution, Electronic Data Host, credit card processor, payment processor, merchant bank, acquiring bank, independent sales organization, third party processor or vendor, payment gateway, insurance company, business entity, or person who receives actual notice of this Order (by service or otherwise) that:

(a)  has held, controlled, or maintained custody, through an account or otherwise, of any Document on behalf of any Corporate Defendant or any Asset that has been owned or controlled,

13

directly or indirectly, by any Corporate Defendant; held, in part or in whole, for the benefit of any Corporate Defendant; in the actual or constructive possession of any Corporate Defendant; or owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Corporate Defendant;

(b)     has held, controlled, or maintained custody, through an account or otherwise, of any Document or Asset associated with credits, debits, or charges made on behalf of any Corporate Defendant, including reserve funds held by payment processors, credit card processors, merchant banks, acquiring banks, independent sales organizations, third party processors or vendors, payment gateways, insurance companies, or other entities; or

(c)     has extended credit to any Corporate Defendant, including through a credit card account, shall:

A.      Hold, preserve, and retain within its control and prohibit the withdrawal, removal, alteration, assignment, transfer, pledge, encumbrance, disbursement, dissipation, relinquishment, conversion, sale, or other disposal of any such Document or Asset, as well as all Documents or other property related to such Assets, except by further order of this Court;

B.      Deny any person, except the Receiver, access to any safe deposit box, commercial mail box, or storage facility that is titled in the name of any Corporate Defendant, either individually or jointly, or otherwise subject to access by any Corporate Defendant;

C.     Provide Plaintiff's counsel and the Receiver, unless already provided pursuant to the TRO previously issued on October 10, 2018 ("TRO"), within three (3) days of receiving a copy of this Order, a sworn statement setting forth:

1.     The identification number of each such account or Asset;

2.     The balance of each such account, or a description of the nature and value of each such Asset as of the close of business on the day on which this Order is served, and, if the account or other Asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other Asset was remitted; and

3.     The identification of any safe deposit box, commercial mail box, or storage facility that is either titled in the name, individually or jointly, of any Corporate Defendant, or is otherwise subject to access by any Corporate Defendant; and

D.     Upon the request of Plaintiff's counsel or the Receiver, promptly provide Plaintiff's counsel and the Receiver with copies of all records or other Documents pertaining to any account covered by this Section or Asset, including originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, including wire transfers and wire transfer instructions, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and all logs and records pertaining to safe deposit boxes, commercial mail boxes, and storage facilities. Provided, however, that this Section does not prohibit any transfers to the Receiver or repatriation of foreign Assets specifically required by this Order.

## IX. FINANCIAL DISCLOSURES

**IT IS FURTHER ORDERED** that each Corporate Defendant, within five (5) days of service of this Order upon them, shall prepare and deliver to Plaintiff's counsel and the Receiver:

A.      A completed financial statement on the form attached to this Order as **Attachment A** (Financial Statement of Corporate Defendant); and

B.      A completed **Attachment B** (IRS Form 4506, Request for Copy of a Tax Return).

## X. FOREIGN ASSET REPATRIATION

**IT IS FURTHER ORDERED** that within five (5) days following the service of this Order, each Corporate Defendant shall:

A.      Provide Plaintiff's counsel and the Receiver with a full accounting, verified under oath and accurate as of the date of this Order, of all Assets, Documents, and accounts outside of the United States that are: (1) titled in the name, individually or jointly, of any Defendant; (2) held by any person or entity for the benefit of any Defendant or for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Defendant;

B.      Take all steps necessary to provide the Receiver and Plaintiff's counsel access to all Documents and records that may be held by third parties located outside of the territorial United States of America, including signing the Consent to Release of Financial Records, appended to this Order as **Attachment C.**

C.      Transfer to the territory of the United States and deliver to the Receiver all Documents and Assets located in foreign countries that are: (1) titled in the name, individually or jointly, of any Corporate Defendant, or any trust or other entity for which any Corporate Defendant is a beneficiary or trustee; (2) held

by any person or entity for the benefit of any Corporate Defendant or for the benefit of any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Corporate Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Corporate Defendant; and

D.     The same business day as any repatriation, (1) notify the Receiver and Plaintiff's counsel of the name and location of the financial institution or other entity that is the recipient of such Documents or Assets; and (2) serve this Order on any such financial institution or other entity.

