

**FILED**
CLERK, U.S. DISTRICT COURT

May 16, 2019

CENTRAL DISTRICT OF CALIFORNIA
BY: _____VPC_____ DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**Federal Trade Commission**,

    Plaintiff,

    v.

**JASON CARDIFF**, individually and as
an owner, officer, director, or
member of
REDWOOD SCIENTIFIC
TECHNOLOGIES, INC., a
California corporation;
REDWOOD SCIENTIFIC
TECHNOLOGIES, Inc., a
Nevada corporation;
REDWOOD SCIENTIFIC
TECHNOLOGIES, Inc., a
Delaware corporation;
IDENTIFY, LLC, a Wyoming
limited liability company;
ADVANCED MEN'S
INSTITUTE PROLONGZ LLC,
d/b/a AMI, a California limited

No. ED 5:18-cv-02104-SJO-PLAx

[PROPOSED] STIPULATED
ORDER FOR PERMANENT
INJUNCTION AND
MONETARY JUDGMENT
AS TO DEFENDANT
DANIELLE CADIZ

1

liability company; and
RUN AWAY PRODUCTS, LLC,
a New York limited liability
company; and both general and
limited partner of
CAROLS PLACE LIMITED
PARTNERSHIP, an Arizona
limited liability partnership;

**EUNJUNG CARDIFF**, a/k/a Eunjung
Lee, a/k/a Eunjung No,
individually and as an owner,
officer, director, or member of
REDWOOD SCIENTIFIC
TECHNOLOGIES, INC., a
California corporation;
REDWOOD SCIENTIFIC
TECHNOLOGIES, Inc., a
Nevada corporation;
REDWOOD SCIENTIFIC
TECHNOLOGIES, Inc., a
Delaware corporation;
IDENTIFY, LLC, a Wyoming
limited liability company;
ADVANCED MEN'S
INSTITUTE PROLONGZ LLC,
d/b/a AMI, a California limited
liability company; and
RUN AWAY PRODUCTS, LLC,
a New York limited liability
company; and both general and
limited partner of
CAROLS PLACE LIMITED
PARTNERSHIP, an Arizona
limited liability partnership;

**DANIELLE CADIZ**, a/k/a Danielle
Walker, individually;

**REDWOOD SCIENTIFIC TECHNOLOGIES, INC.**, a California corporation, also d/b/a Rengalife;

**REDWOOD SCIENTIFIC TECHNOLOGIES, INC.**, a Nevada corporation;

**REDWOOD SCIENTIFIC TECHNOLOGIES, INC.**, a Delaware corporation;

**IDENTIFY, LLC**, a Wyoming limited liability company;

**ADVANCED MEN'S INSTITUTE PROLONGZ LLC**, d/b/a AMI, a California limited liability company;

**RUN AWAY PRODUCTS, LLC**, a New York limited liability company; and

**CAROLS PLACE LIMITED PARTNERSHIP**, an Arizona limited liability partnership,

Defendants.

On October 3, 2018, Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), filed its Complaint for Permanent Injunction and Other Equitable Relief pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. §§ 8401-8405, and the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §§ 1693-1693r, and Section 6 of the Telemarketing and

Consumer Fraud and Abuse Prevention Act (the "Telemarketing Act"), 15 U.S.C. § 6105, and moved, pursuant to Fed. R. Civ. P. 65(b), for a temporary restraining order, asset freeze, other equitable relief, and an order to show cause why a preliminary injunction should not issue against Defendants Jason Cardiff, Eunjung Cardiff, a/k/a Eunjung Lee, a/k/a Eunjung No, Danielle Cadiz, a/k/a Danielle Walker, Redwood Scientific Technologies, Inc. (California), Redwood Scientific Technologies, Inc. (Nevada), Redwood Scientific Technologies, Inc. (Delaware), Identify, LLC, Advanced Men's Institute Prolongz LLC, Run Away Products, LLC, and Carols Place Limited Partnership.

This Court entered a temporary restraining order ("TRO") on October 10, 2018. (Dkt. No. 29) On October 24, 2018, the Court extended the TRO as to Defendant Cadiz. (Dkt. No. 47) On November 7, 2018, the Court entered a stipulated Preliminary Injunction as to Defendant Cadiz. (Dkt. No. 55) On February 26, 2019, the Court entered a Corrected Stipulated Preliminary Injunction as to Defendant Cadiz. (Dkt. No. 86)

The Commission and Defendant Cadiz now agree to the entry of a Stipulated Order for Permanent Injunction and Monetary Judgment as to Defendant Danielle Cadiz ("Order") to resolve all matters in dispute in this action between them.

**THEREFORE, IT IS ORDERED** as follows:

**FINDINGS**

The Stipulating Defendant and the FTC stipulate and the Court finds as follows:

1.     This Court has jurisdiction over this matter.

2.     The Complaint charges that Defendants participated in deceptive and unfair acts or practices in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52, Section 4 of ROSCA, 15 U.S.C. § 8403, Section 907(a) of EFTA, 15 U.S.C. § 1693e(a), Section 1005.10(b) of EFTA's implementing Regulation E, 12 C.F.R. § 1005.10(b), and Section 310.4(b)(1)(v) of the FTC's

4

Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310.4(b)(1)(v), in the marketing of Defendants' oral film strips and the Rengalife multilevel marketing program.

