SPERTUS, LANDES & UMHOFER, LLP
James W. Spertus (SBN 159825)
M. Anthony Brown (SBN 243848)
1990 South Bundy Drive, Suite 705
Los Angeles, California 90025
Telephone: (310) 826-4700
Facsimile: (310) 826-4711
jspertus@spertuslaw.com
tbrown@spertuslaw.com

Attorneys for Intervenor
True Pharmastrip, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Federal Trade Commission,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>Jason Cardiff, *et al.*,<br><br>　　　　　　Defendants. | Case No. ED 5:18-cv-02104-SJO-PLAx<br><br>**TRUE PHARMASTRIP, INC.'S NOTICE OF MOTION AND MOTION TO INTERVENE**<br><br>Date: November 18, 2019<br>Time: 10:00 AM<br>Courtroom: 10C |

*MOTION TO INTERVENE*

**TO THIS HONORABLE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on November 18, 2019, at 10:00 a.m. or as soon thereafter as this matter may be heard before the Honorable S. James Otero in Courtroom 10C of the United States District Court for the Central District of California, located at 350 West 1st Street, Los Angeles, California 90012, non-party True Pharmastrip, Inc. ("True Pharmastrip"), will and hereby does move to intervene in this case for the purpose of participating in discovery and asserting its legal entitlement to the 1,205,984.80 USD ($1.56 million CAD) (the "Disputed Funds") that True Pharmastrip deposited with the Receiver on August 27, 2019, pursuant to the Court's order at the hearing on August 27, 2019.

Intervention is warranted as of right because (1) True Pharmastrip has a substantial property interest in the Disputed Funds, (2) that interest will not be fully represented or protected by any of the parties to this case, and (3) this interest may be impaired if the True Pharmastrip is not allowed to intervene. *See* Fed. R. Civ. P. 24(a)(2).  Alternatively, True Pharmastrip respectfully requests that the Court grant True Pharmastrip's request for permissive intervention because the company's claim to the Disputed Funds presents questions of law and fact common to the other issues in this case, namely, whether the Disputed Funds are assets subject to the TRO or are otherwise available for restitution to any victims of the defendants, Jason and Eunjung Cardiff, that may be entitled to restitution if judgments against the Cardiffs are ultimately entered in this case.  *See* Fed. R. Civ. P. 24(b)(1)(B).

This motion is based on this notice of motion and motion, the attached memorandum of points and authorities, the concurrently filed Declaration of James W. Spertus, the pleadings and other documents on file in this case, all matters of which the Court may take judicial notice, and any further argument or evidence that may be received by the Court at the hearing on this motion.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place from August 14, 2019, through October 13, 2019. Counsel for True Pharmastrip first discussed the company's intention to intervene in this action in an email to the Receiver and the FTC on August 14, 2019. (Declaration of James W. Spertus ¶ 2(a).) True Pharmastrip further conferred with the parties on this issue during negotiations that took place from August 28, 2019, to September 30, 2019, over a jointly submitted proposed order encompassing the Court's rulings at the August 27, 2019, hearing in this case. (*Id.* ¶ 2(b)-(e), (g).) For example, via email on September 10, 2019, counsel for True Pharmastrip specifically asked the FTC stipulate to an order allowing True Pharmastrip to intervene. The FTC did not respond. (*Id.* ¶ 2(f).) After additional emails and telephone calls with the FTC concerning outstanding issues in this case, counsel for True Pharmastrip on October 13, 2019, emailed counsel for the FTC and the Cardiffs requesting the parties' final position on True Pharmastrip's motion to intervene. (*Id.* ¶ 2(h).) The Cardiffs never responded to True Pharmastrip's inquiry. On October 15, 2019, FTC's counsel responded to True Pharmastrip's counsel that the FTC would not stipulate to an order allowing True Pharmastrip to intervene in this case. (*Id.*)

Dated: October 18, 2019             SPERTUS, LANDES & UMHOFER, LLP

                                    By:    /s/ James W. Spertus
                                           James W. Spertus
                                           M. Anthony Brown
                                           Attorneys for True Pharmastrip, Inc.

