UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 18-2104-DMG (PLAx)** | Date | July 7, 2020 |
|---|---|---|---|
| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 1 of 10 |

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER GRANTING PLAINTIFF'S APPLICATION FOR A PRELIMINARY INJUNCTION [370]**

This matter is before the Court on the Order to Show Cause ("OSC") why the Federal Trade Commission's ("FTC") Application for a Preliminary Injunction should not be granted. [Doc. ## 352, 370.] Defendant Jason Cardiff and Intervenor VPL Medical, Inc. ("VPL") filed their opposition on July 2, 2020, and the FTC filed its reply on July 6, 2020. [Doc. ## 376, 381.] The Court held a hearing on July 7, 2020. For the reasons set forth below, Plaintiff's Application for a Preliminary Injunction is **GRANTED**.

**I.
FACTUAL AND PROCEDURAL BACKGROUND**

On October 10, 2018, the FTC filed a Complaint for Permanent Injunction and Other Equitable Relief against Jason and Eunjung Cardiff, among other Defendants, alleging that the Cardiffs "have for years operated a fraudulent multi-pronged scheme that has bilked consumers out of millions of dollars through baseless advertising claims for products that purport to alleviate serious health conditions, while also enrolling consumers in unwanted autoship programs that have resulted in millions of dollars in unauthorized charges." Compl. at ¶ 1 [Doc. # 1]. That day, the Court issued a Temporary Restraining Order ("TRO") freezing the Cardiffs' assets and appointing a Temporary Receiver (the "2018 TRO"). [Doc. # 29.] On November 8, 2018, the Court entered a Preliminary Injunction maintaining the asset freeze and receiver appointment ("2018 Preliminary Injunction"). [Doc. # 59.]

On June 17, 2019, the FTC filed a Motion for an Order to Show Cause ("OSC") Why the Cardiff Defendants and Third Party Jacques Poujade Should Not Be Held in Contempt of the Court's Preliminary Orders and Sanctioned Until They Comply Fully with Those Orders ("First Motion for OSC"). [Doc. # 134.] The Motion for OSC alleged that the Cardiffs and Poujade had violated the 2018 TRO and Preliminary Injunction by concealing and transferring more than $1.5 million in assets subject to the asset freeze. First Mot. for OSC at ¶¶ 4-5. The Court issued

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | ED CV 18-2104-DMG (PLAx) | Date | July 7, 2020 |
|---|---|---|---|
| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 2 of 10 |

the OSC and ordered the Cardiffs and Poujade to personally appear at a hearing, which took place over the course of three days in July 2019.  [Doc. ## 140, 183.]  Finding that the Cardiffs lied to the Court and violated the conditions of its Orders by hiding frozen assets, the Court found the Cardiffs and Poujade in contempt of the TRO and Preliminary Injunction.

After voluminous briefing and orders on other aspects of this case, on January 13, 2020, the Cardiffs filed a Motion to Dissolve the 2018 Preliminary Injunction, arguing that Section 13(b) of the Federal Trade Commission Act ("FTCA") does not empower the FTC to pursue injunctive relief or restitutionary relief against them and that the FTC failed to first file an administrative complaint under Sections 5 and 45 of the FTCA.  [Doc. # 253.]  The Court disagreed and denied the motion.  [Doc. # 305.]