## XI.   NON-INTERFERENCE WITH ASSET FREEZE AND REPATRIATION

**IT IS FURTHER ORDERED** that Corporate Defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby enjoined from taking any action, directly or indirectly, which may result in the encumbrance, transfer, relocation, or dissipation of domestic or foreign Assets, or in the hindrance of the repatriation required by this Order, including, but not limited to:

A.     Sending any communication or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement until such time that all Defendants' Assets have been fully repatriated pursuant to this Order or any Temporary Restraining Order issued by this Court; or

B.     Notifying any trustee, protector, or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a court order, until such time that all Defendants' Assets have been fully repatriated pursuant to this Order or any Temporary Restraining Order issued by this Court.

17

## XII. PRESERVATION OF RECORDS

**IT IS FURTHER ORDERED** that Corporate Defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from:

A.     Destroying, erasing, falsifying, writing over, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, Documents that relate to:  (1) the business, business practices, Assets, or business or personal finances of any Defendant; (2) the business practices or finances of entities directly or indirectly under the control of any Defendant; or (3) the business practices or finances of entities directly or indirectly under common control with any other Defendant; and

B.     Failing to create and maintain Documents that, in reasonable detail, accurately, fairly, and completely reflect Corporate Defendants' incomes, disbursements, transactions, and use of Corporate Defendants' Assets.

## XIII. REPORT OF NEW BUSINESS ACTIVITY

**IT IS FURTHER ORDERED** that Corporate Defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from creating, operating, or exercising any control over any business entity, whether newly formed or previously inactive, including any partnership, limited partnership, joint venture, sole proprietorship, or corporation, without first providing Plaintiff's counsel and the Receiver with a written statement disclosing: (1) the name of the business entity; (2) the address and telephone number of the business entity; (3) the names of the business entity's officers, directors, principals, managers, and employees; and (4) a detailed description of the business entity's intended activities.

## XIV. CONTINUATION OF THE RECEIVERSHIP

**IT IS FURTHER ORDERED** that Robb Evans & Associates shall continue to serve as the Receiver of the Receivership Entities with full powers of an equity receiver. The Receiver shall be solely the agent of this Court in acting as Receiver under this Order.

## XV. DUTIES AND AUTHORITY OF RECEIVER

**IT IS FURTHER ORDERED** that the Receiver is directed and authorized to accomplish the following:

A.     Assume full control of the Receivership Entities by removing, as the Receiver deems necessary or advisable, any director, officer, independent contractor, employee, attorney, or agent of any Receivership Entity from control of, management of, or participation in, the affairs of the Receivership Entity;

B.     Take exclusive custody, control, and possession of all Assets and Documents of, or in the possession, custody, or under the control of, any Receivership Entity covered by Part XIV of this Order, wherever situated;

C.     Take exclusive custody, control, and possession of all Documents or Assets associated with credits, debits, or charges made on behalf of any Receivership Entity, wherever situated, including reserve funds held by payment processors, credit card processors, merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies, or other entities;

D.     Conserve, hold, manage, and prevent the loss of all Receivership Property, and perform all acts necessary or advisable to preserve the value of those Assets. The Receiver shall assume control over the income and profits therefrom and all sums of money now or hereafter due or owing to the Receivership Entities. The Receiver shall have full power to sue for, collect, and receive, all Receivership Property and all Assets of other persons or entities whose interests are now under the direction, possession, custody, or control of, the Receivership Entities.

Provided, however, that the Receiver shall not attempt to collect any amount from a consumer if the Receiver believes the consumer's debt to the Receivership Entities has resulted from the deceptive acts or practices or other violations of law alleged in the Complaint in this matter, without prior Court approval;

    E.    Take exclusive custody, control, and possession of the following valuable articles in the possession, custody, or under the control of, Corporate Defendants, including their officers, directors, managers, employees, or owners, wherever located:

1. Ladies 14K yellow gold and diamond ring. Insured for $11,813.

2. Ladies diamond pendent setting 14 KT. Insured for $23,730.

3. Ladies Diamond Stud Earrings. Insured for $34,125.

4. Ladies Diamond Fancy Ring. Insured for $31,763.

5. Mens Roadster SM WG/WG Paved Bezel. Insured for $32,550.

6. Ladies handmade platinum diamond bracelet. Insured for $46,725

7. Mens GTS 18KT white gold Daytona Rolex. Insured for $42,000.

8. 5.08 ct round diamond I color S12 Clarity EGL platinum ring. Insured for $102,076.