3.     Stipulating Defendant neither admits nor denies any of the allegations in the Complaint, except as specifically stated in this Order.  Only for purposes of this action, Stipulating Defendant admits the facts necessary to establish jurisdiction.

4.     Stipulating Defendant waives any claim that she may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agrees to bear her own costs and attorney fees.

5.     Stipulating Defendant and the Commission waive all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For the purpose of this Order, the following definitions shall apply:

A.     **"Billing Information"** means any data that enables any person to access a consumer's account, such as a credit card, debit card, checking, savings, share or similar account, utility bill, or mortgage loan account.

B.     **"Business Venture"** means any written or oral business arrangement, however denominated, whether or not covered by 16 C.F.R. Part 437, that consists of the payment of any consideration for the right or means to offer, sell, or distribute Goods or Services.  The definition of Business Venture includes multi-level marketing programs.

C.     **"Charge(s)," "Charged," or "Charging"** means any attempt to collect money or other consideration from a consumer, including, but not limited to, causing Billing Information to be submitted for payment, including against the consumer's credit card, debit card, bank account telephone bill, or other account.

D.     **"Clear(ly) and conspicuous(ly)"** means that a required disclosure is difficult to miss (i.e., easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

1.   In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented.  In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

2.   A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

3.   An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

4.   In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

5.   The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

6.   The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

7. The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

8. When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

E. **"Covered Product"** means any Dietary Supplement, Food, or Drug, including, but not limited to, TBX-FREE, Eupepsia Thin, Prolongz, or any other oral film strip product.

F. **"Defendant(s)"** means all of the Defendants, individually, collectively, or in any combination.

G. **"Dietary Supplement"** means: (1) any product labeled as a Dietary Supplement or otherwise represented as a Dietary Supplement; or (2) any pill, tablet, capsule, powder, softgel, gelcap, liquid, or other similar form containing one or more ingredients that are a vitamin, mineral, herb or other botanical, amino acid, probiotic, or other dietary substance for use by humans to supplement the diet by increasing the total dietary intake, or a concentrate, metabolite, constituent, extract, or combination of any ingredient described above, that is intended to be ingested, and is not represented to be used as a conventional Food or as a sole item of a meal or the diet.

H. **"Drug"** means: (1) articles recognized in the official United States Pharmacopoeia, official Homoeopathic Pharmacopoeia of the United States, or official National Formulary, or any supplement to any of them; (2) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in humans or other animals; (3) articles (other than food) intended to affect the structure or any function of the body of humans or other animals; and (4) articles intended for use as a component of any article specified in (1), (2), or (3); but does not include devices or their components, parts, or accessories.

7

I. **"Essentially Equivalent Product"** means a product that contains the identical ingredients, except for inactive ingredients (e.g., binders, colors, fillers, excipients) in the same form and dosage, and with the same route of administration (e.g., orally, sublingually), as the Covered Product; *provided that* the Covered Product may contain additional ingredients if reliable scientific evidence generally accepted by experts in the field indicates that the amount and combination of additional ingredients is unlikely to impede or inhibit the effectiveness of the ingredients in the Essentially Equivalent Product.

J. **"Food"** means: (1) any article used for food or drink for humans or other animals; (2) chewing gum; and (3) any article used for components of any such article.

K. **"Good(s) or Service(s)"** includes merchandise, products, plans, or programs.

L. **"Investment Opportunity"** means anything, tangible or intangible, that is offered, offered for sale, sold, or traded based wholly or in part on representations, either express or implied, about past, present, or future income, profit, or appreciation.

M. **"Made in the United States"** means any representation, express or implied, that a product, or a specified component thereof, is of U.S.-origin, including a representation that such product is "made," "manufactured," "built," or "produced" in the United States or in America, or any other U.S.-origin claim.

N. **"Negative Option Feature"** means, in an offer or agreement to sell or provide any Good or Service, a provision under which the consumer's silence or failure to take affirmative action to reject a Good or Service, or to cancel the agreement, is interpreted by the seller or provider as acceptance or continuing acceptance of the offer.

O. **"Preauthorized Electronic Fund Transfer"** means an electronic fund transfer authorized in advance to recur at substantially regular intervals.

P.     **"Stipulating Defendant"** means Danielle Cadiz, a/k/a Danielle Walker.

Q.     **"Telemarketing"** means any plan, program, or campaign that is conducted to induce the purchase of Goods or Services or a charitable contribution, by use of one or more telephones and which involves more than one interstate telephone call.