# **TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................. 1

II. FACTUAL BACKGROUND ........................................................................... 1

III. LEGAL STANDARD ....................................................................................... 5

IV. ARGUMENT .................................................................................................... 6

    A. True Pharmastrip Should Be Granted Intervention As of Right ............. 6

        1. True Pharmastrip's Motion Is Timely ........................................... 6

        2. True Pharmastrip Claims a Significant, Protectable Interest in the Disputed Funds ......................................................... 7

        3. True Pharmastrip's Interest in the Disputed Funds May Be Impaired Without Intervention ..................................... 8

        4. Neither the FTC Nor the Cardiffs Will Adequately Represent True Pharmastrip's Interests ......................................... 9

    B. True Pharmastrip Should Be Permitted To Intervene ........................... 11

V. CONCLUSION ............................................................................................... 12

i

*MOTION TO INTERVENE*

# TABLE OF AUTHORITIES

**Cases**

*Arakaki v. Cayetano*,
   324 F3d 1078 (9th Cir. 2003)..................................................................................9

*Bureerong v. Uvawas*,
   167 F.R.D. 83 (C.D. Cal. 1996) .............................................................................6

*Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*,
   642 F.3d 728 (9th Cir. 2011) ................................................................................11

*Donnelly v. Glickman*,
   159 F.3d 405 (9th Cir. 1998) ................................................................................11

*Emp. Staffing Servs., Inc. v. Aubry*,
   20 F.3d 1038 (9th Cir. 1994) ................................................................................11

*Forest Conservation Council v. United States Forest Serv.*,
   66 F.3d 1489 (9th Cir. 1995)..............................................................................7, 8

*League of United Latin Am. Citizens v. Wilson*,
   131 F.3d 1297 (9th Cir. 1997) ............................................................................5, 6

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
   934 F.2d 1092 (9th Cir. 1991) ................................................................................7

*S.E.C. v. Lefebvre*,
   No. C 02-3704 JSW, 2004 WL 2696731 (N.D. Cal. Mar. 31, 2004) ...................8

*S.E.C. v. Navin*,
   166 F.R.D. 435, 441 (N.D. Cal. 1995) .................................................................10

*Sawyer v. Bill Me Later, Inc.*,
   No. CV 10-04461-SJO-JCGX,
   2011 WL 13217238 (C.D. Cal. Aug. 8, 2011) ......................................................6

*Smith v. Los Angeles Unified School Dist.*,
   830 F3d 843 (9th Cir. 2016) ..................................................................................6

*Sw. Ctr. for Biological Diversity v. Berg*,
   268 F.3d 810 (9th Cir. 2001)..............................................................................6, 7

*Venegas v. Skaggs*,
   867 F.2d 527 (9th Cir. 1989) ................................................................................11

**Rules**

Fed. R. Civ. P. 24(a)(2) ...............................................................................................9

Fed. R. Civ. P. 24(b)(1)(b)........................................................................................13

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

At the August 27, 2019, hearing on the FTC's contempt motion, the Court ordered that non-party True Pharmastrip, Inc. "should have . . . its day in court" to seek the return of $1,205,984.80 USD that the company was ordered to deposit with the Receiver based on the FTC's untested claims that these funds were frozen assets of defendant Jason Cardiff. Intervention is the mechanism that affords a non-party its day in court to assert ownership of property affected by the outcome of pending litigation. Despite True Pharmastrip's repeated efforts to obtain the FTC's agreement to True Pharmastrip's intervention for that limited purpose in this case, the FTC has refused. True Pharmastrip now is forced to seek that relief by this noticed motion. True Pharmastrip seeks nothing more than the ability to protect its property interest in the $1,205,984.80 USD the company was ordered to deposit with the Receiver, and respectfully requests that the Court allow it to do so by granting this motion to intervene.

## II. FACTUAL BACKGROUND

On July 31, 2018, True Pharmastrip, Inc., was incorporated in Canada, under the name Clover Cannastrip Thin Film Technologies Corp. (The company changed its name in March 2019.) The company's original directors were non-party Jacques Poujade and defendants Jason and Eunjung Cardiff. Unlike the Cardiffs' businesses that are the subject of this FTC action, however, True Pharmastrip's business goal was to produce orally dissolvable thin film strips carrying precise dosages of THC. Through the use of pharmaceutical grade equipment and testing protocols mandated by various state laws, True Pharmastrip's final manufactured product would be an oral thin strip specific in its dosage, predictable in its effect, and thus able to be used by a wide array of consumers for all of THC's many therapeutic purposes. (Dkt. 204-1, at 3.)