On March 2, 2020, the FTC filed another Motion for an OSC Why the Cardiff Defendants Should Not Be Held in Contempt of Court and Coercively Incarcerated Until They Comply With the Court's Orders ("Second Motion for OSC").  [Doc. # 300.]  The FTC asserted that the Cardiffs violated the 2018 TRO and Preliminary Injunction by concealing and dissipating their asserts.  Second Mot. for OSC at 4.[1]  The FTC also asserted that the Cardiffs failed to deliver certain assets to the Receiver and otherwise interfered with the Receiver's efforts to take possession of their asserts and documents.  On March 31, 2020, the Court granted in part and denied in part the FTC's Second Motion for OSC.  [Doc. # 315.]  The Court "easily" found the Cardiffs in contempt of the 2018 TRO and Preliminary Injunction due to their payment of nearly $17,000 in monthly expenses for non-essential items such as three luxury cars but failure to pay any part of their $12,000 monthly mortgage.  March 31, 2020 Order at 4.  Warning the Cardiffs that failure to purge their contempt could result in incarceration, the Court ordered the Cardiff Defendants to—within thirty days following entry of the Order—identify the source of each and every cash deposit into the new credit union account with which they were paying their bills, turn over all assets to the Receiver, and replenish the Receivership Estate for any and all unpaid mortgage payments on the Upland Residence, until the date of the sale of the Residence as authorized by the Court [*see* Doc. ## 306, 309].  March 31, 2020 Order at 5.[2]  On June 19, 2020, the FTC filed a third contempt-related motion against the Cardiffs, to be heard on July 24, 2020, arguing that they still have not complied with the 2018 Preliminary Injunction or the Court's prior contempt orders.  [Doc. # 346.]

---

[1] All page references herein are to page numbers inserted by the CM/ECF system.

[2] The Cardiffs filed appeals to the Ninth Circuit of the Court's March 10 Order denying Defendants' Motion to Dissolve the Preliminary Injunction, the March 16 Order authorizing the sale of the Cardiffs' residence, and the March 31 Order finding the Cardiffs in contempt.  [Doc. # 317.]  On June 26, 2020, the Ninth Circuit dismissed the Cardiffs' appeals for lack of jurisdiction.  [Doc. # 362.]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **ED CV 18-2104-DMG (PLAx)** | Date | July 7, 2020 |
| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 3 of 10 |

On June 24, 2020, the FTC filed the instant emergency non-noticed *Ex Parte* Application for a TRO with asset freeze and other equitable relief and for an OSC why the assets of a new company seemingly controlled by Jason Cardiff, VPL, are not "Receivership Property" within the meaning of the 2018 Preliminary Injunction.  [Doc. # 370.][3]  The FTC asserted that Jason Cardiff is the CEO and co-owner of a new company, VPL, which had obtained multimillion-dollar contracts with the federal Department of Health and Human Services ("HHS") and Department of Veterans Affairs ("VA") to manufacture and sell face masks for use in the current COVID-19 pandemic.  *Id.* at 9-10.  Given Cardiff's previous violations of the 2018 Preliminary Injunction and attempts to conceal, transfer, or dissipate funds, the FTC argued that Cardiff was likely to divert funds from VPL for his own gain, even though those funds should be frozen and put under receivership pursuant to the 2018 Preliminary Injunction.  *Id.* at 16-17.

The Court granted the FTC's request for a TRO and asset freeze, appointed a temporary receiver over VPL and its assets, and permitted the FTC and the Receiver to obtain information and documents on an expedited basis regarding Cardiff's involvement with and relationship to VPL, the nature and disposition of VPL's assets, and compliance with the TRO.  June 24, 2020 TRO at 6.  [Doc. # 352.]  The Court also issued an OSC why a preliminary injunction should not issue.  *Id.*  In addition, on July 2, 2020, the Court granted VPL's *Ex Parte* Application to intervene for the limited purpose of protecting its rights relating to the instant OSC, to the extent Cardiff could not do so.  [Doc. # 368.]  Cardiff also belatedly submitted declarations by VPL contractor Stacey Barker and attorney Benjamin England.  [Doc. # 386-1.]

## II.
## DISCUSSION

Section 13(b) of the FTCA allows the Court to grant the FTC's request for a preliminary injunction upon a showing that, considering the FTC's ultimate likelihood of success on the merits and the balance of equities, a preliminary injunction is in the public interest.  15 U.S.C. § 53(b).  Harm to the public interest is presumed, and the FTC "need not show irreparable harm to obtain a preliminary injunction."  *F.T.C. v. Affordable Media, LLC*, 179 F.3d 1228, 1233 (9th Cir. 1999); *F.T.C. v. World Wide Factors, Ltd.*, 882 F.2d 344, 346 (9th Cir. 1989).