9. Mens Rolex Yacht-Master 18K gold watch. Insured for $14,125.

10. Ladies Love Bra yellow gold 4 dia[] 17 cm. Insured for $9,819.

11. Ladies yellow gold ring, Serial #UD0824. Insured for $2,284.

12 Ladies fancy diamond bracelet. Insured for $39,397.

13. Mens Rolex watch 18KT gold Pearlmaster. Insured for $33,180.

14. Tiffany pearl bracelet.  Insured for $3,166.

15. Ladies emerald and diamond ring.  Insured for $24,856.

16. IWC Portofino moon phase watch.  Insured for $8,000.

17. Pre-owner Ladies stainless steel Patek Phili[ppe].  Insured for $8,145.

18. Rolex Vintage Thund[er].  Insured for $9,000.

19. Stuart Moore "Aronade" platinum diamond.  Insured for $12,650.

20. Peter Philippe annual calendar wristwatch.  Insured for $41,300.

21. 18K yellow gold Tiffany Diamond Bracelet.  #B0164.  Insured for $7,600.

22. "Living Room" Artist Romero Britto.  Insured for $12,600.

23. Hermes Birkin bag, size 35 (Togo leather; in Sienna color).  Insured for $20,000.

24. Hermes Birkin bag, size 35 (Togo leather; Curry).  Insured for $20,000

25. Ladies ring round center stone 8.5 cts, VS2 with diamonds.  Insured for $532,000.

26. MenOCOs Patek Philippe gold calendar watch model 5035J.  Insured for $28,500.

Corporate Defendants, including their officers, directors, managers, employees, or owners, shall deliver all of the foregoing articles to the Receiver at a place and time to be determined by the Receiver.

F.     Obtain, conserve, hold, manage, and prevent the loss of all Documents of the Receivership Entities, and perform all acts necessary or advisable to preserve such Documents.  The Receiver shall:  divert mail; preserve all Documents of the Receivership Entities that are accessible via electronic means

21

(such as online access to financial accounts and access to electronic documents held onsite or by Electronic Data Hosts, by changing usernames, passwords or other log-in credentials; take possession of all electronic Documents of the Receivership Entities stored onsite or remotely; take whatever steps necessary to preserve all such Documents; and obtain the assistance of the FTC's Digital Forensic Unit for the purpose of obtaining electronic documents stored onsite or remotely.

G.     Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

H.     Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order, and to incur, or authorize the making of, such agreements as may be necessary and advisable in discharging his or her duties as Receiver.  The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Entities prior to the date of entry of this Order, except payments that the Receiver deems necessary or advisable to secure Assets of the Receivership Entities, such as rental payments;

I.     Take all steps necessary not already taken pursuant to the TRO to secure and take exclusive custody of each location from which the Receivership Entities operate their businesses.  Such steps may include, but are not limited to, any of the following, as the Receiver deems necessary or advisable:  (1) securing the location by changing the locks and alarm codes and disconnecting any Internet access or other means of access to the computers, servers, internal networks, or other records maintained at that location; and (2) requiring any persons present at the location to leave the premises, to provide the Receiver with proof of identification, and/or to demonstrate to the satisfaction of the Receiver that such

persons are not removing from the premises Documents or Assets of the Receivership Entities, including, but not limited to, telephones, computers, and tablets paid for by the Receivership Entities. Law enforcement personnel, including, but not limited to, police or sheriffs, may assist the Receiver in implementing these provisions in order to keep the peace and maintain security. If requested by the Receiver, the United States Marshal will provide appropriate and necessary assistance to the Receiver to implement this Order and is authorized to use any necessary and reasonable force to do so;

J.     Take all steps necessary to prevent the modification, destruction, or erasure of any web page or website registered to and operated, in whole or in part, by any Corporate Defendants, and to provide access to all such web page or websites to Plaintiff's representatives, agents, and assistants, as well as Corporate Defendants and their representatives;

K.     Enter into and cancel contracts and purchase insurance as advisable or necessary;

L.     Prevent the inequitable distribution of Assets and determine, adjust, and protect the interests of consumers who have transacted business with the Receivership Entities;

M.     Make an accounting, as soon as practicable, of the Assets and financial condition of the receivership and file the accounting with the Court and deliver copies thereof to all parties;

N.     Institute, compromise, adjust, appear in, intervene in, defend, dispose of, or otherwise become party to any legal action in state, federal or foreign courts or arbitration proceedings as the Receiver deems necessary and advisable to preserve or recover the Assets of the Receivership Entities, or to carry out the Receiver's mandate under this Order, including, but not limited to, actions challenging fraudulent or voidable transfers;