## ORDER

**I.     PROHIBITED REPRESENTATIONS REGARDING HEALTH-RELATED CLAIMS REQUIRING HUMAN CLINICAL TESTING FOR SUBSTANTIATION**

**IT IS ORDERED** that Stipulating Defendant, Stipulating Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product, are permanently restrained and enjoined from making, or assisting others in making, expressly or by implication, including through the use of a product name, endorsement, depiction, or illustration, any representation that such product:

A.     Helps users quit smoking, including any specific representation about success rates or the ease or speed of quitting;

B.     Causes or assists in causing weight loss, including any specific representation about the amount of weight loss;

C.     Suppresses or helps suppress appetite;

D.     Causes or assists in causing weight loss without dieting or any change in food or lifestyle;

E.     Helps users avoid gaining back any weight they lost;

F.     Increases ejaculation control or the duration of sex;

G.     Treats or prevents premature ejaculation;

9

H.     Cures, mitigates, or treats any disease; or

I.     Is comparable or superior to other treatments for quitting smoking, weight loss, or sexual performance, or in curing, mitigating, or treating any disease,

unless the representation is non-misleading, and, at the time of making such representation, Stipulating Defendant possesses and relies upon competent and reliable scientific evidence substantiating that the representation is true.  For purposes of this Section, competent and reliable scientific evidence shall consist of human clinical testing of the Covered Product, or of an Essentially Equivalent Product, that is sufficient in quality and quantity based on standards generally accepted by experts in the relevant disease, condition, or function to which the representation relates, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true.  Such testing must be:  (1) randomized, double-blind, and placebo-controlled; and (2) conducted by researchers qualified by training and experience to conduct such testing.  In addition, all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of such testing as described in the Section entitled Preservation of Records Relating to Competent and Reliable Human Clinical Tests or Studies must be available for inspection and production to the Commission.  Persons covered by this Section have the burden of proving that a product satisfies the definition of Essentially Equivalent Product.

## II.     PROHIBITED REPRESENTATIONS REGARDING OTHER HEALTH-RELATED CLAIMS

**IT IS FURTHER ORDERED** that Stipulating Defendant, Stipulating Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any

Covered Product, are permanently restrained and enjoined from making, or assisting others in making, expressly or by implication, including through the use of a product name, endorsement, depiction, or illustration, any representation, other than representations covered under the Section of this Order entitled Prohibited Representations:  Health-Related Claims Requiring Human Clinical Testing For Substantiation, about the health benefits, performance, efficacy, safety, or side effects of the product, unless the representation is non-misleading, and, at the time of making such representation, Stipulating Defendant possesses and relies upon competent and reliable scientific evidence that is sufficient in quality and quantity based on standards generally accepted by experts in the relevant disease, condition, or function to which the representation relates, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true.

For purposes of this Section, competent and reliable scientific evidence means tests, analyses, research, or studies (1) that have been conducted and evaluated in an objective manner by experts in the relevant disease, condition, or function to which the representation relates; (2) that are generally accepted by such experts to yield accurate and reliable results; and (3) that are randomized, double-blind, and placebo-controlled human clinical testing of the Covered Product, or of an Essentially Equivalent Product, when such experts would generally require such human clinical testing to substantiate that the representation is true.  In addition, when such tests or studies are human clinical tests or studies, all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of such testing as set forth in the Section entitled Preservation of Records Relating to Competent and Reliable Human Clinical Tests or Studies must be available for inspection and production to the Commission. Persons covered by this Section have the burden of proving that a product satisfies the definition of Essentially Equivalent Product.

### III. PRESERVATION OF RECORDS RELATING TO COMPETENT AND RELIABLE HUMAN CLINICAL TESTS OR STUDIES

**IT IS FURTHER ORDERED** that, with regard to any human clinical test or study ("test") upon which Stipulating Defendant relies to substantiate any claim covered by this Order, she shall secure and preserve all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of the test, including:

A. All protocols and protocol amendments, reports, articles, write-ups, or other accounts of the results of the test, and drafts of such documents reviewed by the test sponsor or any other person not employed by the research entity;

B. All documents referring or relating to recruitment; randomization; instructions, including oral instructions, to participants; and participant compliance;

C. Documents sufficient to identify all test participants, including any participants who did not complete the test, and all communications with any participants relating to the test; all raw data collected from participants enrolled in the test, including any participants who did not complete the test; source documents for such data; any data dictionaries; and any case report forms;

D. All documents referring or relating to any statistical analysis of any test data, including any pretest analysis, intent-to-treat analysis, or between-group analysis performed on any test data; and

E. All documents referring or relating to the sponsorship of the test, including all communications and contracts between any sponsor and the test's researchers.

*Provided, however*, the preceding preservation requirement does not apply to a reliably reported test, unless the test was conducted, controlled, or sponsored, in whole or in part by: (1) Stipulating Defendant; (2) Stipulating Defendant's officers, agents, representatives, or employees; (3) any other person or entity in active

concert or participation with Stipulating Defendant; (4) any person or entity affiliated with or acting on behalf of Stipulating Defendant; (5) any supplier of any ingredient contained in the product at issue to any of the foregoing or to the product's manufacturer; or (6) the supplier or manufacturer of such product.