In October 2018, the FTC filed a complaint against Jason and Eunjung Cardiff and several of their companies, including most importantly Redwood Scientific Technologies, Inc. ("Redwood"). The complaint alleges violations of Sections 5(a) and 12 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a) and 52; Section 4 of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8403; Section 907(a) of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693e(a); Section 1005.10(b) of EFTA's implementing Regulation E, 12 C.F.R. § 1005.10; and Section 310.4(b)(1)(v) of the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310.4(b)(1)(v). (Dkt. 1, at ¶ 1.) These alleged violations of law are based on allegations of the Cardiffs'

> false and unsubstantiated claims for dissolvable film strips advertised for smoking cessation, weight loss, and male sexual performance; a related autoship continuity program resulting in unauthorized shipments and charges; abusive telemarketing through robocalls; and unsubstantiated earnings claims for a multi-level marketing scheme.

(*Id.*; *see also* Dkt. 5, at 14 (same summary in application for TRO); 7/29/19 RT 9 (same summary of complaint at contempt hearing).)

To ensure the availability of the Cardiffs' assets as restitution for the victims of their unlawful scheme, the FTC also obtained a TRO that authorized, among other things, the freezing of all assets "[o]wned or controlled, directly or indirectly, by any Defendant, including, but not limited to, those for which a Defendant is a signatory on the account." (Dkt. 29, at 12 (Section VII).) The TRO's asset freeze provisions covered all Cardiff assets as of the time the order was entered on October 10, 2018. However, assets that came into the Cardiffs' possession or under their control after October 10, 2018, were covered by the TRO only if they "derived from any activity that is the subject of the Complaint in this matter or that is prohibited by this Order." (Dkt. 29, at 13.) The TRO,

2

*MOTION TO INTERVENE*

with its asset freeze provision, was converted into a preliminary injunction on November 8, 2018. (Dkt. 59.)

On June 17, 2019, the FTC filed a motion seeking to hold non-party Jacques Poujade in contempt of court for violating the TRO's asset freeze provision. (Dkt. 134.) The FTC alleged that, at the time the TRO was entered, Jason Cardiff was a signatory on True Pharmastrip's business checking account, making the funds in the account assets subject to the TRO's asset freeze. The FTC further alleged that when, shortly after the TRO was entered, Mr. Poujade transferred funds from True Pharmastrip's business checking account to one of the company's subsidiaries, his actions violated the TRO's asset freeze.[1] (*See, e.g.*, Dkt. 180, at 16, ¶ 57.)

In reality, the funds from True Pharmastrip's business checking account transferred by Mr. Poujade were raised in legitimate private stock offerings in Canada. True Pharmastrip's investors are third parties with no connection to the Cardiffs' consumer fraud described in the FTC's complaint. Thus, to moot the FTC's contempt allegations against its CEO and to remove any possible concern that company funds potentially covered by the asset freeze had been or could in

---

[1] The FTC also contended that True Pharmastrip was a "de facto continuation of the Cardiffs' thin film business operations" at Redwood and other companies. (Dkt. 134-2, at 20.) The FTC's argument appears to be premised on nothing more than the fact that the products developed by True Pharmastrip, like those sold by Jason Cardiff's companies, use the orally dissolving thin film technology. But that is an insufficient basis on which to make the claim that True Pharmastrip is a continuation of the Cardiff business operations that the FTC is trying to enjoin in this action. Numerous other companies also use the same technology for their commercial products, such as Listerine PocketPaks breath freshening strips. The FTC has never claimed, much less offered evidence showing, that True Pharmastrip's business involved any of those features of the Cardiffs' businesses that caused the FTC to file its complaint, such as unlawful multi-level marketing, unsubstantiated earnings claims, false advertising about the products' effectiveness, a deceptive auto-renewing program, or abusive telemarking tactics. (*See* Dkt. 1, at ¶ 1.)

the future be dissipated, True Pharmastrip's board of directors on August 8, 2019, authorized the deposit of $1,205,984.80 USD ($1,560,000 CAD) (the "Disputed Funds") into its counsel's client trust account, and counsel immediately reported this fact to the FTC, the Receiver, and the Court. That figure represented the total amount of money that the FTC claims was transferred from True Pharmastrip's business checking account *before* the date the TRO went into effect and over which Jason Cardiff, as a signatory on the account, purportedly had control.