In granting the TRO application, the Court already concluded that the FTC was likely to succeed on the merits and the balance of equities tipped in its favor, although the Court's evaluation at that time was done without Cardiff's opposition.  The Court now re-examines that conclusion in light of the arguments and evidence presented by Cardiff and VPL.

---

[3] Although initially filed sealed and *in camera*, the FTC's *Ex Parte* Application and other moving papers are now publicly filed on the docket.  [Doc. ## 348-50, 370-74.]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | ED CV 18-2104-DMG (PLAx) | Date | July 7, 2020 |
| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 4 of 10 |

**A.     Likelihood of Success on the Merits**

    **1.     Scope of the 2018 Preliminary Injunction**

In the TRO, the Court found that VPL constituted Receivership Property under the 2018 Preliminary Injunction. Cardiff and VPL argue that because the relevant terms of the 2018 Preliminary Injunctions are not "forward looking" and are ambiguous, VPL should not be placed under receivership. Opp. at 5. The definition of Receivership Property in the 2018 Preliminary Injunction is, however, crystal clear:

> any Assets, wherever located, that are: (1) owned, controlled, or held by or for the benefit of the Receivership Entities, Jason Cardiff, or Eunjung Cardiff, in whole or in part; (2) in the actual or constructive possession of the Receivership Entities, Jason Cardiff, or Eunjung Cardiff; or (3) owned, controlled, or held by, or in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, trust, or other entity directly or indirectly owned or controlled by the Receivership Entities, Jason Cardiff, or Eunjung Cardiff, including the Jurikel Family Trust, and Carols Place Trust.

2018 Preliminary Injunction at 9. This general language does not contain a temporal limitation and does not preclude the Receiver from taking possession of Cardiff's later-acquired assets, so long as there is proof that Cardiff "owned, controlled, or held" those assets or the assets were "owned, controlled, or held . . . for the benefit of[] any corporation . . . directly or indirectly owned or controlled by" Cardiff. *Id.* In addition, Section VII of the 2018 Preliminary Injunction pertaining to the asset freeze specifically states that

> The Assets affected by this Section shall include: (1) all Assets of Defendants as of the time the TRO was entered; (2) all Assets obtained by Defendants after the TRO was entered if those Assets are derived from any activity that is the subject of the Complaint in this matter or that is prohibited by this Order; and (3) *all Assets owned or controlled, directly or indirectly, by Defendant Jason Cardiff* or Defendant Eunjung Cardiff, including, but not limited to, the Jurikel Family Trust or Carols Place Trust.

*Id.* at 15 (emphasis added). Again, the Preliminary Injunction covers any assets "owned or controlled, directly or indirectly," by Cardiff, without temporal limitation. The crux of the matter is thus whether the FTC has shown a likelihood of success on the merits that Cardiff owns or controls VPL—not, as Cardiff argues, whether he properly complied with the Notice of New

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 18-2104-DMG (PLAx)** | Date | July 7, 2020 |
|---|---|---|---|
| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 5 of 10 |

Business Activity requirement or whether VPL is engaged in unlawful activity related to the allegations of wrongdoing in the FTC's Complaint. *See* Opp. at 5, 7.[4]