O.     Issue subpoenas to obtain Documents and records pertaining to the Receivership, and conduct discovery in this action on behalf of the receivership estate, in addition to obtaining other discovery as set forth in this Order;

P.     Open one or more bank accounts at designated depositories for funds of the Receivership Entities.  The Receiver shall deposit all funds of the Receivership Entities in such designated accounts and shall make all payments and disbursements from the receivership estate from such accounts.  The Receiver shall serve copies of monthly account statements on all parties;

Q.     Maintain accurate records of all receipts and expenditures incurred as Receiver;

R.     Allow Plaintiffs' representatives, agents, and assistants, as well as Corporate Defendants' representatives reasonable access to the premises of the Receivership Entities, or any other premises where the Receivership Entities conduct business.  The purpose of this access shall be to inspect and copy any and all books, records, Documents, accounts, and other property owned by, or in the possession of, the Receivership Entities or their agents.  The Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access;

S.     Allow Plaintiffs' representatives, agents, and assistants, as well as Corporate Defendants' representatives reasonable access to all Documents in the possession, custody, or control of the Receivership Entities;

T.     Cooperate with reasonable requests for information or assistance from any state or federal civil or criminal law enforcement agency;

U.     Suspend business operations of the Receivership Entities if in the judgment of the Receiver such operations cannot be continued legally and profitably;

V.     If the Receiver identifies a nonparty entity as a Receivership Entity, promptly notify the entity as well as the parties, and inform the entity that it can

24

challenge the Receiver's determination by filing a motion with the Court. Provided, however, that the Receiver may delay providing such notice until the Receiver has established control of the nonparty entity and its assets and records, if the Receiver determines that notice to the entity or the parties before the Receiver establishes control over the entity may result in the destruction of records, dissipation of assets, or any other obstruction of the Receiver's control of the entity;

W.     If in the Receiver's judgment the business operations cannot be continued legally and profitably, take all steps necessary to ensure that any of the Receivership Entities' web pages or websites relating to the activities alleged in the Complaint cannot be accessed by the public, or are modified for consumer education and/or informational purposes, and take all steps necessary to ensure that any telephone numbers associated with the Receivership Entities cannot be accessed by the public, or are answered solely to provide consumer education or information regarding the status of operations; and

X.     File timely reports with the Court at reasonable intervals or as otherwise directed by the Court.

## XVI.  TRANSFER OF RECEIVERSHIP PROPERTY TO RECEIVER

**IT IS FURTHER ORDERED** that, to the extent not already done pursuant to the TRO, Corporate Defendants and any other person with possession, custody or control of  property of, or records relating to, the Receivership Entities, fully cooperate with and assist the Receiver in taking and maintaining possession, custody, or control of the Assets and Documents of the Receivership Entities and immediately provide, transfer, or deliver to the Receiver possession, custody, and control of, the following:

A.     All Assets held by or for the benefit of the Receivership Entities;

B.     All Documents or Assets associated with credits, debits, or charges made on behalf of any Receivership Entity, wherever situated, including reserve

funds held by payment processors, credit card processors, merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies, or other entities;

C.      All Documents of or pertaining to the Receivership Entities;

D.      All computers, electronic devices, mobile devices, and machines used to conduct the business of the Receivership Entities;

E.      All Assets and Documents belonging to other persons or entities whose interests are under the direction, possession, custody, or control of the Receivership Entities; and

F.      All keys, codes, user names, passwords, and all other means of authentication necessary to gain or to secure access to any Assets or Documents of or pertaining to the Receivership Entities, including access to their business premises, means of communication, mobile phones, accounts, computer systems (onsite and remote), Electronic Data Hosts, or other property.

In the event that any person or entity fails to deliver or transfer any Asset, Document, or otherwise fails to comply with any provision of this Section, the Receiver may file an Affidavit of Non-Compliance regarding the failure and a motion seeking compliance or a contempt citation.