For purposes of this Section, "reliably reported test" means a report of the test has been published in a peer-reviewed journal, and such published report provides sufficient information about the test for experts in the relevant field to assess the reliability of the results.

For any test conducted, controlled, or sponsored, in whole or in part, by Stipulating Defendant, Stipulating Defendant must establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of any personal information collected from or about participants. These procedures must be documented in writing and must contain administrative, technical, and physical safeguards appropriate to the size and complexity of the entity sponsoring the test, the nature and scope of that entity's activities, and the sensitivity of the personal information collected from or about the participants.

## IV. PROHIBITED MISREPRESENTATIONS REGARDING TESTS, STUDIES, OR OTHER RESEARCH

**IT IS FURTHER ORDERED** that Stipulating Defendant, Stipulating Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product are permanently restrained and enjoined from misrepresenting, or assisting others in misrepresenting, expressly or by implication, including through the use of any product name, endorsement, depiction, or illustration:

A. That the product is clinically proven to:

    1. Help users quit smoking, including any specific representation about success rates or the ease or speed of quitting;

    2. Cause or assist in causing weight loss, including any specific representation about the amount of weight loss;

    3. Suppress or help suppress appetite;

    4. Cause or assist in causing weight loss without dieting or any change in food or lifestyle;

    5. Help users avoid gaining back any weight they lost;

    6. Increase ejaculation control or the duration of sex; or

    7. Treat or prevent premature ejaculation;

    8. Be comparable or superior to other treatments for quitting smoking;

B. That the performance or benefits of the product are scientifically or clinically proven or otherwise established; or

C. The existence, contents, validity, results, conclusions, or interpretations of any test, study, or other research.

## V. FDA-APPROVED CLAIMS

**IT IS FURTHER ORDERED** that nothing in this Order prohibits Stipulating Defendant, Stipulating Defendant's officers, agents, employees, and attorneys, or all other persons in active concert or participation with any of them from:

A. For any Drug, making a representation that is approved in labeling for such Drug under any tentative final or final monograph promulgated by the Food and Drug Administration, or under any new drug application approved by the Food and Drug Administration; and

B. For any product, making a representation that is specifically authorized for use in labeling for such product by regulations promulgated by the

14

Food and Drug Administration pursuant to the Nutrition Labeling and Education Act of 1990 or permitted under Sections 303-304 of the Food and Drug Administration Modernization Act of 1997.

## VI. PROHIBITION AGAINST MISREPRESENTATIONS OR UNSUBSTANTIATED CLAIMS REGARDING EARNINGS

**IT IS FURTHER ORDERED** that Stipulating Defendant, Stipulating Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, promotion, offering for sale, or sale of any Good or Service, including Business Ventures or Investment Opportunities, are permanently restrained and enjoined from:

A.     Misrepresenting, or assisting others in misrepresenting, expressly or by implication, including through the use of any program name, endorsement, lifestyle description, depiction, or illustration, any material fact, including:

1.     That participants will or are likely to achieve substantial sales or earn substantial income or profit;

2.     The amount of sales, income, or profit that participants have actually earned;

3.     The amount of time or effort required to earn an amount of compensation or to advance; or

4.     The total costs or any material restrictions, limitations, or conditions;

B.     Making any representation, expressly or by implication, including through the use of any program name, endorsement, lifestyle description, depiction, or illustration, regarding the amount of sales, income, or profit that a participant can expect to earn, including that participants will or are likely to achieve substantial sales or earn substantial income or profit, unless the

15

representation is true, not misleading, and, at the time it is made, Stipulating Defendant possesses and relies upon competent and reliable evidence that is sufficient to substantiate that the representation is true.

## VII. PROHIBITED MISREPRESENTATIONS REGARDING ENDORSEMENTS

**IT IS FURTHER ORDERED** that Stipulating Defendant, Stipulating Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Good or Service, are permanently restrained and enjoined from making, or assisting others in making, any misrepresentation, expressly or by implication, about the status of any endorser or person providing a review of the Good or Service, including a misrepresentation that the endorser or reviewer is an independent or ordinary user of the Good or Service.

## VIII. PROHIBITED MISREPRESENTATIONS REGARDING U.S. ORIGIN CLAIMS

**IT IS FURTHER ORDERED** that Stipulating Defendant, Stipulating Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product, or any other product, are permanently restrained and enjoined from making, or assisting others in making, any representation, expressly or by implication, that it is Made in the United States unless:

A.     The final assembly or processing of the product occurs in the United States, all significant processing that goes into the product occurs in the United

States, and all or virtually all ingredients or components of the product are made and sourced in the United States; or

      B.    A Clear and Conspicuous qualification appears immediately adjacent to the representation that accurately conveys the extent to which the product contains foreign parts, ingredients or components, and/or processing; or

      C.    For a claim that a product is assembled in the United States, the product is last substantially transformed in the United States, the product's principal assembly takes place in the United States, and United States assembly operations are substantial.