On August 27, 2019, at a hearing in the contempt proceedings attended by Mr. Poujade and True Pharmastrip's Board of Directors, the Court ordered that True Pharmastrip deposit the Disputed Funds being held in counsel's trust account with the Receiver. (8/27/19 RT 15). In making this order, the Court ruled that, "with the deposit of the 1.56 million with the custody of the receiver, it would seem to me, to the Court, that would resolve the contempt proceedings before the Court today." (8/27/19 RT 31). When counsel for Mr. Poujade and True Pharmastrip, James W. Spertus, informed the Court that True Pharmastrip "want[ed] to argue and establish through facts" that the Disputed Funds were "not a receivership asset," the Court recognized that "your client should have their day—its day in court regarding whether the funds, you know, rightfully belong to—or portions of the funds rightfully belong to your client." (8/27/19 RT 15). Mr. Spertus then informed that Court that True Pharmastrip would be "filing a motion to intervene for the limited purpose of participating in discovery" and establishing ownership over the Disputed Funds, and expressed hope that "[p]erhaps we can reach a stipulation with the FTC to allow us to appear and engage in discovery." (8/27/19 RT 32.) The Court replied:

> I do think that there are—there's some, you know, serious effort by Pharmastrip to distance themselves from the conduct of the Cardiffs and others. Going forward, I appreciate the board being here today. And it appears that there are certain legitimate persons and

businesspeople involved with that entity going forward. And so I'm hopeful that these issues can be resolved in the future.

(8/27/19 RT 33.)

After the hearing, Mr. Spertus repeatedly asked the FTC to stipulate to an order allowing True Pharmastrip to intervene in the Cardiff action for the limited purpose of engaging in discovery and establishing ownership of the Disputed Funds. (*See* Declaration of James W. Spertus ¶ 2(a)-(h).) The FTC refused, explaining that in its view the Disputed Funds did not relate to "the subject of the action." (*Id.* ¶ 2(h).) The FTC did not object to intervention on any other ground. (*Id.*) As a result, True Pharmastrip had no choice but to file this motion to intervene.

## III.  LEGAL STANDARD

Under Rule 24(a)(2), governing intervention as of right, a court must allow a non-party to intervene in an action when it "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Courts considering motions to intervene thus consider four factors:

> (1) the application must be timely; (2) the applicant must have a "significantly protectable" interest relating to the transaction that is the subject of the litigation; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest must be inadequately represented by the parties before the court.

*League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997) (citation omitted) ("*Wilson*"). These requirements must be "broadly interpreted in favor of intervention." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011). District courts faced with intervention motions should be "'guided primarily by practical considerations,' not technical distinctions" and are "required to accept as true the non-conclusory

5

*MOTION TO INTERVENE*

allegations made in support of an intervention motion." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818-819 (9th Cir. 2001).

Under Rule 24(b)(1)(b), governing permissive intervention, a court has discretion to permit a non-party to intervene when the party has "a claim or defense that shares with the main action a common question of law or fact." Like the "interest" requirement of Rule 24(a)(2), "[t]he existence of a 'common question' is liberally construed." *Bureerong v. Uvawas*, 167 F.R.D. 83, 85 (C.D. Cal. 1996); *see also Sawyer v. Bill Me Later, Inc.*, No. CV 10-04461-SJO-JCGX, 2011 WL 13217238, at *9 (C.D. Cal. Aug. 8, 2011).

## IV.  ARGUMENT

### A.  True Pharmastrip Should Be Granted Intervention As of Right

#### 1.  True Pharmastrip's Motion Is Timely

In determining whether a motion for intervention is timely, the court considers three factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Wilson*, 131 F.3d at 1302.  Prejudice is "the most important consideration" in determining timeliness of a motion to intervene. *Smith v. Los Angeles Unified School Dist.*, 830 F3d 843, 857 (9th Cir. 2016).

True Pharmastrip's motion is timely.  This case is in its earliest stages, the trial date has not been set, discovery is still ongoing, and no proceedings of any substance on the merits of the FTC's claims have occurred. *Cf. Wilson*, 131 F.3d at 1303 (motion to intervene was arguably untimely after four sets of parties had already intervened, discovery had ended, a plaintiff class had been provisionally certified, and the court had disposed of a dismissal and summary judgment motions).  Since the case is still in the discovery stage, permitting True Pharmastrip to intervene at this time will not prejudice any party.  The FTC can claim no loss of evidence, settlements made in expectation that no further claims would be made, or the necessity of reopening matters previously adjudicated.

Finally, True Pharmastrip brought this motion as soon as practicable. True Pharmastrip first learned that its "interest[s] would no longer be protected adequately by the parties" during litigation in the contempt proceedings. *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 934 F.2d 1092, 1095 (9th Cir. 1991). Immediately after resolution of the contempt proceedings, True Pharmastrip attempted to avoid the need for this motion through meet-and-confer efforts. When the FTC communicated its final refusal to stipulate to intervention, True Pharmastrip promptly filed this motion. Thus, the motion is timely.