### 2. Cardiff's Relationship to VPL

The FTC has produced significant evidence that Cardiff "own[s] or control[s]" VPL. The Receiver's June 26, 2020 Report on VPL includes minutes of VPL's first board of directors meeting indicating that Cardiff and Bobby Bedi are VPL's sole directors. Receiver's June 26, 2020 Report at 20 [Doc. # 365]. The Report also includes Cardiff's e-mail from his "jc@vplmedical.com" e-mail account describing VPL as "my biggest company to date" and indicating his desire to own "Super majority shares in the company" and the ability to call all of co-founder Bobby Bedi's stock at any time at minimal cost. *Id.* at 5, 10. A contractor acting as VPL's Vice President of Enterprise Sales, Stacey Barker, refers to Cardiff as the company's CEO in numerous e-mails. Sands Decl., Att. 29, 30, 32, 35, 38 [Doc. #381-2]. Other clients and business associates refer to Cardiff as the CEO or owner of VPL or defer to his final decision making, including in appointing high-level positions and arranging for one employee to receive equity in VPL, apparently without Bedi's knowledge. *Id.*, Att. 31, 39, 41, 42. The HHS "vendor profile" and the State of Nevada "electronic vendor registration" for VPL lists Cardiff as the CEO. *Id.*, Att. 33, 44. Cardiff signed a March 31, 2020 contract as the Founder and COO of VPL. *Id.*, Att. 43. In a June 17, 2020 commercial lease application, he represented himself as the President of VPL, drawing an annual salary of $25,000 and bonus/additional income of $500,000. Receiver's June 26, 2020 Report at 15.

By contrast to the documentary evidence above, Cardiff and VPL rely on several declarations to argue that Cardiff has been compensated solely as a consultant to Bedi and has never held himself out to be CEO. Opp. at 7-8. In Cardiff's declaration, he states that he "was satisfied to serve without a title and without share ownership for the time being," though he expected he would generate significant income from VPL. Cardiff Decl. at ¶¶ 4-5, 10 [Doc. # 376-1]. Bedi describes Cardiff variously as a "consultant," a "director," and a "key member of the team" who worked with Bedi in negotiating a variety of VPL's affairs. Bedi Decl. at ¶¶ 6-7, 25 [Doc. # 376-2]. Bedi also notes that Cardiff's name is not on VPL's articles of incorporation or statement of information filed with the California Secretary of State or other business documents, including some which describe Bedi as the CEO of VPL. *Id.*, Ex. 1, 3-8. In a late-filed declaration, VPL attorney England asserts that he referred to Cardiff as VPL's CEO in error

---

[4] Although Cardiff argued at the hearing that, "as a matter of logic," the FTC cannot seek freezes of assets not directly related to illegal activity, there is no requirement that funds frozen to pay a possible restitutionary award be traceable to the alleged illegal activity. *See F.T.C. v. Commerce Planet, Inc.*, 815 F.3d 593, 601 (9th Cir. 2016) (finding tracing requirements have never applied in Section 13(b) cases).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 18-2104-DMG (PLAx)** | Date | July 7, 2020 |
|---|---|---|---|
| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 6 of 10 |

and that Cardiff never represented himself as the CEO. England Decl. at ¶ 2 [Doc. # 386-1]. Similarly, VPL Vice President Barker states that she inadvertently labeled Cardiff as VPL's CEO, though it was her "good faith belief that VPL was both Jason and Bobby [Bedi]'s company" and she "was not sure how to reference his position." Barker Decl. at ¶¶ 3-5 [Doc. # 386-2].

The 2018 Preliminary Injunction does not cover only companies of which Cardiff is the CEO, but any "[a]ssets owned or controlled, directly or indirectly," by Cardiff. 2018 Preliminary Injunction at 15 (emphasis added). Given inconsistencies in how Bedi described Cardiff's position; England's and Barker's belief that Cardiff acted as the CEO; Cardiff's history of dishonesty before the Court; and the undisputed facts that Cardiff helped to found VPL and wields final authority over many crucial business decisions, the Court concludes that the preponderance of the evidence supports the FTC's argument that Cardiff owns or controls VPL, whether directly or indirectly, even if he is not technically VPL's CEO. *See Feldman v. Arizona Sec'y of State's Office*, 843 F.3d 366, 403 (9th Cir. 2016) ("At the preliminary injunction stage, the plaintiff is not required to present 'compelling' evidence, but only to establish a likelihood of success by a preponderance of the evidence."). Therefore, VPL belongs under receivership, with its assets frozen, pursuant to the 2018 Preliminary Injunction.