## XVII. PROVISION OF INFORMATION TO RECEIVER

**IT IS FURTHER ORDERED** that, to the extent not already done pursuant to the TRO, Corporate Defendants shall immediately provide to the Receiver:

A.      A list of all Assets and accounts of the Receivership Entities that are held in any name other than the name of a Receivership Entity, or by any person or entity other than a Receivership Entity;

B.      A list of all Assets and accounts of Jason Cardiff and Eunjung Cardiff that are held in any name other than their own names, or by any person or entity other than themselves;

C.    A list of all agents, employees, officers, attorneys, servants and those persons in active concert and participation with the Receivership Entities, or who have been associated or done business with the Receivership Entities; and

D.    A description of any documents covered by attorney-client privilege or attorney work product, including files where such documents are likely to be located, authors or recipients of such documents, and search terms likely to identify such electronic documents.

## XVIII.    COOPERATION WITH THE RECEIVER

**IT IS FURTHER ORDERED** that Corporate Defendants, Receivership Entities, Corporate Defendants' or Receivership Entities' officers, agents, employees, and attorneys, all other persons in active concert or participation with any of them, and any other person with possession, custody, or control of:

1.    Receivership Property or records relating to Receivership Property; or

2.    Other records relating to the Receivership Entities;

who receive actual notice of this Order shall fully cooperate with and assist the Receiver.  This cooperation and assistance shall include, but is not limited to, providing information to the Receiver that the Receiver deems necessary to exercise the authority and discharge the responsibilities of the Receiver under this Order; providing any keys, codes, user names, passwords, and all other means required to access any computers, electronic devices, mobile devices, machines (onsite or remotely), and any cloud account (including specific method to access account) or electronic file in any medium; advising all persons who owe money to any Receivership Entity that all debts should be paid directly to the Receiver; and transferring funds at the Receiver's direction and producing records related to the Receivership Property and sales of the Receivership Entities.

## XIX. NON-INTERFERENCE WITH THE RECEIVER

**IT IS FURTHER ORDERED** that Corporate Defendants, Receivership Entities, Corporate Defendants' or Receivership Entities' officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, and any other person served with a copy of this Order, are hereby restrained and enjoined from directly or indirectly:

A.      Interfering with the Receiver's efforts to manage, or take custody, control, or possession of, the Assets or Documents subject to the receivership;

B.      Transacting any of the business of the Receivership Entities;

C.      Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any Assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Entities; or

D.      Refusing to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any order of this Court.

## XX. STAY OF ACTIONS

**IT IS FURTHER ORDERED** that, except by leave of this Court, during the pendency of the receivership ordered herein, Corporate Defendants, their officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, and their corporations, subsidiaries, divisions, or affiliates, and all investors, creditors, stockholders, lessors, customers and other persons seeking to establish or enforce any claim, right, or interest against or on behalf of Corporate Defendants, and all others acting for or on behalf of such persons, are hereby enjoined from taking action that would interfere with the exclusive jurisdiction of this Court over the Assets or Documents of the Receivership Entities, including, but not limited to:

A.    Filing or assisting in the filing of a petition for relief under the Bankruptcy Code, 11 U.S.C. § 101 et seq., or of any similar insolvency proceeding on behalf of the Receivership Entities;

B.    Commencing, prosecuting, or continuing a judicial, administrative, or other action or proceeding against the Receivership Entities, including the issuance or employment of process against the Receivership Entities, except that such actions may be commenced if necessary to toll any applicable statute of limitations;

C.    Filing or enforcing any lien on any Asset of the Receivership Entities, taking or attempting to take possession, custody, or control of any Asset of the Receivership Entities; or attempting to foreclose, forfeit, alter, or terminate any interest in any Asset of the Receivership Entities, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise.

Provided, however, that this Order does not stay:  (1) the commencement or continuation of a criminal action or proceeding; (2) the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or (3) the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

## XXI.  COMPENSATION OF RECEIVER

**IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the Assets now held by, in the possession or control of, or which may be received by, the Receivership Entities.  The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after

the date of entry of this Order.  The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

## XXII.  RECEIVER'S BOND

**IT IS FURTHER ORDERED** that the Receiver shall file with the Clerk of this Court, unless already filed, a bond in the sum of $15,000 with sureties to be approved by the Court, conditioned that the Receiver will well and truly perform the duties of the office and abide by and perform all acts the Court directs.  28 U.S.C. § 754.