## IX.    PROHIBITED MISREPRESENTATIONS OF OTHER MATERIAL FACTS

**IT IS FURTHER ORDERED** that Stipulating Defendant, Stipulating Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Good or Service are permanently restrained and enjoined from misrepresenting, or assisting others in misrepresenting, expressly or by implication, including through the use of any product name, endorsement, depiction, or illustration, any material fact concerning such Good or Service, including:

      A.    The success rate or rate of customer satisfaction;

      B.    The total costs;

      C.    Any refund policy;

      D.    Any material restrictions, limitations, or conditions, including any conditions that might limit certain consumers' ability to obtain the full benefits of the proffered Good or Service; or

E.     Any material aspect of its performance, efficacy, nature, or central characteristics, including that the benefits of the proffered Good or Service can be obtained quickly or easily.

## X.     PERMANENT BAN ON ROBOCALLS AND RINGLESS VOICEMAILS

**IT IS FURTHER ORDERED** that Stipulating Defendant is permanently restrained and enjoined from initiating telephone calls delivering prerecorded messages, including ringless voicemails, whether directly or through an intermediary.

## XI.     PROHIBITION AGAINST MISREPRESENTATIONS REGARDING NEGATIVE OPTION SALES

**IT IS FURTHER ORDERED** that Stipulating Defendant, Stipulating Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, promotion, offering for sale, or sale of any Good or Service with a Negative Option Feature, are permanently restrained and enjoined from misrepresenting, or assisting others in misrepresenting, expressly or by implication, any material fact, including:

A.     Any cost to the consumer to purchase, receive, use, or return the initial Good or Service;

B.     That the consumer will not be Charged for any Good or Service;

C.     That a Good or Service is offered on a "free," "trial," "sample," "bonus," "gift," "no obligation," or "discounted" basis, or words of similar import, denoting or implying the absence of an obligation on the part of the recipient of the offer to affirmatively act in order to avoid Charges, including where a Charge will be assessed pursuant to the offer unless the consumer takes affirmative steps to prevent or stop such a Charge;

D.     The timing or manner of any Charge or bill;

E.     That the consumer can obtain a Good or Service for a processing, service, shipping, handling, or administrative fee with no further obligation;

F.     The purpose(s) for which the consumer's Billing Information will be used;

G.     The date by which the consumer will incur any obligation or be Charged unless the consumer takes an affirmative action on the Negative Option Feature;

H.     That a transaction has been authorized by the consumer; or

I.     Any material aspect of the nature or terms of a refund, cancellation, exchange, or repurchase policy for the Good or Service.

Compliance with this Section is separate from, and in addition to, the disclosures required by Sections entitled Required Disclosures Relating to Negative Option Features and Obtaining Express Informed Consent.

## XII.   REQUIRED DISCLOSURES RELATING TO NEGATIVE OPTION FEATURES

**IT IS FURTHER ORDERED** that Stipulating Defendant, Stipulating Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, promotion, offering for sale, or sale of any Good or Service with a Negative Option Feature, are permanently restrained and enjoined from:

A.     Representing, or assisting others in representing, expressly or by implication, that any Good or Service is being offered on a free, trial, no obligation, reduced, or discounted basis, without disclosing Clearly and Conspicuously, and immediately adjacent to, any such representation:

1.     The extent to which the consumer must take affirmative action(s) to avoid any Charges:  (a) for the offered Good or Service, (b) of

19

an increased amount after the trial or promotional period ends, and (c) on a recurring basis;

2.      The total cost (or range of costs) the consumer will be Charged and, if applicable, the frequency of such Charges unless the consumer timely takes steps to prevent or stop such Charges; and

3.      The deadline(s) (by date or frequency) by which the consumer must affirmatively act in order to stop all recurring Charges.

B.      Obtaining Billing Information from a consumer for any transaction without first disclosing Clearly and Conspicuously, and immediately adjacent to where a consumer provides Billing Information:

1.      The extent to which the consumer must take affirmative action(s) to avoid any Charges:  (a) for the offered Good or Service, (b) of an increased amount after the trial or promotional period ends, and (c) on a recurring basis;

2.      The total cost (or range of costs) the consumer will be Charged, the date the initial Charge will be submitted for payment, and, if applicable, the frequency of such Charges unless the consumer timely takes affirmative steps to prevent or stop such Charges;

3.      The deadline(s) (by date or frequency) by which the consumer must affirmatively act in order to stop all recurring Charges;

4.      The name of the seller or provider of the Good or Service and, if the name of the seller or provider will not appear on billing statements, the billing descriptor that will appear on such statements;

5.      A description of the Good or Service;

6.      Any Charge or cost for which the consumer is responsible in connection with the cancellation of an order or the return of a good; and

7. The simple cancellation mechanism to stop any recurring Charges, as required by the Section entitled Simple Mechanism to Cancel Negative Option Feature.