### 2. True Pharmastrip Claims a Significant, Protectable Interest in the Disputed Funds

In claiming ownership over the Disputed Funds, True Pharmastrip has a significant, protectable interest relating to property that is the subject of the action. Indeed, a third party is entitled to intervene as a matter of right when "the injunctive relief sought by the plaintiffs will have direct, immediate, and harmful effects upon a third party's legally protectable interests." *Sw. Ctr. for Biological Diversity*, 268 F.3d at 818; *see also Forest Conservation Council v. United States Forest Serv.*, 66 F.3d 1489, 1494 (9th Cir. 1995), *abrogated on other grounds in Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1178 (9th Cir. 2011).

Here, the FTC claims that the Disputed Funds are frozen assets under the TRO. The FTC's complaint seeks restitution for victims of the Cardiffs' consumer fraud. (Dkt. 1, at 51.) When filing the complaint, the FTC also applied for a TRO with asset freeze provisions to preserve the Court's "ability to grant effective final relief for consumers – including monetary restitution." (Dkt. 29, at 3.) The TRO was thus an initial step in advancing the "the subject of the [FTC's] action." Fed. R. Civ. P. 24(a)(2). Due to the Court's order requiring the deposit of the Disputed Funds with the Receiver pending resolution of whether those funds are subject to the TRO's asset freeze, True Pharmastrip is

not able to access or control those assets, either for its own use or for investment purposes. Because the injunctive relief sought by the FTC will have direct, immediate, and harmful effects upon non-party True Pharmastrip's investment capital, True Pharmastrip claims a significant, protectable interest warranting its intervention in this case.

Contrary to the position taken by the FTC in correspondence with True Pharmastrip (Spertus Decl. ¶ 2(h)), the "subject of the action" is not limited "to the liability or merits portion of [the FTC's] complaint" but also includes the injunctive relief sought in the action. *See Forest Conservation Council*, 66 F.3d at 1494. For example, in *S.E.C. v. Lefebvre*, No. C 02-3704 JSW, 2004 WL 2696731 (N.D. Cal. Mar. 31, 2004), which also involved a non-party seeking intervention to protect funds subject to an asset freeze, the Court granted intervention, explaining:

> Comet's motion for limited intervention is proper under either Rule 24(a) or (b). Comet has demonstrated to the Court's satisfaction that it meets the four requirements of Rule 24(a). Comet has a protectable interest relating to funds that are subject to the Order Freezing Assets. Neither plaintiff SEC nor Watch Hill has disputed that Comet has a legally protectable interest in the funds. Due to the Order Freezing Assets, Comet is not able to access or control its own assets, either for its own use or investment purposes. The Court further finds that Comets' application is timely, litigation on this matter is in the early stages and intervention will not delay the case or prejudice the parties. Finally, because the funds belong to Comet, it has a heightened interest over that of the SEC in obtaining a prompt release of the funds.

*Id.* at *2.

Like the non-party seeking intervention in *Lefebvre*, True Pharmastrip claims a significant, protectable interest in frozen assets and, thus, satisfies this requirement for intervention.

### 3. True Pharmastrip's Interest in the Disputed Funds May Be Impaired Without Intervention

Disposition of the action may, as a practical matter, impair or impede True Pharmastrip's ability to protect its interests in the Disputed Funds. The whole

point of the TRO's asset freeze is to preserve funds for eventual use in providing restitution to the Cardiffs' victims. The FTC clearly announced this goal when requesting the TRO, stating that its objective in seeking to freeze Cardiff assets was "to ensure that [those] assets are available to make restitution to injured consumers." (Dkt. 5, at 61.) If the FTC prevails against the Cardiffs and succeeds in its effort to convert the Disputed Funds into restitution for Cardiff victims, True Pharmastrip's interest in those funds and the interests of its investors will be impaired. *Citizens for Balanced Use*, 647 F.3d at 898. Thus, True Pharmastrip also satisfies this requirement for intervention.