### 3. Calculation of equitable remedies

Cardiff also argues that that the Court cannot freeze VPL's assets and put them under receivership to satisfy a potential equitable remedy because (1) the FTC did not properly disclose its calculations of the equitable relief sought in its Rule 26(f) report and (2) the Supreme Court's recent decision in *Liu v. S.E.C.*, --- S.Ct. ----, 2020 WL 3405845 (U.S. June 22, 2020), changes the availability of certain equitable relief. Opp. at 14.

The FTC appropriately disclosed that it was seeking equitable monetary relief under the FTCA, 15 U.S.C. § 53(b), and stated that the total amount consumers paid for certain products via Jason and Eunjung Cardiff's company Redwood Scientific Technologies ("Redwood"), preliminarily valued at $18.2 million, would form the basis of its request for equitable monetary relief. Joint Report Rule 26(f) Discovery Plan at 12-13 [Doc. # 101]; Sanger Decl., Att. 1 (FTC Rule 26(a)(1) Initial Disclosures) at 11 [Doc. #381-1]. At that pre-discovery stage, the FTC provided sufficient notice of the basis of its equitable monetary relief, given the "evidence necessary to determine Defendants' gross receipts for the purpose of assessing disgorgement was in the hands of Defendants." *United States v. RaPower-3, LLC*, 960 F.3d 1240, 1254 (10th Cir. 2020).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | ED CV 18-2104-DMG (PLAx) | Date | July 7, 2020 |
|---|---|---|---|
| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 7 of 10 |

Now, the FTC must satisfy the two-step burden-shifting framework for calculating restitution awards under the FTCA section 13(b). *F.T.C. v. Commerce Planet, Inc.*, 815 F.3d 593, 603 (9th Cir. 2016).

> Under the first step, the FTC bears the burden of proving that the amount it seeks in restitution reasonably approximates the defendant's unjust gains, since the purpose of such an award is "to prevent the defendant's unjust enrichment by recapturing the gains the defendant secured in a transaction." 1 Dobbs, Law of Remedies § 4.1(1), at 552. *Unjust gains in a case like this one are measured by the defendant's net revenues (typically the amount consumers paid for the product or service minus refunds and chargebacks), not by the defendant's net profits*. . . . Nor are unjust gains measured by the consumers' total losses; that would amount to an award of damages, a remedy available under § 19(b) but precluded under § 13(b). . . . In many cases, however, the defendant's unjust gain "will be equal to the consumer's loss because the consumer buys goods or services directly from the defendant."

*Id.* (internal citations omitted) (emphasis added); *see also F.T.C. v. IAB Mktg. Assocs., LP*, 972 F. Supp. 2d 1307, 1313 (S.D. Fla. 2013) ("The proper measure of ill-gotten gains is revenue, not profit."). The revenues Cardiff, Redwood, and other co-Defendants received for the sale of products that allegedly violated the FTCA are thus the proper measure of consumer loss-based restitution under Section 13(b).

Based on Redwood's QuickBooks accounting records, the Receiver estimated that net revenue (total income minus returns, refunds, and chargebacks) totaled $18.2 million between January 1, 2015 and October 12, 2018. Receiver's November 2, 2018 Report with Erratum at 9 [Doc. # 53]; *see* George Decl., Att. 1 [Doc. #381-3]. The Receiver's November 2018 Report also indicates Redwood's significant losses since its inception, in part due to approximately $13 million spent on media and advertising. Receiver's November 2, 2018 Report with Erratum at 9. Cardiff argues that the FTC did not provide a clear enough calculation of its estimated $18.2 million in restitution for the burden to shift to Defendants, and that the FTC's choice not to seek additional discovery rendered *Defendants* unable to "pursue[] discovery of net profits." Opp. at 16-17. It is not clear, however, what additional information *Defendants* require to prove that the FTC's calculation is erroneous, given Cardiff already possesses information relating to Redwood's net profits. In fact, Cardiff argues that Defendants cannot be liable for any restitution because Redwood made *no* profits. *Id.* at 19. This argument fails to account for the FTC's ability to pursue consumer losses as a measure of restitution, not just the equitable remedy referred to as "disgorgement," which is calculated by net profits. *See Commerce Planet, Inc.*,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 18-2104-DMG (PLAx)** | Date | July 7, 2020 |
|---|---|---|---|
| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 8 of 10 |

815 F.3d at 603. The Court therefore finds the FTC and the Receiver's calculation of $18.2 million in net revenue to be an appropriate estimate of the restitution award in this case.