## XXIII.  DISTRIBUTION OF ORDER BY DEFENDANTS

**IT IS FURTHER ORDERED** that Corporate Defendants shall immediately provide a copy of this Order to each affiliate, telemarketer, marketer, sales entity, successor, assign, member, officer, director, employee, agent, independent contractor, client, attorney, spouse, subsidiary, division, and representative of any Corporate Defendant, and shall, within ten (10) days from the date of entry of this Order, provide Plaintiff and the Receiver with a sworn statement that this provision of the Order has been satisfied, which statement shall include the names, physical addresses, phone number, and email addresses of each such person or entity who received a copy of the Order.  Furthermore, Corporate Defendants shall not take any action that would encourage officers, agents, members, directors, employees, salespersons, independent contractors, attorneys, subsidiaries, affiliates, successors, assigns or other persons or entities in active concert or participation with them to disregard this Order or believe that they are not bound by its provisions.

## XXIV.  EXPEDITED DISCOVERY

**IT IS FURTHER ORDERED** that, notwithstanding the provisions of Fed. R. Civ. P. 26(d) and (f) and 30(a)(2)(A)(iii), and pursuant to Fed. R. Civ. P. 30(a), 34, and 45, Plaintiff and the Receiver are granted leave, from any time after service of this Order until a Rule 16(b) scheduling order is issued, to conduct limited

expedited discovery for the purpose of discovering: (1) the nature, location, status, and extent of Defendants' Assets; or (2) compliance with this Order. The limited expedited discovery set forth in this Section shall proceed as follows:

A. Plaintiff and the Receiver may take the deposition of parties and non-parties. Forty-eight (48) hours notice shall be sufficient notice for such depositions. The limitations and conditions set forth in Rules 30(a)(2)(B) and 31(a)(2)(B) of the Federal Rules of Civil Procedure regarding subsequent depositions of an individual shall not apply to depositions taken pursuant to this Section. Any such deposition taken pursuant to this Section shall not be counted towards the deposition limit set forth in Rules 30(a)(2)(A) and 31(a)(2)(A) and depositions may be taken by telephone or other remote electronic means.

B. Plaintiff and the Receiver may serve upon parties requests for production of Documents or inspection that require production or inspection within five (5) days of service, provided, however, that three (3) days of notice shall be deemed sufficient for the production of any such Documents that are maintained or stored only in an electronic format.

C. Plaintiff and the Receiver may serve upon parties interrogatories that require response within five (5) days after Plaintiff serves such interrogatories.

D. Plaintiff and the Receiver may serve subpoenas upon non-parties that direct production or inspection within five (5) days of service.

E. Service of discovery upon a party to this action, taken pursuant to this Section, shall be sufficient if made by facsimile, email, or by overnight delivery.

F. Any expedited discovery taken pursuant to this Section is in addition to, and is not subject to, the limits on discovery set forth in the Federal Rules of Civil Procedure and the Local Rules of this Court. The expedited discovery permitted by this Section does not require a meeting or conference of the parties, pursuant to Rules 26(d) & (f) of the Federal Rules of Civil Procedure.

G. The Parties are exempted from making initial disclosures under Fed. R. Civ. P. 26(a)(1) until further order of this Court.

## XXV. SERVICE OF THIS ORDER

**IT IS FURTHER ORDERED** that copies of this Order may be served by any means, including facsimile, electronic mail or other electronic messaging, personal or overnight delivery, U.S. Mail or FedEx, by agents and employees of Plaintiff, by any law enforcement agency, or by private process server, upon any Corporate Defendant or any person (including any financial institution) that may have possession, custody or control of any Asset or Document of any Defendant, or that may be subject to any provision of this Order pursuant to Rule 65(d)(2) of the Federal Rules of Civil Procedure. For purposes of this Section, service upon any branch, subsidiary, affiliate or office of any entity shall effect service upon the entire entity.

## XXVI. CORRESPONDENCE AND SERVICE ON PLAINTIFF

**IT IS FURTHER ORDERED** that, for the purpose of this Order, all correspondence and service of pleadings on Plaintiff shall be addressed to:

> Elizabeth Sanger
> James A. Prunty
> Edwin Rodriguez
> Shira D. Modell
> Federal Trade Commission
> 600 Pennsylvania Ave., NW
> Washington, DC 20580
> Tel: (202) 326-2757, -2438, -3147, -3116
> Fax: (202) 326-3259
> Email: esanger@ftc.gov; jprunty@ftc.gov; erodriguez@ftc.gov; smodell@ftc.gov

## XXVII. DURATION OF THE ORDER

**IT IS FURTHER ORDERED** that this Order shall expire upon entry of a final judgment in this case.

## XXVIII.  RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes.

SO ORDERED, this 24th day of October, 2018, at 3:00 p.m.

S. James Otero

_____

UNITED STATES DISTRICT JUDGE