C. Failing to send the consumer:

1. Immediately after the consumer's submission of an online order, written confirmation of the transaction by email. The email must Clearly and Conspicuously disclose all the information required by Subsection XII.B, and contain a subject line reading "Order Confirmation" along with the name of the Good or Service, and no additional information; or

2. Within two (2) days after receipt of the consumer's order by mail or telephone, a written confirmation of the transaction, either by email or first class mail. The email or letter must Clearly and Conspicuously disclose all the information required by Subsection XII.B. The subject line of the email must Clearly and Conspicuously state "Order Confirmation" along with the name of the Good or Service, and nothing else. The outside of the envelope must Clearly and Conspicuously state "Order Confirmation" along with the name of the product or service, and no additional information other than the consumer's address, the Stipulating Defendant's return address, and postage.

## XIII. OBTAINING EXPRESS INFORMED CONSENT

**IT IS FURTHER ORDERED** that Stipulating Defendant, Stipulating Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, promotion, offering for sale, or sale of any Good or Service with a Negative Option Feature, are permanently restrained and enjoined from using, or assisting others in using, Billing Information to obtain payment from a consumer, unless

Stipulating Defendant first obtains the express informed consent of the consumer to do so.  To obtain express informed consent, Stipulating Defendant must:

A.      For all written offers (including over the Internet or other web-based applications or services), obtain consent through a check box, signature, or other substantially similar method, which the consumer must affirmatively select or sign to accept the Negative Option Feature, and no other portion of the offer. Defendant shall disclose Clearly and Conspicuously, and immediately adjacent to such check box, signature, or substantially similar method of affirmative consent, only the following, with no additional information:

1.      The extent to which the consumer must take affirmative action(s) to avoid any Charges:  a) for the offered Good or Service, b) of an increased amount after the trial or promotional period ends, and c) on a recurring basis;

2.      The total cost (or range of costs) the consumer will be Charged and, if applicable, the frequency of such Charges unless the consumer timely takes affirmative steps to prevent or stop such Charges; and

3.      The deadline(s) (by date or frequency) by which the consumer must affirmatively act in order to stop all recurring Charges.

B.      For all oral offers, prior to obtaining any Billing Information from the consumer:

1.      Clearly and Conspicuously disclose the information contained in Subsection XII.B; and

2.      Obtain affirmative unambiguous express oral confirmation that the consumer:  a) consents to being Charged for any Good or Service, including providing, at a minimum, the last four (4) digits of the consumer's account number to be Charged, b) understands that the transaction includes a Negative Option Feature, and c) understands the specific affirmative steps the consumer must take to prevent or stop further Charges.

*Provided further* that, for transactions conducted through Telemarketing, Stipulating Defendant shall maintain for three (3) years from the date of each transaction an unedited voice recording of the entire transaction, including the prescribed statements set out in Subsection XII.B. Each recording must be retrievable by date and by the consumer's name, telephone number, or Billing Information, and must be provided upon request to the consumer, the consumer's bank, or any law enforcement entity.

## XIV. SIMPLE MECHANISM TO CANCEL NEGATIVE OPTION FEATURE

**IT IS FURTHER ORDERED** that Stipulating Defendant, Stipulating Defendant's officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, promotion, offering for sale, or sale of any Good or Service with a Negative Option Feature, are permanently restrained and enjoined from failing to provide a simple mechanism for the consumer to: (1) avoid being Charged, or Charged an increased amount, for the Good or Service and (2) immediately stop any recurring Charges. Such mechanism must not be difficult, costly, confusing, or time consuming, and must be at least as simple as the mechanism the consumer used to initiate the Charge(s). In addition:

A. For consumers who entered into the agreement to purchase a Good or Service including a Negative Option Feature over the Internet or through other web-based applications or services, Stipulating Defendant must provide a mechanism, accessible over the Internet or through such other web-based application or service that consumers can easily use to cancel the Good or Service and to immediately stop all further Charges.

B. For consumers who entered into the agreement to purchase a Good or Service including a Negative Option Feature through an oral offer and acceptance, Stipulating Defendant must maintain a telephone number and a postal address that consumers can easily use to cancel the Good or Service and to immediately stop all further Charges. Stipulating Defendant must assure that all calls to this telephone number shall be answered during normal business hours and that mail to the postal address is retrieved regularly.

## XV. PROHIBITION AGAINST UNAUTHORIZED CHARGES

**IT IS FURTHER ORDERED** that Stipulating Defendant, Stipulating Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, promotion, offering for sale, or sale of any Good or Service without a Negative Option Feature, are permanently restrained and enjoined from Charging, causing to be Charged, assisting others in Charging, or attempting to Charge any consumer, without obtaining the consumer's express informed consent to the Charge and having created and maintained a record of such consent.

## XVI. PROHIBITION AGAINST DEBITING CONSUMERS' BANK ACCOUNTS WITHOUT AUTHORIZATION

**IT IS FURTHER ORDERED** that Stipulating Defendant, Stipulating Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the sale of any Good or Service, are permanently restrained and enjoined from:

A. Failing to timely obtain written authorization signed or similarly authenticated by the consumer for any Preauthorized Electronic Fund Transfer from a consumer's account before initiating any Preauthorized Electronic Fund Transfer; and

B.    Failing to provide to the consumer a copy of a valid written authorization signed or similarly authenticated by the consumer for any Preauthorized Electronic Fund Transfer from a consumer's account.