### 4. Neither the FTC Nor the Cardiffs Will Adequately Represent True Pharmastrip's Interests

"The burden of showing inadequacy of representation is 'minimal' and satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate." *Citizens for Balanced Use*, 647 F.3d at 898 (quoting *Arakaki v. Cayetano*, 324 F3d 1078, 1086 (9th Cir. 2003)). In evaluating adequacy of representation, courts look to three factors: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Id.* (internal quotation marks omitted.) The most important factor is "how the interest compares with the interests of existing parties." *Id.*

The FTC believes the Disputed Funds are Jason Cardiff's assets that should be used to provide restitution to the victims of Jason Cardiff's consumer fraud scheme. But True Pharmastrip contends that the Disputed Funds are *not* Jason Cardiff's assets and, therefore, should *not* be used to provide restitution to Jason Cardiff's victims. With these "fundamentally differing points of view" about who the Disputed Funds belong to, the FTC and True Pharmastrip are

indisputably adverse parties. *Citizens for Balanced Use*, 647 F.3d at 899. Thus, the FTC, despite being a government agency, obviously will *not* represent True Pharmastrip's interests with respect to the Disputed Funds. Accordingly, intervention is necessary because True Pharmastrip and its investors have interests different from those of the FTC and Receiver. *See S.E.C. v. Navin*, 166 F.R.D. 435, 441 (N.D. Cal. 1995) (granting intervention as of right where proposed intervenor "has shown that the investors' interests may differ from those of the SEC.").

The Cardiffs also will not adequately represent True Pharmastrip's interests. Throughout the contempt proceedings, the Cardiffs took the position that the Disputed Funds belonged to True Pharmastrip and that they had no control over the funds. (*E.g.*, Dkt. 193.) In fact, before the August 27, 2019, hearing, the Cardiffs filed supplemental evidence in support of their opposition to the FTC's proposed findings of fact that consisted of an email from the Receiver stating, "The Cardiffs want to 'cooperate' to turn over that money to the Receiver. That is fine, but they don't have access to it; Poujade now does." (Dkt. 195, at 2.) The Cardiffs have shown that they have neither the incentive nor the resources to challenge ownership over the Disputed Funds.

More importantly, True Pharmastrip has taken a position in this litigation directly adverse to the Cardiffs, arguing at the August 27, 2019, hearing that "True Pharmastrip, the entity, is also a victim of Jason Cardiff," and that Cardiff's misrepresentations and unauthorized conduct while employed as a consultant for one of True Pharmastrip's subsidiaries were ultimately the cause of the company's embroilment in this case. (*E.g.*, 8/27/19 RT 9, 12.)

Accordingly, True Pharmastrip satisfies this last requirement for intervention as of right.

### B. True Pharmastrip Should Be Permitted To Intervene

Should the Court determine that intervention as of right is not warranted, True Pharmastrip respectfully requests that the Court permit it to intervene under Rule 24(b)(1)(b) because the company has "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(b).

Unlike intervention as of right under Rule 24(a), there is no requirement of a "significant protectable interest" to be able to intervene under Rule 24(b). *Emp. Staffing Servs., Inc. v. Aubry*, 20 F.3d 1038, 1042 (9th Cir. 1994) ("[T]he requirement of a legally protectable interest applies only to intervention as of right under Rule 24(a), not permissive intervention under Rule 24(b)."). Once the conditions for permissive intervention are met, the court has discretion to allow or disallow intervention, *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998), and may limit intervention to certain issues, *Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 741 (9th Cir. 2011) ("The district court's discretion . . . under Rule 24(b), to grant or deny an application for permissive intervention includes discretion to limit intervention to particular issues."). Courts considering permissive intervention evaluate the timeliness, prejudice to existing parties, and judicial economy, among other factors which the court deems relevant. *Venegas v. Skaggs*, 867 F.2d 527, 530-31 (9th Cir. 1989), *aff'd*, 495 U.S. 82 (1990).

Although True Pharmastrip firmly disputes that the company is in any way a continuation of the Cardiffs' Redwood business, whether the Disputed Funds are a Cardiff asset versus legitimate investor funds that are not proper sources of restitution for the Cardiffs' victims, is a common question of fact relating to the preliminary injunction issued by this Court. Therefore, as the Court has already recognized at the contempt hearing, True Pharmastrip "should have . . . its day in court regarding whether the funds, you know, rightfully belong to—or portions of the funds rightfully belong to" True Pharmastrip. (*See* 8/27/19 RT 15).)

## V. CONCLUSION

For the foregoing reasons, True Pharmastrip respectfully requests that the Court grant its motion to intervene in this case for the purposes of conducting discovery and contesting the true ownership of the Disputed Funds.

Dated: October 18, 2019         SPERTUS, LANDES & UMHOFER, LLP

                                By:   /s/ James W. Spertus
                                      James W. Spertus
                                      M. Anthony Brown
                                      Attorneys for True Pharmastrip, Inc.