The burden shifts to Cardiff and his co-Defendants to show that the FTC's figure overstates the amount of unjust gains, and any risk of uncertainty at this second step "fall[s] on the wrongdoer whose illegal conduct created the uncertainty." *Commerce Planet*, 815 F.3d at 604 (quoting *F.T.C. v. Bronson Partners*, 654 F.3d 359, 368 (2d. Cir. 2011). Cardiff has not met this burden.

Instead, he argues that *Liu v. S.E.C.* --- S.Ct. ----, 2020 WL 3405845 (U.S. June 22, 2020), which held that "courts must deduct legitimate expenses before ordering disgorgement under § 78u(d)(5)" of the Securities and Exchange Commission ("SEC") Act, invalidates the 2018 Preliminary Injunction. Opp. at 23. *Liu* does not appear, however, to preclude the FTC from seeking *restitution* under the FTCA. *Liu*'s holding is cabined to disgorgement in SEC actions under a distinct provision of the SEC Act—which the Court previously held constitutes penalties, not equitable relief, *see Kokesh v. S.E.C.*, 137 S. Ct. 1635, 1639 (2017). *See Liu*, 2020 WL 3405845, at *5 ("We granted certiorari to determine whether § 78u(d)(5) authorizes the SEC to seek disgorgement beyond a defendant's net profits from wrongdoing."); *see also id.* at *7 n.1 (describing the "question before us" as "whether the underlying profits-based award conforms to equity practice"). Disgorgement, in that context, consists of recovery of net profits.

By contrast, the FTC here seeks restitution of consumer losses, not disgorgement of profits. *See F.T.C. v. Pantron I Corp.*, 33 F.3d 1088, 1102 (9th Cir. 1994) (distinguishing between an order "to pay restitution *or* disgorge its profits" where actual injury to consumers is established). Section 13(b) of the FTCA specifies in broad terms "[t]hat in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction." 15 U.S.C. § 53(b). "This provision gives the federal courts broad authority to fashion appropriate remedies for violations of the Act" and includes the "'authority to grant any ancillary relief necessary to accomplish complete justice,'" including the "power to order restitution." *Pantron I Corp.*, 33 F.3d at 1102 (quoting *F.T.C. v. H.N. Singer, Inc.*, 668 F.2d 1107, 1113 (9th Cir. 1982).[5] Given the broad sweep of this section of the FTCA compared to § 78u(d)(5) of the SEC

---

[5] Cardiff also argues that Section 13(b) of the FTCA does not permit restitutionary remedies at all and that *Singer* is wrongly decided. Opp. at 20. This Court is bound by this well-established Ninth Circuit precedent. *See, e.g.*, *F.T.C. v. Consumer Def., LLC*, 772 F. App'x 508, 510 (9th Cir. 2019) (affirming an asset freeze that "preserve[d] the status quo in order to protect the possibility of [an] equitable remedy") (quoting *Singer*, 668 F.2d at 1112); *F.T.C. v. Inc21.com Corp.*, 475 F. App'x 106, 108, 110 (9th Cir. 2012) (affirming an award of "restitution in the full amount of funds lost by consumers" and citing *Singer*, 668 F.2d at 1112-13).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **ED CV 18-2104-DMG (PLAx)** | Date | July 7, 2020 |
| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 9 of 10 |

Act, *Liu*'s reasoning does not affect the FTC's calculation of restitution owed to consumers based on total revenues.

The FTC has preserved roughly $560,000 and $1.56 million Canadian dollars ("CAD") thus far, which falls far short of the $18.2 million estimated consumer injury. *See* TRO App. at 16. Cardiff has not met his burden to revise the FTC's estimate downward. Accordingly, VPL's current multimillion-dollar accounts are properly placed under receivership to preserve their value.