## XVII. MONETARY JUDGMENT AND SUSPENSION

**IT IS FURTHER ORDERED that:**

A.    Judgment in the amount of Eighteen Million Two Hundred Thousand Dollars ($18,200,000) is entered in favor of the Commission against Stipulating Defendant as equitable monetary relief.

B.    This judgment is suspended, subject to the Subsections below.

C.    The Commission's agreement to the suspension of the judgment is expressly premised upon the truthfulness, accuracy, and completeness of Stipulating Defendant's sworn financial statements and related documents (collectively, "financial representations") submitted to the Commission, namely:

1.    The Financial Statement of Individual Defendant Danielle Walker a/k/a Danielle Cadiz signed on October 18, 2018, including the 4 .zip file attachments containing supporting documentation;

2.    The additional documentation submitted by secure electronic transmission from Stipulating Defendant's counsel Jesse Thaler to Commission counsel Elizabeth Sanger on October 19, 2018, including:

a.    Statement of Policy Cost and Benefit Information (Protective Life Insurance Company);

b.    A list of credit accounts issued in the name of Stipulating Defendant and/or her spouse;

c.    A statement specifying Stipulating Defendant's income from Runaway Products for the years 2013 through 2015; and

d.    A 20-page document titled, "Misc Items in possession.pdf," containing information about the

employment and income of Stipulating Defendant and her spouse, Stipulating Defendant's stock holdings, and Stipulating Defendant's retirement plan;

3.      The Declaration of Danielle Cadiz Re:  Business Activities and Employment Since Redwood Scientific Technologies, Inc. signed on October 19, 2018.

D.      The suspension of the judgment will be lifted as to Stipulating Defendant if, upon motion by the Commission, the Court finds that Stipulating Defendant failed to disclose any material asset, materially misstated the value of any asset, or made any other material misstatement or omission in the financial representations identified above.

E.      If the suspension of the judgment is lifted, the judgment becomes immediately due as to Stipulating Defendant in the amount specified in Subsection A above (which the parties stipulate only for purposes of this Section represents the consumer injury alleged in the Complaint), less any payment previously made pursuant to this Section, and any payment(s) made by or on behalf of any other Defendant to the Commission pursuant to a Final Order in this action, plus interest computed from the date of entry of this Order.

## XVIII.   ADDITIONAL MONETARY PROVISIONS

**IT IS FURTHER ORDERED that:**

A.      Stipulating Defendant relinquishes dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

B.      The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

C. The facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

D. Stipulating Defendant acknowledges that her Taxpayer Identification Numbers (Social Security Numbers or Employer Identification Numbers), which she previously submitted to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

E. All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund. If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Commission may apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint. Any money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement. Stipulating Defendant has no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

F. The Asset freeze of the February 26, 2019, Corrected Stipulated Preliminary Injunction as to Defendant Danielle Cadiz (Dkt. No. 86) is dissolved as to Stipulating Defendant and any preliminary injunction as to Stipulating Defendant is superseded by this Order. All Assets of Stipulating Defendant shall be released upon entry of this Order, including Stipulating Defendant's Capital One account ending #6016; Capital One account ending #8075; US Bank account ending #9004; Bank of America account ending #6326; and interest in the real

property in Elsinore, CA reported in the Financial Statement listed in Section XVII.C.1 of this Order as Stipulating Defendant's primary residence.

## XIX. CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Stipulating Defendant, Stipulating Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from:

A.      Disclosing, using, or benefitting, or assisting others in disclosing, using, or benefitting, from customer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that Stipulating Defendant obtained prior to entry of this Order in connection with the advertising, promotion, offering for sale, or sale of Defendants' oral film strips or Rengalife; and

B.      Failing to destroy such customer information in all forms in her possession, custody, or control within 30 days after entry of this Order.

*Provided, however*, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

## XX.      COOPERATION

**IT IS FURTHER ORDERED** that Stipulating Defendant must fully cooperate with representatives of the Commission and the court-appointed Receiver in this case and in any investigation related to or associated with the transactions or the occurrences that are the subject of the Complaint.  Stipulating Defendant must provide truthful and complete information, evidence, and testimony.  Stipulating Defendant must appear for interviews, discovery, hearings, trials, and any other proceedings that a representative of the Commission or the

Receiver may reasonably request upon 7 days' written notice, or other reasonable notice, at such places and times as a Commission representative may designate, without the service of a subpoena.

## XXI. ORDER ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED** that Stipulating Defendant obtain acknowledgments of receipt of this Order:

A.      Stipulating Defendant, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.      For 5 years after entry of this Order, Stipulating Defendant, for any business that she, individually or collectively with any other Defendants, is the majority owner or controls directly or indirectly, must deliver a copy of this Order to: (1) all principals, officers, directors, and LLC managers and members; (2) all employees having managerial responsibilities for conduct related to the subject matter of the Order and all agents and representatives who participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting. Delivery must occur within 7 days of entry of this Order for current personnel. For all others, delivery must occur before they assume their responsibilities.