The FTC has shown it is likely to succeed on the merits of its argument that VPL is Receivership Property under the 2018 Preliminary Injunction.

**B.     Balance of Equities**

"Public equities include, but are not limited to, economic effects and pro-competitive advantages for consumers and effective relief for the commission." *World Wide Factors, Ltd.*, 882 F.2d at 347. Based on the foregoing analysis, the public's interest in redress would be harmed without a preliminary injunction ensuring that VPL's assets remain under receivership, particularly given the likelihood of dissipation. *See Affordable Media*, 179 F.3d at 1236 ("[T]he district court's finding regarding the likelihood of dissipation is far from clearly erroneous" where defendant had a "history of spiriting their commissions away to a Cook Islands trust.").

The FTC argues that without another preliminary injunction specifically extending the receivership and asset freeze over VPL, Cardiff could dissipate VPL's assets or otherwise hide assets that should be preserved for the possibility of consumer redress at the conclusion of the case. Evidence abounds of Cardiff's previous dishonest behavior, including (1) Cardiff's attempt to wire money to foreign jurisdictions in violation of the 2018 TRO; (2) the Court's three prior contempt findings against Cardiff for his scheme to conceal his ownership of the company True Pharmastrip and $1.56 million CAD, his and Eunjung Cardiff's refusal to pay their mortgage despite maintaining a lavish lifestyle, and his concealment of his Irish passport; and (3) the Receiver's July 6, 2020 Report describing Cardiff's falsified bank records in his application for a $20,000 per month apartment in New York City. *See* TRO App. at 8-9; Receiver's July 6, 2020

---

In fact, in 2016, the Ninth Circuit reiterated that under Section 13(b), "absent a clear limitation expressed in the statute, Congress is deemed to have authorized issuance of 'whatever relief a court of equity is empowered to provide in the particular case at issue.'" *Commerce Planet*, 815 F.3d at 602 (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993)). "That includes the power 'to award complete relief even though the decree includes that which might be conferred by a court of law,' such as monetary relief that would traditionally be viewed as 'legal.'" *Id.* (quoting *Porter v. Warner Holding Co.*, 328 U.S. 395, 399 (1946) and 1 Dan B. Dobbs, Law of Remedies § 2.7, at 180 (2d ed. 1993)). The FTC thus may seek restitutionary relief even when it resembles legal damages.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **ED CV 18-2104-DMG (PLAx)** | Date | July 7, 2020 |
| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 10 of 10 |

Report at 4-5 [Doc. # 380]. Cardiff's past and current conduct does not give the Court much faith that he will not machinate to conceal, transfer, or use VPL funds in a manner that reduces value for potential restitution.

Cardiff and VPL argue that it would be inequitable to maintain the receivership over VPL because (1) being under receivership is detrimental to VPL's business and (2) VPL should not fall under the scope of the 2018 Preliminary Injunction as it is unrelated to Cardiff's prior activities which allegedly violated the FTCA. Opp. at 7-11. While being under receivership is undoubtedly challenging for any company, that is not a reason not to impose one. Bedi's declaration indicates that VPL is still functioning and remains likely to be profitable and attractive to its primary investor. Bedi Decl. at ¶¶ 10-16. And for the reasons stated above, Cardiff's challenges to the breadth and scope of the 2018 Preliminary Injunction are unavailing. Cardiff and VPL have not shown that any harm arising from the issuance of a preliminary injunction outweighs the likelihood of public harm if Cardiff is permitted to dissipate VPL's assets.

In light of the foregoing, the Court concludes that the balance of equities and the public interest weigh in favor of injunctive relief.

### III.
### CONCLUSION

The FTC has shown likelihood of success on the merits and that the balance of equities weighs in favor of continuing the receivership and asset freeze as to VPL. Cardiff and VPL have not shown otherwise in their opposition to the OSC. The Court therefore **GRANTS** the FTC's Application for a Preliminary Injunction.

**IT IS SO ORDERED**.