C.      From each individual or entity to which Stipulating Defendant delivered a copy of this Order, she must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## XXII.    COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Stipulating Defendant make timely submissions to the Commission:

A.      One year after entry of this Order, Stipulating Defendant must submit a compliance report, sworn under penalty of perjury. Stipulating Defendant must:

1.      Identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences;

2.      Identify all business activities, including any business for which she performs services whether as an employee or otherwise and any entity in which she has any ownership interest;

3.      Describe in detail her involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership;

4.      Identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with Stipulating Defendant;

5.      Identify all of her businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses;

6.      Describe the activities of each business, including the Goods or Services offered, the means of manufacturing, labeling, advertising, promotion, offering for sale, sale or distribution, and the involvement of any other Defendant (which Stipulating Defendant must describe if she knows or should know due to her own involvement);

7.      Describe in detail whether and how Stipulating Defendant is in compliance with each Section of this Order; and

8.      Provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

B.      For 10 years after entry of this Order, Stipulating Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.      Name, including aliases or fictitious name, or residence address;

2.     Title or role in any business activity, including any business for which she performs services whether as an employee or otherwise and any entity in which Stipulating Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity;

3.     Any designated point of contact; or

4.     The structure of any entity that Stipulating Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including:  creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

C.     Stipulating Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against Stipulating Defendant within 14 days of its filing.

D.     Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding:  "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on:  _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.     Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC  20580.  The subject line must begin:  FTC v. Danielle Cadiz, X190001.

## XXIII. RECORDKEEPING

**IT IS FURTHER ORDERED** that Stipulating Defendant must create certain records for 10 years after entry of the Order, and retain each such record for 5 years. Specifically, Stipulating Defendant, for any business that she, individually or collectively with Jason Cardiff, Eunjung Cardiff, or any Defendant, is a majority owner or controls directly or indirectly, must create and retain the following records:

A. Accounting records showing the revenues from all Goods or Services sold;

B. Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C. Records of all consumer complaints and refund requests concerning the subject matter of this Order, whether received directly or indirectly, such as through a third party, and any response;

D. All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

E. A copy of each unique advertisement or other marketing material.

## XXIV. COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Stipulating Defendant's compliance with this Order, including the financial representations upon which the judgment was suspended:

A. Within 14 days of receipt of a written request from a representative of the Commission, Stipulating Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying. The Commission is also authorized to obtain discovery, without further

leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.     For matters concerning this Order, the Commission is authorized to communicate directly with Stipulating Defendant.  Stipulating Defendant must permit representatives of the Commission to interview any employee or other person affiliated with her who has agreed to such an interview.  The person interviewed may have counsel present.

C.     The Commission may use all other lawful means, including posing, through its representatives, as consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice.  Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D.     Upon written request from a representative of the Commission, any consumer reporting agency must furnish consumer reports concerning Stipulating Defendant, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. §1681b(a)(1).

**XXV. RETENTION OF JURISDICTION**

**IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**XXVI.     LIMITED EFFECT OF THIS ORDER**

**IT IS FURTHER ORDERED** that this Order is entered pursuant to the agreement of the Stipulating Defendant and the FTC.  The approval of the terms of this Order will not affect a later determination as to whether the same or similar terms proposed by the FTC are appropriate with respect to any other Defendant in

this matter.  Any such later determinations will be made based on a de novo review of the relevant facts and circumstances.

**For Plaintiff Federal Trade Commission:**

Dated: March __, 2019

                                 _____
ELIZABETH JONES SANGER
esanger@ftc.gov; (202) 326-2757
SHIRA D. MODELL
smodell@ftc.gov; (202) 326-3116
JAMES A. PRUNTY
jprunty@ftc.gov; (202) 326-2438
EDWIN RODRIGUEZ
erodriguez@ftc.gov; (202) 326-3147
Federal Trade Commission
600 Pennsylvania Ave., NW
Washington, DC 20580
Fax: (202) 326-3259

STACY PROCTER (Local Counsel)
sprocter@ftc.gov; (310) 824-4300
Federal Trade Commission
10990 Wilshire Blvd., Suite 400
Los Angeles, CA 90024
Fax: (310) 824-4380

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

**For Defendant Danielle Cadiz:**

Dated:  March ___, 2019

                                 _____
DANIELLE WALKER, a/k/a Danielle Cadiz, individually

Dated: March ___, 2019

                             _____

                             JESSE J. THALER
                             Thaler Law
                             17011 Beach Blvd., Fl. 9
                             Huntington Beach, CA 92647

                             Attorney for DEFENDANT DANIELLE CADIZ

**SO ORDERED this   16th  day of   May , 2019.**

_S. Jame Oteo_

_____

**UNITED STATES DISTRICT JUDGE**