Peter Bisno (SBN 85943)
15760 Ventura Boulevard, Suite 1200
Encino, California 91436
Telephone: (818) 657-0300
Facsimile: (818) 657-0313
E-mail: pbisno@bisnolaw.com

Jennifer Witherell Crastz (SBN 185487)
Christopher D. Crowell (SBN 253103)
HEMAR, ROUSSO & HEALD, LLP
15910 Ventura Boulevard, 12th Floor
Encino, California 91436
Telephone: (818) 501-3800
Facsimile: (818) 501-2985
E-mail: jcrastz@hrhlaw.com
        ccrowell@hrhlaw.com

Attorneys for Judgment Creditor
INTER/MEDIA TIME BUYING CORPORATION

**HEMAR, ROUSSO & HEALD, LLP**
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>JASON CARDIFF etc. et al.,<br><br>　　　　　Defendants. | Case No. 5:18-cv-02104-DMG-PLA<br><br>INTER/MEDIA TIME BUYING CORPORATION'S NOTICE OF MOTION AND MOTION TO COMPEL RECEIVER TO CURE ARREARAGES ON UPLAND RESIDENCE MORTGAGE AND FOR OTHER SPECIFIED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF PETER BISNO IN SUPPORT THEREOF<br><br><u>Hearing</u><br>Date:　September 4, 2020<br>Time: 9:30 a.m.<br>Place: Courtroom 8C<br>　　　　350 West 1st Street<br>　　　　Los Angeles, California 90012<br>Judge: Hon. Dolly M. Gee |

<u>NOTICE OF MOTION AND MOTION</u>

PLEASE TAKE NOTICE that on September 4, 2020, at 9:30 a.m. or as soon thereafter as the matter may be heard, in Courtroom 8C of the above-entitled Court located at 350 West First Street, Los Angeles, California 90012, judgment creditor Inter/Media Time Buying Corporation ("Inter/Media") will and hereby does move for an order compelling Receiver Robb Evans & Associates LLC ("Receiver") to (1) cure the arrearages on the mortgage owed by Jason Cardiff ("J. Cardiff") and Eunjung Cardiff (individually and collectively, "Cardiffs") on real property in Upland, California, located at 700 West 25th Street ("Residence"), to the extent the Cardiffs have not cured the arrearages by the time of the hearing on the Motion; (2) disclose to Inter/Media efforts made by the Receiver to market the Residence and all offers and counteroffers made to date; and (3) disclose to Inter/Media the Receiver's cash available to cure the arrearages.

This Motion is made following conferences of counsel pursuant to L.R. 7-3 which took place on July 27, July 30, and August 4, 2020.

Dated:  August 7, 2020

HEMAR, ROUSSO & HEALD, LLP


By:  /s/ Christopher D. Crowell
Jennifer Witherell Crastz
Christopher D. Crowell
Attorneys for Judgment Creditor
INTER/MEDIA TIME BUYING
CORPORATION

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA  91436
(818) 501-3800

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION AND SUMMARY OF ARGUMENT

Inter/Media holds a judgment against the Cardiffs in the original amount of $970,725.93 secured by a recorded Abstract of Judgment encumbering the Residence. The judgment was entered in March 2017. But for the Cardiffs' fraudulent transfer of the Residence and the stay of actions this Court imposed, Inter/Media would have long since taken steps to cause an execution sale of the Residence.

Facing the prospect of indefinite delay in exercising its rights and remedies with respect to the Residence, Inter/Media entered into a Settlement Agreement with the Receiver in January 2020. The Settlement Agreement contemplates the Receiver's prompt sale of the Residence, with Inter/Media and the receivership estate each to receive 50 percent of the net sale proceeds. The Court approved the settlement and authorized the Receiver to sell the Residence in mid-March 2020.

Nearly five months later, the Receiver still has not sold the Residence, which is listed for sale at $1,865,000. The Receiver claims that the Cardiffs have obstructed its efforts to market the Residence but the Receiver has not sought to remove them from the Residence, where they continue to live, "rent free" and "mortgage free." The Receiver has represented to Inter/Media that offers to purchase the Residence from third parties have been received but refuses to disclose the terms of such offers and counteroffers to Inter/Media even though Inter/Media who will receive 50 percent of the net sale proceeds is an interested party and an intended beneficiary of the Settlement Agreement.

Meanwhile, the senior mortgage on the Residence, which has a $1,418,201 principal balance, continues to accrue arrearages, which will exceed $300,000 by the time of the hearing on the Motion. The Court has twice held the Cardiffs in contempt based on their failure to keep the mortgage current. Most recently, the Court indicated it would order J. Cardiff's incarceration unless the Cardiffs replenish the receivership estate for unpaid mortgage payments by August 31, 2020.

The Receiver has enough cash on hand to cure the arrearages but has declined to do so. To the extent the Cardiffs have not cured the arrearages by the time of the hearing on the Motion, the Court should order the Receiver to do so. <u>The Receiver's cure of the arrearages would in no way purge the Cardiffs' contempt or relieve them of their obligation to replenish the receivership estate.</u> The Court Order for "replenishment" still stands. Ordering the Receiver to cure the arrearages would, however, be consistent with the Settlement Agreement and the Preliminary Injunction entered in this action, which requires the Receiver to preserve the value of receivership assets and prevent their inequitable distribution.

RELEVANT FACTUAL BACKGROUND

A.   <u>Basis for Inter/Media's Claim</u>

Inter/Media is an advertising agency that provides media buying and other advertising services. [Declaration of Peter Bisno filed herewith ("<u>Bisno Decl.</u>") ¶ 3.] In November 2014, Inter/Media sued the Cardiffs and certain affiliates in Los Angeles County Superior Court ("<u>State Court</u>") for damages arising from the defendants' failure to pay for Inter/Media's services, and the defendants' fraud in connection therewith. [<u>Id.</u>] The parties signed a binding written Settlement Term Sheet to resolve their disputes in early September 2016, and Inter/Media reasonably expected that the final settlement agreement would be executed shortly thereafter. [<u>Id.</u>]

Over the next several months, the Cardiffs used various tactics to delay finalizing the settlement. [<u>Id.</u> ¶ 4.] The parties finally signed a Settlement Agreement in March 2017. [<u>Id.</u> ¶ 4, Ex. 1.] In the Settlement Agreement, the Cardiffs represented, under penalty of perjury, that they were neither the trustees nor the beneficiaries of the Jurikel Family Trust (which held title to the Residence at the time) or any other trust. [<u>Id.</u> ¶ 5, Ex. 1.] The Cardiffs also agreed not to "transfer, encumber, or sell assets outside the ordinary course that will prejudice any of the rights of the Inter/Media Parties." [<u>Id.</u>]

The Cardiffs also admitted in the Settlement Agreement, under penalty of perjury, that Inter/Media's agreement to do business with them and their affiliates "was

2

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800

1  obtained through false pretenses, false representations, and actual fraud," both

2  regarding the Cardiffs' financial condition and their ability and willingness to perform

3  their contractual obligations to Inter/Media. [Id. ¶ 6, Ex. 1.]

4       On March 27, 2017, the State Court entered a $970,725.93 Judgment Pursuant to

5  Stipulation ("Judgment") in Inter/Media's favor and against the Cardiffs and the other

6  defendants to the State Court action. [Id. ¶ 7, Ex. 3.]

7  B.   The Cardiffs' Fraudulent Transfer of the Residence to an Asset Protection Trust

8       The Cardiffs took advantage of the delay in finalizing the parties' settlement to

9  orchestrate a fraudulent transfer of the Residence to an asset protection trust. [Id. ¶ 8.]

10  Specifically, the Cardiffs, as trustees of the Jurikel Family Trust, transferred the

11  Residence to themselves, as trustees of the Carols Place Trust, via a Warranty Deed

12  dated January 31, 2017, and recorded in the San Bernardino County Official Records

13  ("Official Records") seven days later. [Id. ¶ 8, Ex. 4.] The Cardiffs did so despite their

14  sworn representation that they were not the trustees of the Jurikel Family Trust, and

15  despite their agreement not to transfer assets so as to prejudice Inter/Media's rights.

16  [Id.]

17       On June 16, 2017, Inter/Media recorded an Abstract of Judgment with respect to

18  the Judgment in the Official Records. [Id. ¶ 9, Ex. 5.] Because the Jurikel Family Trust

19  is a revocable trust, the Cardiffs were the settlors of the Jurikel Family Trust, and the

20  transfer of the Residence to the Carols Place Trust was void as a fraudulent transfer, the

21  recorded Abstract of Judgment created a judgment lien as to the Residence. See Cal.

22  Civ. Proc. Code § 697.310 (judgment lien on real property is created by recording

23  abstract of judgment with the county recorder); Cal. Probate Code § 18200 (revocable

24  trust property is subject to claims of creditors of settlor); In re Cass, 476 B.R. 602, 614-

25  619 (Bankr. C.D. Cal. 2012) (under California law, judgment lien attaches to

26  fraudulently transferred real property, even when abstract of judgment recorded after

27  fraudulent transfer).

28       Nevertheless, to preclude any argument that the Residence is not encumbered by

1   Inter/Media's judgment lien, Inter/Media filed another State Court action in May 2018.

2   [Bisno Decl. ¶ 10.] Inter/Media's operative First Amended Complaint in that action

3   seeks (among other relief) a judgment setting aside the Cardiffs' transfer of the

4   Residence to the Jurikel Family Trust as a fraudulent transfer. [Id.] The action remains

5   pending. [Id.]

6   C.   The Preliminary Injunction and Inter/Media's Settlement with the Receiver

7   The Preliminary Injunction providing for the Receiver's appointment over the

8   Cardiffs, entered November 8, 2018 ("PI"), enjoined Inter/Media from taking any

9   further steps to enforce the Judgment. [Dkt. No. 59, Art. XXI (Stay of Actions).] Facing

10   the possibility of indefinite delay with respect to Inter/Media's judgment enforcement

11   efforts, Inter/Media entered into a Settlement Agreement with the Receiver in January

12   2020. [Bisno Decl. ¶ 11, Ex. 6.]

13   The Settlement Agreement contemplates the Receiver's prompt sale of the

14   Residence, with Inter/Media and the receivership estate each to receive 50 percent of

15   the net sale proceeds. [Id.] The Court approved the settlement and authorized the

16   Receiver to sell the Residence in mid-March 2020, with the sale subject to final Court

17   approval pursuant to 28 U.S.C. § 2001(b). [Dkt. Nos. 306 and 309.]

18   D.   Subsequent Developments

19   Nearly five months later, the Receiver still has not sold the Residence, which is

20   listed for sale at $1,865,000. [Bisno Decl. ¶ 13.] Meanwhile, arrearages on the senior

21   mortgage lien continue to accrue. As of March 18, 2020, the interest-bearing principal

22   balance of the mortgage was $1,418,201.53 and arrearages (which date to November

23   2018) totaled $227,191.69. [Declaration of Brick Kane filed July 16, 2020 (Dkt. No.

24   402) ¶ 12, Exs. 1-2.] By the time of the hearing on the Motion, six monthly payments in

25   the approximate amount of $12,576 each will have come due and not been paid. [Id.]

26   Thus, from all appearances, by the time of the hearing total arrearages will exceed

27   $300,000, if no payments are made.

28   On March 31, 2020, the Court held the Cardiffs in contempt of the PI based in

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA  91436
(818) 501-3800

4

1    part on their failure to keep the mortgage current, and found that the Cardiffs could

2    purge their contempt in this regard by "[r]eplenish[ing] the Receivership Estate for any

3    and all unpaid mortgage payments on the Upland Residence, until the date of sale of the

4    Upland Residence (as authorized by ECF Nos. 306, 309)." [Dkt. No. 315.] On July 24,

5    2020, the Court again found the Cardiffs in contempt for the same reason. [Dkt. No.

6    417.] The Court gave

> the Cardiffs a final opportunity to comply with the Court's Prior Orders **by noon on August 31, 2020** [on pain of incarceration of J. Cardiff] by (1) producing a detailed *truthful* accounting of all their assets held by, for the benefit of, or otherwise controlled, directly or indirectly, by the Cardiffs, including the true source of any funds paying their expenses through the date they purge themselves of their contempt; (2) turning over *all* their assets to the Receiver to be managed during the pendency of this litigation according to the terms of the PI; and (3) replenishing the Receivership Estate for any and all unpaid mortgage payments on the Upland Residence due until the date of the sale of the Residence as authorized by the Court's Orders.

[Id. (emphasis in original).]

     In opposition to Plaintiff Federal Trade Commission's contempt motion, the Cardiffs requested that the Receiver use approximately $360,000 seized from an account held in the name of Biztank Group LLC ("Biztank") to pay the arrearages. [Dkt. No. 390.] However, the Court found that "[b]ecause the Biztank money constitutes separate Assets that are to be frozen and put under Receivership, the Cardiffs still have an obligation under the Court's Orders to pay their past due mortgage and have not demonstrated inability to pay." [Dkt. No. 417.] Notably, the Court did not proscribe the Receiver from using the Biztank funds to cure the arrearages; the Court simply held that the Cardiffs could not purge their contempt by requiring the Receiver to do so.

     Inter/Media has periodically asked the Receiver for updates regarding the Receiver's efforts to sell the Residence but has not received any specific or concrete responses. [Bisno Decl. ¶ 13.] Inter/Media has also requested from the Receiver, but has not received, an accounting for all cash on hand in the receivership estate and the source of such funds. [Id. ¶ 14.]

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800

ARGUMENT

The Court's Order that the Cardiffs cure the arrearages on the Residence while also turning over all their assets to the Receiver appears to assume that the Cardiffs have substantial undisclosed assets. Presumably the Cardiffs could purge their contempt by turning over all of their assets to the Receiver except funds needed to cure the arrearages, and then using the remaining funds for this purpose. Or the Cardiffs could turn over all their assets to the Receiver and earmark adequate funds for payment of the arrearages.

The Court ordered the Cardiffs to engage in *"replenishing the Receivership Estate for any and all unpaid mortgage payments on the Upland Residence due until the date of the sale of the Residence as authorized by the Court's Orders."* "Replenish" or "Replenishing" means to make full or complete again, as by furnishing a new supply (Webster's New World College Dictionary, 4th Edition. Copyright © 2010 by Houghton Mifflin Harcourt. All rights reserved.). Replenish is tantamount to "reimburse". If the Receiver needs to be "reimbursed" or "replenished," the Order implies reimbursement is for mortgage payments the Receiver has already made on behalf of the Cardiffs.

Replenishment occurs after the Receiver has expended funds to pay the mortgage. But here, the Receiver controls all of the Cardiff assets and has made no mortgage payments. The Receiver has failed to pay the mortgage and takes the absurd position that the Cardiffs must pay the mortgage from an unnamed source of funds that the Receiver has not yet seized, while at the same time, the Receiver asserts that all of the Cardiff assets, whether seized or not, belong to, and are controlled by the Receiver. It's completely circular logic. Carried to its logical conclusion, the mortgage will only be paid if the Cardiffs utilize undisclosed funds that have not yet been seized by the Receiver. Why should the source of funding be limited to Cardiff's undisclosed funds? It makes no sense.

Inter/Media remains hopeful that the Cardiffs will somehow cure the arrearages

1   and the Receiver will be able to sell the Residence in short order for a price that

2   generates a meaningful return to Inter/Media and the receivership estate. However,

3   given the Cardiffs' long history of defrauding Inter/Media and evading Inter/Media's

4   lawful judgment enforcement efforts, Inter/Media is skeptical that even the threat of

5   incarceration will compel the Cardiffs to act appropriately.

6        If the Cardiffs have not cured the arrearages by the time of the hearing on the

7   Motion, Inter/Media respectfully requests that the Court enter an order directing the

8   Receiver to do so, to the extent the Court has unencumbered cash on hand to do so.

9   Importantly, such an order would in no way purge the Cardiffs' contempt; they would

10  remain obligated to replenish the receivership estate—on pain of J. Cardiffs'

11  incarceration—for any monies the Receiver spends to cure mortgage arrearages.

12       The PI providing for the Receiver's appointment over the Cardiffs (at Article

13  XVI(D)) requires the Receiver to "conserve, hold, manage, and prevent the loss of all

14  Receivership Property, and perform all acts necessary or advisable to preserve the value

15  of those Assets." Article XVI(L) of the PI further orders the Receiver to "prevent the

16  inequitable distribution of Assets."

17       Inter/Media is informed that the Receiver has substantial cash on hand. Keeping

18  these funds on deposit in a (presumably non-interest-bearing) account while interest

19  continues to accrue on the principal portion of the mortgage arrearages does not satisfy

20  the Receiver's obligation to conserve Receivership Property, given the receivership's

21  entitlement to 50 percent of the net sale proceeds from the Residence under the

22  Settlement Agreement.

23       This state of affairs is also fundamentally unfair and inequitable to Inter/Media.

24  The Cardiffs stopped paying their mortgage at about the same time the Receiver was

25  appointed, in October 2018. Inter/Media entered into the Settlement Agreement with

26  the Receiver in January 2020 with the expectation that the Receiver would promptly

27  sell the Residence. Instead, almost two years after the Receiver was appointed and

28  many months after the Court authorized the Receiver to sell the Residence, the

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800

Residence still has not been sold and mortgage arrearages have ballooned, to Inter/Media's dramatic detriment.

The Settlement Agreement reached with the Receiver and confirmed by the Court is like any other contract—there is an implied covenant of good faith and fair dealing. The Receiver has the ability to cure the arrearages and doing so will give Inter/Media the "benefit of its bargain" (50 percent of the sale proceeds), but the Receiver, in refusing to do so, drastically diminishes or perhaps even eliminates any net sale proceeds to Inter/Media that accrue from the Settlement Agreement. The Receiver owes a duty to all creditors and particularly to Inter/Media who is an innocent party and who is being prejudiced by the Receiver's refusal to pay an ongoing obligation of the Cardiffs when the Receiver has the means to do so. Inter/Media deserves the benefit of its bargain with the Receiver and reasonably expects the Receiver to cure the arrearages as an act of good faith and fair dealing.

The Court's "power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad." S.E.C. v. Capital Consultants, LLC, 397 F.3d 733, 738 (9th Cir. 2005). In this case, equity requires that the Receiver fulfill its end of the bargain with Inter/Media by curing the mortgage arrearages if the Cardiffs have not done so by the time of the hearing on this Motion.

CONCLUSION

For the foregoing reasons, Inter/Media respectfully requests that the Court enter an Order compelling the Receiver to cure the arrearages on the mortgage encumbering the Residence, to the extent the Cardiffs have not cured the arrearages by the time of the hearing on this Motion. The Cardiffs should still be obligated to replenish the receivership estate. Inter/Media also requests that the Court order the Receiver to disclose all marketing efforts, offers and counteroffers, and the sources and amounts of cash on hand in the receivership estate, to Inter/Media, who is an intended beneficiary of the Settlement Agreement entered into with the Receiver and approved by the Court.

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA  91436
(818) 501-3800

8

1    Dated:  August 7, 2020                    HEMAR, ROUSSO & HEALD, LLP

2

3                                              By:   /s/ Christopher D. Crowell
                                                     Jennifer Witherell Crastz
4                                                    Christopher D. Crowell
                                               Attorneys for Judgment Creditor
5                                              INTER/MEDIA TIME BUYING
                                               CORPORATION

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA  91436
(818) 501-3800

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA  91436
(818) 501-3800

## DECLARATION OF PETER BISNO

I, Peter Bisno, declare:

1.       I am an attorney licensed and admitted to practice before this Court and all courts of the State of California. I am, and at all times have been, the attorney of record for Inter/Media Time Buying Corporation ("Inter/Media") in the action previously pending before the Los Angeles County Superior Court ("State Court") styled Inter/Media Time Buying Corporation v. Run Away Products, LLC et al. and assigned Case Number LC102377 ("377 Action"), and in the action now pending before the State Court styled Inter/Media Time Buying Corporation v. Jason Edward Thomas Cardiff etc. et al. and assigned Case Number LC107302 ("302 Action").

2.       Except as to matters stated on information and belief (which I believe to be true), I have personal knowledge of the matters set forth in this declaration. I would testify competently to all such matters if asked to do so.[1]

### Basis for Inter/Media's Claim

3.       Inter/Media is an advertising agency that provides media buying and other advertising services. In November 2014, Inter/Media sued Jason Cardiff and Eunjung Cardiff (individually and collectively, "Cardiffs") in the 377 Action for damages arising from the defendants' failure to pay for Inter/Media's services, and the defendants' fraud in connection therewith. The parties signed a binding written Settlement Term Sheet to resolve their disputes in early September 2016, and Inter/Media reasonably expected that the final settlement agreement would be executed shortly thereafter.

4.       Over the next several months, the Cardiffs used various tactics to delay finalizing the settlement. The parties finally signed a Settlement Agreement in March 2017, a true and correct copy of which (without exhibits) is attached hereto as Exhibit 1 and incorporated herein by this reference.

---

[1]  All capitalized terms not defined in this declaration have the meanings the accompanying Motion or Memorandum of Points and Authorities ascribe to such terms.

5. In the Settlement Agreement, the Cardiffs represented, under penalty of perjury, that they were neither the trustees nor the beneficiaries of the Jurikel Family Trust (which held title to the Residence at the time) or any other trust. Inter/Media sought these assurances with respect to the Jurikel Family Trust to ensure that the Cardiffs would not be able to transfer the Residence so as to make the Residence unavailable to satisfy the judgment to be entered in accordance with the Settlement Agreement.[2] The Cardiffs also agreed in the Settlement Agreement not to "transfer, encumber, or sell assets outside the ordinary course that will prejudice any of the rights of the Inter/Media Parties."

6. The Cardiffs also admitted in the Settlement Agreement, under penalty of perjury, that Inter/Media's agreement to do business with them and their affiliates (individually and collectively, "Prolongz Parties")

and to provide services, property, finances, and extension of credit was obtained through false pretenses, false representations, and actual fraud. At the time of the signing of the [operative contracts] and throughout the performance and/or non-performance [thereof], Jason Cardiff and Eunjung No (individually and on behalf of the Prolongz Parties) had actual knowledge of their inability and/or unwillingness to perform the contractual obligations in such agreements and executed the [operative contracts] and instructed and/or consented to the ordering of advertising with the specific intent to defraud Inter/Media Time Buying Corporation and to induce Inter/Media Time Buying Corporation to enter into agreement(s) with third parties, to purchase media time, and to extend credit but not pay for the purchase of such media time and credit. Inter/Media Time Buying Corporation reasonably and justifiably relied on said false representations to its detriment. In addition, Jason Cardiff and Eunjung No, individually and on behalf of the Prolongz Parties provided oral and written statements of their financial condition to Inter/Media Time Buying Corporation that were materially false and were another causative factor leading to Inter/Media Time Buying Corporation's providing services, property, finances, and extension of credit. Said false statements regarding financial condition were made with the specific intent to deceive Inter/Media Time Buying Corporation

---

[2] This representation, unbeknownst to Inter/Media at the time, was untrue. Attached hereto as Exhibit 2 and incorporated herein by this reference is a true and correct copy of a Grant Deed dated April 24, 2014, and recorded in the Official Records of San Bernardino County, California ("Official Records"), on June 27, 2014, whereby the Cardiffs transferred the Residence to themselves in their capacity as Trustees of the Jurikel Family Trust.

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA  91436
(818) 501-3800

2

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800

to enter into the [operative contracts] and provide said services, property, finances, and credit. Inter/Media Time Buying Corporation reasonably and justifiably relied on said false statements regarding financial condition to its detriment.

7.      On March 27, 2017, the State Court entered a $970,725.93 Judgment Pursuant to Stipulation ("Judgment") in Inter/Media's favor and against the Cardiffs and the other defendants to the 377 Action. A true and correct copy of the Judgment is attached hereto as Exhibit 3 and incorporated herein by this reference.

The Cardiffs' Fraudulent Transfer of the Residence to an Asset Protection Trust

8.      The Cardiffs took advantage of the delay in finalizing the parties' settlement to orchestrate a fraudulent transfer of the Residence to an asset protection trust. Specifically, the Cardiffs, as Trustees of the Jurikel Family Trust, transferred the Residence to themselves, as Trustees of the Carols Place Trust, via a Warranty Deed dated January 31, 2017, and recorded in the Official Records seven days later. A true and correct copy of the Warranty Deed is attached hereto as Exhibit 4 and incorporated herein by this reference. The Cardiffs did so despite their sworn representation that they were not the trustees of the Jurikel Family Trust and despite their agreement not to transfer assets so as to prejudice Inter/Media's rights.

9.      On June 16, 2017, Inter/Media recorded an Abstract of Judgment with respect to the Judgment in the Official Records. A true and correct copy of the Abstract of Judgment is attached hereto as Exhibit 5 and incorporated herein by this reference. Inter/Media is informed and believes that the Jurikel Family Trust is a revocable trust, that the Cardiffs were the settlors of the Jurikel Family Trust, and that the transfer of the Residence to the Carols Place Trust was void as a fraudulent transfer. Inter/Media therefore contends that the recorded Abstract of Judgment created a judgment lien as to the Residence.

10.     Nevertheless, to preclude any argument that the Residence is not encumbered by Inter/Media's judgment lien, Inter/Media filed the 302 Action in May 2018. Inter/Media's operative First Amended Complaint in the 302 Action seeks

1   (among other relief) a judgment setting aside the Cardiffs' transfer of the Residence to

2   the Jurikel Family Trust as a fraudulent transfer. The action remains pending.

3          <u>The Preliminary Injunction and Inter/Media's Settlement with the Receiver</u>

4          11.    The Preliminary Injunction providing for the Receiver's appointment over

5   the Cardiffs, entered November 8, 2018, enjoined Inter/Media from taking any further

6   steps to enforce the Judgment. Facing the possibility of indefinite delay with respect to

7   Inter/Media's judgment enforcement efforts, Inter/Media entered into a Settlement

8   Agreement with the Receiver in January 2020. A true and correct copy of the

9   Settlement Agreement is attached hereto as <u>Exhibit 6</u> and incorporated herein by this

10   reference. The Settlement Agreement contemplates the Receiver's prompt sale of the

11   Residence, with Inter/Media and the receivership estate each to receive 50 percent of

12   the net sale proceeds. The Court approved the settlement and authorized the Receiver to

13   sell the Residence in mid-March 2020, with the sale subject to final Court approval

14   pursuant to 28 U.S.C. § 2001(b). [Dkt. 306]. The Court in its Order explained, *"With*

15   *the mortgage now going unpaid, the equity is being depleted, and the home risks going*

16   *underwater. This does not maintain the status quo of Cardiff Defendants' assets, as*

17   *instructed by the PI"*.

18          12.    Nearly five months later, the Receiver still has not sold the Residence,

19   which is listed for sale at $1,865,000. Meanwhile, arrearages on the senior mortgage

20   lien continue to accrue and the status quo of the Cardiff assets is not being maintained

21   as required by the Preliminary Injunction. Inter/Media has periodically asked the

22   Receiver for updates regarding the Receiver's efforts to sell the Residence but has not

23   received any specific or concrete responses. On August 4, 2020, the Receiver's attorney

24   Michael Fletcher told me that the Receiver has received at least one offer to buy the

25   Residence and made a counter-offer in response. However, Mr. Fletcher told me that he

26   was not at liberty to tell me the amounts of the offer and the counter-offer. Mr. Fletcher

27   also stated that the Cardiffs were not giving prospective buyers full access to visit the

28   Residence.

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800

13.     During this same phone call, I asked Mr. Fletcher to tell me how much cash the Receiver has on hand and the source of the funds. Mr. Fletcher mentioned the funds seized from the Biztank account and various other monies, but indicated he was not able to provide a complete account of all cash on hand "off the top of his head," or words to that effect nor was he able to provide any rough estimate of cash on hand. But Mr. Fletcher unequivocally has refused to pay the mortgage arrearages. Any such payment will not negate or affect the Cardiff's obligation to <u>replenish</u> to the Receiver the mortgage arrearages, as ordered by the Court and will serve to preserve the status quo status of the Cardiff assets, as required by the preliminary injunction.

14.     Inter/Media is a secured creditor and an innocent judgment creditor who was stopped "in its tracks" from enforcing its judgment against the Cardiffs when the Preliminary Injunction was ordered. Since that time, Inter/Media has met with the FTC's representatives and has fully and voluntarily cooperated with the FTC in every conceivable respect, and has acted in the utmost good faith in entering into the Settlement Agreement with the Receiver with the full expectation that both  parties to the Settlement Agreement (the Receiver and Inter/Media) would do everything in their power to maximize the recovery from the sales of the Residence. By curing the arrearages, the "Net Proceeds" will be maximized and this inures directly to the benefit of both the Receiver (on behalf of all creditors) and secured creditor Inter/Media. As between the parties to the Settlement Agreement, only the Receiver has the ability to use available cash to cure the arrearages and maximize recovery to creditors and facilitate Inter/Media receiving the benefit of its bargain with the Receiver. By refusing to do so, the Receiver is choosing to dilute and negate the benefit of the bargain to Inter/Media who in good faith entered into the Settlement Agreement.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on August 7, 2020, at Studio City, California.

PETER BISNO

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA  91436
(818) 501-3800

# EXHIBIT 1

<u>SETTLEMENT AGREEMENT WITH RELEASE</u>

This Settlement Agreement with Mutual Release ("this Agreement" or "this Settlement Agreement"), is effective as of March 10, 2017 ("Effective Date") by and between INTER/MEDIA TIME BUYING CORPORATION ("Inter/Media Time Buying Corporation"), INTER/MEDIA ADVERTISING, INC., INTER/MEDIA INTERACTIVE, INC., INTER/MEDIA CHARITABLE FOUNDATION, INTER/IMAGE PRODUCTIONS, INCORPORATED, INTER/POST PRODUCTIONS, INC., INTERQUANTUM, LLC, INFOTECH DEVELOPMENT, INC, MEDIAPOINT NETWORK, INC., and BELLATRIX MEDIA, INC. on the one hand (collectively, the "Inter/Media Parties") and RUN AWAY PRODUCTS, LLC, individually and doing business as PROLONGZ;  ADVANCED MEN'S INSTITUTE PROLONGZ, LLC;  REDWOOD SCIENTIFIC TECHNOLOGIES, LLC, a California Limited Liability Company, REDWOOD SCIENTIFIC TECHNOLOGIES, INC., a Nevada Corporation, REDWOOD SCIENTIFIC TECHNOLOGIES, INC., a California Corporation, EUNJUNG CARDIFF AKA EUNJUNG NO AKA EUNJUNG LEE AND JASON CARDIFF (collectively, the "Prolongz Parties") on the other hand, collectively sometimes referred to as the Parties and individually referred to as "Party", on the terms and for the consideration set forth hereinbelow.

<u>RECITALS</u>

A.    Inter/Media Time Buying Corporation ("Inter/Media Time Buying Corporation") is a California corporation whose principal place of business is in Woodland Hills, CA. Inter/Media Time Buying Corporation is an advertising agency that provides media buying and advertising related services to its clients.  These services were provided through "Intermedia Advertising" (Plaintiff's fictitious business name), and through Mediapoint Network, Inc. and Inter/Image Productions, Incorporated, its wholly owned subsidiaries

B.    Inter/Media Advertising, Inc., Inter/Media Interactive, Inc., Inter/Image Productions, Incorporated, Inter/Post Productions, Inc., Infotech Development, Inc., Mediapoint Network, Inc., and Bellatrix Media, Inc. are all California corporations whose principal place of business is in Woodland Hills, CA.  Inter/Media Charitable Foundation is a nonprofit California corporation whose principal place of business is in Woodland Hills, CA.  InterQuantum, LLC is a California limited liability company whose principal place of business is in Woodland Hills, CA.  Inter/Media Advertising is a dba of Inter/Media Time Buying Corporation.  All of the entities referred to in this recital are affiliated with Inter/Media Time Buying Corporation and, along with Inter/Media Time Buying Corporation, are collectively referred to as the "Inter/Media Parties".

C.    Run Away Products, LLC ("Run Away") is a New York limited liability company that at times did business under the name "Prolongz", Advanced Men's Institute Prolongz, LLC

Settlement Agreement (Version 13)
March 10, 2017
Page 1 of 22

EXECUTION DOCUMENT - FINAL- Page 2 of 39    Date: 03/15/2017   Time: 18:35

is a California limited liability, Redwood Scientific Technologies, LLC is a California LLC, Redwood Scientific Technologies, Inc. is a Nevada Corporation and a successor to Advanced Men's Institute Prolongz, LLC and Redwood Scientific Technologies, LLC. Additionally, there is Redwood Scientific Technologies, Inc., a California corporation. These companies were involved in the marketing and sales of "Prolongz", a sex product that purports to assist in the slowing or delaying of male ejaculation during sexual intercourse. Eunjung Cardiff aka Eunjung No aka Eunjung Lee and Jason Cardiff are officers and/or directors and/or managers and/or owners of the legal entities described in this recital. All of the entities referred to in this recital are affiliated with Eunjung Cardiff aka Eunjung No aka Eunjung Lee and Jason Cardiff and are collectively referred to as the "Prolongz Parties".

D.     Run Away and Inter/Media Time Buying Corporation signed a written agreement in 2014 ("2014 Contract") through which Inter/Media Time Buying Corporation purchased time slots ("media time") for the airing of Run Away's television ads that promoted the product "Prolongz". Inter/Media Time Buying Corporation proposed the schedule/calendar for the television ads to be run, obtained Run Away's approval for the schedule, paid the advertising costs to the television stations, and then billed Run Away for these costs (advanced by Inter/Media Time Buying Corporation) plus a commission for Inter/Media Time Buying Corporation's services. The television ads ran from April 2014 through September 2014. The 2014 Contract called for payment of all invoices when due, an interest at the rate of 1.5 % per month on late invoices. The 2014 Contract also provided that attorneys fees and costs would be paid to the aggrieved party in the event of a breach of contract.

E.     Jason Cardiff signed a written guaranty ("Cardiff Guaranty") personally guarantying the obligations of Run Away pursuant to the 2014 Contract and his spouse, Eunjung Cardiff, aka Eunjung No aka Eunjung Lee, fully acknowledged and consented in writing to the Cardiff guaranty. The Cardiff Guaranty also provided that attorneys fees and costs would be paid to the aggrieved party in the event of a breach of contract.

F.     Prior to signing the 2014 Contract, Inter/Media Time Buying Corporation purchased media time for Run Away and invoiced Run Away for the media time expense.

G.     Inter/Media Time Buying Corporation was authorized and did provide additional advertising, production, and related services to Run Away through its wholly owned subsidiaries, including the scheduling of television ads to be run on a "per inquiry" basis. This media time was billed on a "cost per lead" basis and were provided by Plaintiff through its wholly owned subsidiary, MediaPoint Network, Inc. These ads ran from June 2014 through October 2014.

H.     Inter/Media Time Buying Corporation, through its subsidiary Inter/Image Productions, Incorporated, provided "production services" to the Prolongz Parties, which included media customization, duplication, shipping, and veil encoding.

Settlement Agreement (Version 13)
March 10, 2017
Page 2 of 22

EXECUTION DOCUMENT - FINAL- Page 3 of 39    Date: 03/15/2017   Time: 18:35

I.       On or about November 25, 2014, Inter/Media Time Buying Corporation filed a
lawsuit against the Prolongz Parties in Los Angeles Superior Court, Case # LC102377
("Superior Court Complaint") , seeking damages for the failure of the Prolongz Parties to pay
sums owed pursuant to the 2014 Contract, the Cardiff Guaranty, the per inquiry advertising,
production costs, and other advertising, as more fully described in Recital D, E, F, G, H and in
the Superior Court Complaint.

J.       On or about June 5, 2015, Run Away filed its Answer to the Complaint and filed a
Cross-Complaint ("Superior Court Cross-Complaint") against all of the Inter/Media Parties
alleging "alter ego" and alleging that advertising that Inter/Media Time Buying Corporation
secured and paid for was not properly approved by Run Away, and that Inter/Media Time
Buying Corporation's negligence in managing the Run Away advertising caused financial
damage to Run Away.

K.       The Inter/Media Parties filed an Answer to the Superior Court Cross-Complaint in
which they denied all allegations in the Cross-Complaint.

L.       The Inter/Media Parties contend that all the subject advertising was pre-approved
by Run Away, and ran when scheduled, and the Run Away advertising was managed
competently and resulted in substantially increased sales to Run Away.  The Prolongz Parties
contend otherwise.

M.      During the course of the litigation, Inter/Media Time Buying Corporation made
several discovery motions that resulted in monetary sanctions being awarded against Charles H.
Smith, counsel for the Prolongz Parties, and in favor of Inter/Media Time Buying Corporation, in
the sum of $7,500.00 ("Smith Sanctions").  Of this sum, $1,000 was awarded jointly and
severally against Charles H. Smith and each of the Prolongz Parties.   None of these sanctions
have been paid.

N.       On or about April 3, 2016, the Parties agreed that the matters in dispute as stated
in the Superior Court Complaint and the Superior Court Cross-Complaint be submitted to
binding arbitration (the "Arbitration") with the Superior Court retaining jurisdiction to enter
certain orders that would be binding on the arbitrator.

O.       On or about August 23, 2016, the Superior Court ordered "issue" sanctions to be
imposed against the Prolongz Parties, jointly and severally, and monetary sanctions. The "issue"
sanctions effectively disposed of most of the contested issues by rendering a binding decision in
favor of the Inter/Media Parties.  In addition, the Superior Court imposed monetary sanctions in
the amount of $10,000.00 jointly and severally against each of the Prolongz Parties and in favor
of Inter/Media Time Buying Corporation, and had previously imposed $1,000 in monetary
sanctions against the Prolongz Parties, bringing the amount due from the Prolongz Parties to
$11,000.00 in favor of Inter/Media Time Buying Corporation. Of this sum, $1,000 was awarded

jointly and severally against Charles H. Smith and each of the Prolongz Parties.  None of these
sanctions have been paid.

P.      On or about March 7, 2017, the Superior Court ordered additional monetary
sanctions in the amount of $250.00 against Defendant Jason Cardiff and in favor of Inter/Media
Time Buying Corporation and ordered monetary sanctions in the amount of $1,000.00 against
Defendant  Eunjung Cardiff aka "Eunjung No" aka "Eunjung No Cardiff" aka "Eunjung Lee"
and in favor of Inter/Media Time Buying Corporation.  None of these sanctions have been paid.

Q.      On September 7, 2016, the Parties participated in a Neutral Fact Finding Meeting
before the Honorable Enrique Romero and reached a settlement, as memorialized in an executed
Final Stipulation for Settlement/Term Sheet ("September 7, 2016 Term Sheet").

R.      This Settlement Agreement replaces and supersedes the September 7, 2016 Term
Sheet, which remains valid and enforceable until this Settlement Agreement is executed.

S.      The Parties to this Agreement now deem it to be in their best interests and mutual
advantage to resolve their disputes on the terms set forth herein and the Parties.


        **WHEREFORE,** for valuable consideration, including the promises as set forth below
and the payment of monies as set forth below, the Parties agree as follows:

<u>AGREEMENT</u>

1.      The Prolongz Parties shall execute a Stipulation for Entry of Judgment (the
"Stipulation for Judgment") in the form set forth in Exhibit 1, attached and incorporated herein
by reference as if fully set forth herein.  The Stipulation for Judgment shall provide for
immediate entry of a money judgment (the "Judgment" or "Original Judgment"), against each of
the Prolongz Parties, jointly and severally, and in favor of Inter/Media Time Buying Corporation,
to compensate Inter/Media Time Buying Corporation for allegations set forth in the Superior
Court Complaint including the fraud claims more fully described in the 8th Cause of Action of
the Superior Court Complaint and in Paragraph 11 (k) of this Agreement, in the principal amount
of $1,050,000 with interest to accrue at the rate of five percent (5%) simple interest per annum
on a 365/365 basis, beginning September 7, 2016, together with $25,000.00 for a one-time
agreed upon charge, with interest to accrue at the rate of five percent (5%) simple interest per
annum on a 365/365 basis, beginning March 10, 2017, less any payments made on or after
September 7, 2016 (any such payments shall be applied first to accrued unpaid interest and then
to the principal balance) (collectively the "Settlement Sum").  Interest on the Settlement Sum
shall continue to accrue at the rate of five percent (5%) per annum on a 365/365 basis until paid
in full.  The Parties agree that the Stipulation for Judgment and Judgment shall further provide
that the Judgment shall be amended (the "Amended Judgment ") upon *ex parte* application of

EXECUTION DOCUMENT - FINAL- Page 5 of 39    Date: 03/15/2017   Time: 18:35

Inter/Media Time Buying Corporation without further notice to the Prolongz Parties, in the event
of an uncured default as further described in Paragraph 6 and 7, and such amendment in the form
set forth in Exhibit 2, attached and incorporated by reference, shall modify the Original
Judgment so it consists of the numeric sum of the following five component amounts: (1) the
original principal amount of $1,050,000.00; (2) interest calculated on the principal amount of
$1,050,000.00 at the contract rate of eighteen percent (18%) per annum from November 25, 2014
to the date of entry of the Original Judgment, together with interest calculated on the principal
amount of $1,050,000.00 at legal rate of ten (10%) from to the date of entry of the Original
Judgment to the date of entry of the Amended Judgment; (3) a one-time agreed upon charge in
the original amount of $25,000.00 with interest calculated thereon at the legal rate of ten percent
(10%) per annum on a 365/365 basis from March 10, 2017 to the date of entry of the Amended
Judgment; (4) all attorneys' fees and costs incurred by Plaintiff from November 25, 2014 to the
date of entry of the Amended Judgment, arising from or in any manner related to the prosecution
of Plaintiff's Complaint, the defense of the Cross-Complaint, settlement of Plaintiff's Complaint
and the Cross-Complaint, and pre and post judgment matters, including but not limited to the
enforcement of the Settlement Agreement and entry of the Original Judgment and the Amended
Judgment, in the total amount of $_____ (to be determined upon application); (5) the additional
sum of $18,750.00, constituting the monetary sanctions entered in favor of Plaintiff, together
with interest accruing thereon at legal rate of ten (10%) from the date of entry of the Original
Judgment to the date of entry of the Amended Judgment minus any payments made on or after
September 7, 2016, to be applied first to accrued unpaid interest then to the remaining balance of
the sum of amounts (1) through (5) (the amount of the Amended Judgment is sometimes referred
to as the "Augmented Settlement Sum").  Interest on the Amended Judgment shall continue to
accrue at the legal rate of ten percent (10%) per annum on a 365/365 basis until paid in full.  This
Agreement and the judgments arise from Inter/Media Time Buying Corporation's fraud claims as
established in the Superior Court Complaint and as referred to in Paragraph 11 (k) of this
Agreement.  Inter/Media Time Buying Corporation preserves and reserves its right to assert the
nondischargeable nature of such obligations.

      2.      The Parties stipulate and agree that the Judgment and Amended Judgment shall be
enforceable in all jurisdictions in the United States and in all foreign jurisdictions including
without limitation, the United Kingdom.  Upon written request of Inter/Media Time Buying
Corporation, the Prolongz Parties and their counsel shall execute any and all documents,
pleadings, forms, declarations, and affidavits necessary to render the Judgment and Amended
Judgment enforceable in these jurisdictions.

      3.      Inter/Media Time Buying Corporation shall be unconditionally entitled to
immediately file a Notice of Judgment Lien with the California Secretary of State and Abstracts
of Judgment in localities that Inter/Media Time Buying Corporation believe the Prolongz Parties
may own real property now or may own real property in the future.

      4.      Inter/Media Time Buying Corporation shall be unconditionally entitled to

immediately file sister state judgments in any state located in the United States of America as well as Notices of Judgment Lien and Abstracts of Judgment in localities in those government subdivisions (states, counties, territories, towns, etc.) that Inter/Media Time Buying Corporation believes the Prolongz Parties may own real property now or may own real property in the future and such judgments shall be fully enforceable in these jurisdictions.  The Prolongz Parties shall execute any and all documents, pleadings, forms, declarations, and affidavits necessary in cooperation with Inter/Media Time Buying Corporation's counsel to facilitate the obtaining of the sister state judgments.

5.      The Prolongz Parties are responsible, jointly and severally, and shall make the following lump sum payments to Inter/Media Time Buying Corporation in the amounts and on the dates set forth below:

a.      As of March 9, 2017, the Prolongz Parties have made payments in the total amount of $70,000.01, of which $25,326.51 has been applied to accrued interest and $44,673.50 to the principal balance of the Settlement Sum.

An interim payment in the amount of $2,500.00 is due and payable on March 13, 2017.

b.      Beginning on March 20, 2017, payments are due in the amounts on the dates specified below, plus a single final payment on January 14, 2019 that, along with the timely payments described in this Paragraphs 5a and 5b will result in timely payment in full of the Settlement Sum balance plus interest (as described in Paragraph 1 of this Agreement).

i.      A single payment in the amount of $56,800.00 on March 20, 2017;
ii.     Weekly payments each in the amount of $3,976.00 on the following dates in 2017:
March 27; April 3, 10, 17, 24;
iii.    A single payment in the amount of $56,800.00 on May 1, 2017;
iv.     Weekly payments each in the amount of $3,976.00 on the following dates in 2017:
May 8, 15, 22, 29;
June 5, 12, 19, 26;
July 3, 10, 17;
v.      Weekly payments each in the amount of $6,248.00 on the following dates in 2017:
July 24, 31;
August 7, 14, 21, 28;
September 4, 11, 18, 25;

EXECUTION DOCUMENT - FINAL- Page 7 of 39    Date: 03/15/2017   Time: 18:35

October 2, 9, 16, 23, 30;
November 6, 13, 20, 27;
December 4, 11;

vi.   A single payment in the amount of $170,400.00 on December 18, 2017;

vii.   Weekly payments each in the amount of $7,384.00 on the following dates:

December 25, 2017;
January 1, 8, 15, 22, 29 (these are all 2018 dates);
February 5, 12, 19, 26 (these are all 2018 dates);
March 5, 12, 19, 26 (these are all 2018 dates);
April 2, 9, 16, 23, 30 (these are all 2018 dates);
May 7, 14, 21, 28 (these are all 2018 dates)
June 4, 11, 18, 25 (these are all 2018 dates);
July 2, 9, 16, 23, 30 (these are all 2018 dates);
August 6, 13 (these are all 2018 dates);

viii.   A single payment in the amount of $170,400.00 on August 20, 2018;

ix.   Weekly payments each in the amount of $8,520.00 on the following dates:

August 27, 2018;
September 3, 10, 17, 24 (these are all 2018 dates);
October 1, 8, 15, 22, 29 (these are all 2018 dates);
November 5, 12, 19, 26 (these are all 2018 dates);
December 3, 10, 17, 24, 31 (these are all 2018 dates)
January 7, 2019;

x.   A single final payment on January 14, 2019 that, along with the payments described in this Paragraphs 5a and 5b will result in timely payment in full of the Settlement Sum balance plus interest (as described in Paragraph 1 of this Agreement).

**The entire unpaid Settlement Sum balance, and all accrued unpaid interest, and any other outstanding amounts due to the Inter/Media Parties pursuant to this Agreement shall be due and payable by no later than January 14, 2019 (the "Maturity Date").**

The parties intend for this payment schedule to reflect a principal amount of $1,050,000.00 as of September 7, 2016, together with an additional $25,000.00 representing a one-time agreed upon charge on March 10, 2017, to carry 5% APR simple interest with no prepayment penalty, so long as the payments are made on time and in the correct amount. The parties believe that the above payment schedule reflects that. However,

Settlement Agreement (Version 13)
March 10, 2017
Page 7 of 22

should the parties agree that there is a mathematical error in the calculation of the above payment schedule, then the parties shall recalculate and redraft the above payment schedule.

For illustration purposes, if the payments described in Paragraph 5, subsections (a) and (b)(i)-(b)(ix) of this Agreement, are timely made in full on the exact dates specified therein, then the final payment amount due on the Maturity Date would be for the amount of $8,606.67.  This illustration presumes that each of the payments described in this Paragraph 5, subsections (a) and (b), are timely made on the dates specified, by no later than 3:00 PM.

**The Prolongz Parties acknowledge that the final payment due on the Maturity Date may be for an amount greater than the periodic payment amounts made pursuant to Paragraph 5, subsection (b), and may differ from the above illustration, due to any failure on behalf of the Prolongz Parties in making the payments described in Paragraph 5, subsections (a) through (b), in full and/or in a timely matter.**

c.    All Settlement Sum payments are to be made by wire transfer to Inter/Media Time Buying Corporation.  Unless otherwise stated, all Settlement Sum payments are due on Monday by no later than 3:00 PM, Los Angeles local time.  If the date specified for payment is a bank holiday, as observed by the Federal Reserve System, payment is due the following business day.  Payments will be applied on the day they are received, first to accrued unpaid interest and then to the principal balance.

Notwithstanding anything contained in this Agreement, the Prolongz Parties may prepay all or any part of the outstanding Settlement Sum balance at any time without penalty.

6.    Each of the following shall constitute an event of default ("Event of Default") under this Agreement:

a.    The Prolongz Parties fail to make any payment when due under this Agreement.

b.    Any of the representations and warranties in Paragraph 11 below are false or misleading in any material respect.

c.    Prolongz Parties fail to comply with or to perform any other term, obligation, covenant, or condition contained in this Agreement, or in any

of the other documents executed in connection with this Agreement, and all extensions, renewals, modifications and replacements of any and all of such documents.

7.    In the Event of Default under this Agreement:

    a.    The Prolongz Parties shall be given written notice of any such default by notice to counsel for the Prolongz Parties and to Jason Cardiff, whose contact information is set forth in the "Notices" section of this Agreement.

    b.    The Prolongz Parties shall thereafter have three (3) business days within which to cure such default.

    c.    In the event of an uncured default, Inter/Media Time Buying Corporation shall be entitled to file and have the Court enter the Amended Judgment in the manner and as described in Paragraph 1.

    d.    Neither the acceptance of any partial or delinquent payment by Inter/Media Time Buying Corporation, nor Inter/Media Time Buying Corporation's failure to exercise any of its rights or remedies upon default by the Prolongz Parties shall be a waiver of the default, a modification of the Settlement Agreement, or of the Prolongz Parties' obligations under the Settlement Agreement, or a waiver of any subsequent default by the Prolongz Parties.

8.    Except for the post judgment activities specifically described in Paragraphs 2, 3 and 4, Inter/Media Time Buying Corporation shall forego executing on the Judgment unless and until there is an uncured default. Thereafter, Inter/Media Time Buying Corporation shall not be restricted in any manner from exercising all post judgment rights and remedies.

9.    Concurrent with the execution of this Agreement, the Prolongz Parties shall furnish to Inter/Media Time Buying Corporation copies of the security agreement with the "unit holders" upon which the UCC-1 identified as NV 2015-003238-9.

10.    Concurrent with the execution of this Agreement, the Prolongz Parties shall furnish to Inter/Media Time Buying Corporation copies of all filings relating to the patent applications for Prolongz and all trade mark applications and approvals pertaining to Prolongz.

11.    The Prolongz Parties, including without limitation, Jason Cardiff and Eunjung No as individuals, each make the following representations and warranties:

    a.    Any and all UCC-1 financing statements previously filed against Run

Away Products, LLC, Advanced Men's Institute Prolongz LLC, Redwood Scientific Technologies, LLC, Redwood Scientific Technologies, Inc., a Nevada Corporation, and Redwood Scientific Technologies, Inc., a California Corporation whether individually or doing business as Prolongz, have been released.

b.   The following UCC-1 filings have been released:  California Filing # 16-7516349032 and NV 2015-003238-9 and California 15-7448543526

c.   The Deed of Trust recorded on April 30, 2012 as Document # 20120632611 whose original Beneficiary is Run Away Products, LLC, has been released and reconveyed.

d.   Advanced Men's Institute Prolongz, LLC, Redwood Scientific Technologies, LLC, Redwood Scientific Technologies, Inc., a Nevada Corporation, or Redwood Scientific Technologies, Inc., a California Corporation own all trademark and patents (pending) for all Prolongz products that are currently being marketed or sold by any of the Prolongz Parties.

e.   The real property located at 716 Valparaiso Drive, Claremont, CA was sold to a disinterested third party in 2013 and none of the Prolongz Parties presently have an ownership interest in said property.

f.   None of the Prolongz Parties has ever had an ownership or management interest in Claraboya Properties, LP.

g.   Neither Jason Cardiff or Eunjung No aka Eunjung Cardiff aka Eunjung Lee are trustees or *de* facto trustees or beneficiaries or *de facto* beneficiaries of any trust.

h.   Neither Jason Cardiff or Eunjung No aka Eunjung Cardiff aka Eunjung Lee are the trustees or *de* facto trustees or beneficiaries or *de facto* beneficiaries of Jurikel Family Trust.

i.   The Prolongz Parties shall not transfer, encumber, or sell, assets outside the ordinary course that will prejudice any of the rights of the Inter/Media Parties.

j.   The residence address listed in the Notices section of this Agreement accurately states the residence address of Jason Cardiff and Eunjung No aka Eunjung Cardiff aka Eunjung Lee.

EXECUTION DOCUMENT - FINAL- Page 11 of 39   Date: 03/15/2017   Time: 18:35

k.    Jason Cardiff and Eunjung No, individually and on behalf of the Prolongz
Parties, executed the Cardiff Guaranty and the 2014 Contract in which
they promised to timely pay Inter/Media Time Buying Corporation for
services, property, financing, and extension of credit.  Inter/Media Time
Buying Corporation's agreement to do business with the Prolongz Parties
and to provide services, property, finances, and extension of credit was
obtained through false pretenses, false representations, and actual fraud.
At the time of the signing of the Cardiff Guaranty and at the time of the
signing of the 2014 Contract and throughout the performance and/or non-
performance of the Cardiff Guaranty and the 2014 Contract, Jason Cardiff
and Eunjung No (individually and on behalf of the Prolongz Parties) had
actual knowledge of their inability and/ or unwillingness to perform the
contractual obligations in such agreements and executed the Cardiff
Guaranty and the 2014 Contract and instructed and/or consented to the
ordering of advertising with the specific intent to defraud Inter/Media
Time Buying Corporation and to induce Inter/Media Time Buying
Corporation to enter into agreement(s) with third parties, to purchase
media time, and to extend credit but not pay for the purchase of such
media time and credit.  Inter/Media Time Buying Corporation reasonably
and justifiably relied on said false representations to its detriment.  In
addition, Jason Cardiff and Eunjung No, individually and on behalf of the
Prolongz Parties provided oral and written statements of their financial
condition to Inter/Media Time Buying Corporation that were materially
false and were another causative factor leading to Inter/Media Time
Buying Corporation's providing services, property, finances, and
extension of credit.  Such false statements regarding financial condition
were made with the specific intent to deceive Inter/Media Time Buying
Corporation and to induce Inter/Media Time Buying Corporation to enter
into the Cardiff Guaranty and the 2014 Contract and provide said services,
property, finances, and credit.   Inter/Media Time Buying Corporation
reasonably and justifiably relied on said false statements regarding
financial condition to its detriment.

l.    The Prolongz Parties, including Jason Cardiff and Eunjung No (1) fully
intend to comply with the terms and conditions of this Agreement and (2)
reasonably believe that they have the financial ability to do so.

12.    Jason Cardiff and Eunjung No each declare under penalty of perjury under the
laws of the State of California that the representations made in Paragraph 11 (a) through (l),
inclusive, are true and correct, and this declaration is executed on March 17, 2017 in
Upland _____ (city), California _____ (state).

Settlement Agreement (Version 13)
March 10, 2017
Page 11 of 22

EXECUTION DOCUMENT - FINAL- Page 12 of 39    Date: 03/15/2017   Time: 18:35

Dated: March ☐, 2017

_____
Jason Cardiff

Dated: March ☐, 2017

_____
Eunjung No

13.    Concurrent with the execution of this Agreement, the Prolongz Parties shall
furnish to Inter/Media Time Buying Corporation copies of the UCC releases referred to in
Paragraph 11 (a) and (b) and the reconveyance/release of the Deed of Trust referred to in
Paragraph 11 (c).

14.    The Prolongz Parties shall each sign separate security agreements granting
blanket security interests in all assets of Run Away Products, LLC, individually and doing
business as Prolongz, Advanced Men's Institute Prolongz, LLC, Redwood Scientific
Technologies, LLC, Redwood Scientific Technologies, Inc., a Nevada Corporation and Redwood
Scientific Technologies, Inc., a California Corporation. Cigirex UK LTD shall sign a separate
security agreement granting blanket security interests in of its assets in the United States and in
the United Kingdom. Jason Cardiff and Eunjung Cardiff aka Eunjung No aka Eunjung Lee shall
sign separate security agreements pledging their ownership of shares/units of Redwood Scientific
Technologies, Inc., a Nevada Corporation to Inter/Media Time Buying Corporation. The
Prolongz Parties shall sign security agreements granting Inter/Media Time Buying Corporation a
security interest in all trademarks and patents held by the Prolongz Parties, whether pending or
not. Inter/Media Time Buying Corporation is authorized to take whatever steps are necessary to
perfect those interests and the Prolongz Parties shall sign any/all documents and turnover any/all
documents necessary in connection with such perfection.

15.    Run Away Products, LLC, Advanced Men's Institute Prolongz LLC, Redwood
Scientific Technologies, LLC, Redwood Scientific Technologies, Inc., a Nevada Corporation and
Redwood Scientific Technologies, Inc., a California Corporation shall grant Inter/Media Time
Buying Corporation a blanket security interest in all its retail sales and receivables including
without limitation the GNC contract. Inter/Media Time Buying Corporation is authorized to take
whatever steps are necessary to perfect those interests and the Prolongz Parties shall sign any/all
documents and turnover any/all documents necessary in connection with such perfection Copies
of all GNC contracts with the Prolongz Parties shall be provided to Inter/Media Time Buying
Corporation prior to the execution of this Agreement.

16.    The security and pledge agreements referred to in this Agreement shall be
released when the Judgment is fully satisfied and paid in full.

Settlement Agreement (Version 13)
March 10, 2017
Page 12 of 22

EXECUTION DOCUMENT - FINAL- Page 13 of 39    Date: 03/15/2017   Time: 18:35

17.     Concurrent with, or within thirty (30) days after entry of the Judgment, the Parties shall present a Stipulation and Order to the Superior Court that (a) dismisses the Superior Court Cross-Complaint with prejudice and (b) retains Superior Court jurisdiction to enforce this Agreement and to preside over post judgment proceedings.

18.     Except for the rights and obligations of the Prolongz Parties as expressly set forth in this Agreement, and effective only upon (1) entry of the Judgment, and if applicable, the Amended Judgment, and (2) so long as the representations and warranties stated in Paragraph 11 of this Agreement are true and continue to be true and (3) so long as none of the Prolongz Parties are subject to the jurisdiction of the bankruptcy court as debtors and (4) so long as the Prolongz Parties pay the Settlement Sum, or if applicable, the Augmented Settlement Sum in full and (5) no court action is filed in State Court, Federal Court, or Bankruptcy Court seeking recovery of any portion of the Settlement Sum, the Inter/Media Parties release and discharge the Prolongz Parties and each of them and their affiliated, subsidiary, related and parent corporations, successors, assigns, officers, directors, shareholders, managers, employees, agents, servants, beneficiaries, representatives and attorneys, and each of them, and all persons and/or entities acting by, through, under or in concert with such persons and/or entities, from any and all actual or potential claims, obligations, debts and causes of action of any kind or nature whatsoever, whether known or unknown, arising out of, or in any manner related to the matters set forth in the Superior Court Complaint, the Superior Court Cross-Complaint, the Arbitration, and the matters set forth in the Recitals.

19.     Run Away Products, LLC, Advanced Men's Institute Prolongz LLC, Redwood Scientific Technologies, LLC, Redwood Scientific Technologies, Inc., a California Corporation, Redwood Scientific Technologies, Inc., a Nevada Corporation, Eunjung Cardiff aka Eunjung No aka Eunjung Lee and Jason Cardiff hereby release and discharge the Inter/Media Parties and each of them and their affiliated, subsidiary, related and parent corporations, successors, assigns, officers, directors, shareholders, managers, employees, agents, servants, beneficiaries, representatives and attorneys, and each of them, and all persons and/or entities acting by, through, under or in concert with such persons and/or entities, from any and all actual or potential claims, obligations, debts and causes of action of any kind or nature whatsoever, whether known or unknown, arising out of, or in any manner related to the matters set forth in the Superior Court Complaint, the Superior Court Cross-Complaint, the Arbitration, and the matters set forth in the Recitals.

20.     Each party understands that the facts in respect to which the release(s) made in this Agreement are given may hereafter turn out to be other than or different from the facts in that connection now believed by each party to be true; and each party hereto accepts and assumes that risk and agrees that this Agreement shall be, and remain, in all respects effective and not subject to termination or rescission by virtue of any such different facts.

21.     In the event that any of the obligations of the Prolongz Parties to Inter/Media

EXECUTION DOCUMENT - FINAL- Page 14 of 39    Date: 03/15/2017   Time: 18:35

Time Buying Corporation, including the judgments referred to in this Agreement, are discharged
in a bankruptcy proceeding, the discharged party agrees to fully cooperate with Inter/Media Time
Buying Corporation and shall execute any and all documents, motions, applications, agreements,
and perform any and all acts, give any and all notices, required in order to legally reaffirm the
obligations that were discharged, in full compliance with state law and federal bankruptcy law.

22.    Any and all notices or other communications required or permitted by this
agreement shall be in writing and shall be deemed duly served, given, delivered and received
when transmitted by facsimile or by email during the business hours of 9:00 AM to 5:00 PM
PST, Monday through Friday (weekends and holidays excepted), to the address set forth in this
Paragraph. Any party may change its notice details at any time by written notice to the other
party's counsel as required hereunder. Any such notice shall be deemed received three (3)
business days after transmittal by facsimile and e-mail as set forth above. Notices shall be
directed as follows:

>   to counsel for the Inter/Media Parties
>
>   Peter Bisno, Esq.
>   BISNO MULVANEY, LLP
>   15760 Ventura Boulevard, Suite 1200
>   Encino, CA 91436
>   pbisno@bisnolaw.com
>   Telephone:  (818) 657-0300
>   Facsimile:  (818) 657-0313
>
>
>   to the Inter/Media Parties
>
>   Hunington Sachs, Esq.
>   VP Business & Legal Affairs
>   InterMedia Group of Companies
>   22120 Clarendon Street, Woodland Hills, CA 91367
>   Telephone:  818.933.8739
>   Facsimile:  818.995.7115
>   HSachs@intermedia-advertising.com
>
>   to Jason Cardiff and the Prolongz Parties
>
>   Jason Cardiff
>   700 West 25th Street
>   Upland, CA 91784
>   Telephone:  (909) 816-9662

Settlement Agreement (Version 13)
March 10, 2017
Page 14 of 22

Email jason@officemgt.com
Fax: none
to counsel for the Prolongz Parties

Charles H. Smith, Esq.
3856 Gondar Avenue
Long Beach, CA  90808
chas.smith82@yahoo.com
Telephone:  (562) 400-6804
Fax:  None

23.      Together with the execution of this Agreement, the parties hereto, shall perform any and all necessary act(s) and/or execute any and all necessary document(s) required to effectuate the provisions of this Agreement.

24.      Each party acknowledges that it has been represented by counsel of its own choice throughout all of the negotiations which preceded the execution of this Agreement, or has been given the opportunity to be represented by counsel, but has chosen not to do so.

25.      Each party acknowledges receipt of adequate and sufficient consideration from each other opposing party for entry into this Agreement, including without limitation the avoidance of potential and/or further litigation, and regardless of whether any particular party paid or received a payment of money to or from any other party.

26.      The Parties agree to keep the contents of this Agreement confidential.  Further, the Parties agree to not disclose the terms or conditions of this Agreement to third parties, other than to attorneys, accountants, banks, financial institutions, financial advisors, and similar professionals as necessary in furtherance of and in the ordinary course of business or except as required by judicial process.  This provision shall not hinder, restrict, limit or in any other way affect the intra- or inter-departmental communications of the parties nor shall it apply to defending future litigation claims brought by any of the Parties.  Notwithstanding anything in this Agreement to the contrary, the contents of this Agreement and the Agreement itself, including exhibits and ancillary documents, may be disclosed in order to enforce its terms and provisions.

27.      Enforcement of the Smith Sanctions (as described in Recital M of this Agreement), in the sum of $7500.00 shall be suspended/stayed unless and until there is an uncured Event of Default.  If any portion of the Smith Sanctions are collected from Smith, such amounts shall be credited to the Amended Judgment.  If the Judgment (or Amended Judgment, if applicable) is timely paid in full, an Acknowledgement of Full Satisfaction of Judgment shall be filed in favor of Charles H. Smith and the Prolongz Parties.

28.     The Arbitration shall be dismissed/abandoned.

29.     References to the masculine gender in this Agreement shall include the feminine and neutral genders; references to the singular shall include the plural; and references to "person" shall include corporation, firm, partnership, trust or other form of association; all as required by the context of this Agreement.

30.     This agreement may be executed in any number of counterparts, each of which shall be a valid and binding original, but all of which together shall constitute a single agreement. A facsimile copy of a signature or a scanned e-mail copy of a signature shall be valid as the original.

31.     This Agreement shall be fully enforceable under CCP 664.6 and the Court shall retain jurisdiction in order to enforce it, and this Agreement shall be admissible pursuant to California Evidence Code Section 1123, without objections and fees and costs shall be awarded to the prevailing party under this paragraph.  In the event of any action (including without limitation, the preparation of notices of default and judgment), suit or other proceeding concerning the interpretation, validity, performance or breach of any of the terms and conditions of this Agreement, the prevailing party shall recover reasonable attorney's fees, costs and expenses incurred in each and every such action, suit or other proceeding, including any and all appeals and/or petitions relating thereto.  Any action to interpret or enforce this Agreement shall be brought in the Los Angeles County Superior Court, Van Nuys District.

32.     All questions with respect to the construction of this Agreement and the rights and liabilities of the parties hereto shall be governed by the laws of the State of California.  The Parties explicitly and knowingly consent to the jurisdiction of the State of California, County of Los Angeles in connection with this Agreement.

33.     This Agreement (including the documents and instruments referred to herein) represents the entire Agreement between the parties with respect to the subject matter hereof and supersedes all prior and contemporaneous oral and written agreements and discussions. Each of the parties hereto covenants that it has not entered into this agreement as a result of any representation, agreement, inducement or coercion, except to the extent specifically provided herein. Each party hereto further covenants that the consideration recited herein is the only consideration for entering into this Agreement, and that no promises or representations of other or further consideration have been made by any person.  This Agreement may be amended only by an agreement in writing and duly executed by all parties hereto.

34.     This Agreement shall be binding upon and inure to the benefit of the parties hereto and to their respective heirs, representatives, successors and assigns.

35.     Waiver of Civil Code Section 1542.  It is the intention of the parties hereto that

Settlement Agreement (Version 13)
March 10, 2017
Page 16 of 22

EXECUTION DOCUMENT - FINAL- Page 17 of 39    Date: 03/15/2017   Time: 18:35

the foregoing release(s), when effective, shall bar all claims, demands, controversies, actions, causes of action, obligations, liabilities, costs, expenses, attorneys' fees and damages of whatsoever character, nature and kind, known or unknown, suspected or unsuspected, which arise from or are related or unrelated to the released claims and the parties hereto expressly acknowledge and waive any and all rights and benefits conferred upon them by the provisions of Section 1542 of the Cal. Civil Code, which provides:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM, MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

The parties hereto acknowledge the foregoing waiver of the provisions of Section 1542 of the Cal. Civil Code was separately bargained for; they expressly consent that this settlement Agreement shall be given full force and effect in accordance with each and all of its express terms and provisions, including those terms and provisions relating to unknown and unsuspected claims, demands and causes of action, if any, to the same effect as those terms and provisions relating to any other claims, demands and causes of action hereinabove specified.

36.    Each party shall bear his/her/its/their own costs and attorney's fees.

37.    In the event any covenant, condition, or other provision herein is held to be invalid, void, or illegal, the same shall be deemed severed from the remainder of this Agreement and shall in no way affect, impair or invalidate any other covenant, condition, or other provision herein.  If any covenant, condition, or other provision herein is held to be invalid due to its scope or breadth, such covenant, condition, or other provision shall be deemed valid to the extent of the scope or breadth permitted by law.

38.    This Agreement and any security agreements executed in connection herewith may not be modified in any way, except in writing, with any such instrument being duly executed by authorized representatives of the parties.

39.    Any corporation, LLC, or other business entity executing this Agreement represents and warrants that this Agreement is executed with authority.  All individuals signing this Agreement each represent and warrant that they have the requisite power and authority to execute this Agreement on their own behalf and that no other individual must execute this Agreement in order for each such individual party to be bound hereby.

40.    All parties acknowledge that this Agreement was drafted mutually and after full discussion and negotiation.  All parties agree that any ambiguit(y)(ies) therein shall not be construed against any particular party.

Settlement Agreement (Version 13)
March 10, 2017
Page 17 of 22

41.    An earlier version of this Settlement Agreement (time stamped "Date: 3/14/2017
Time: 15:07") had a typographical error in Paragraph 12 ("Earlier Version"). This Settlement
Agreement shall supersede and replace the Earlier Version.

WHEREFORE, the parties have executed this Agreement as of the date of final execution
below written.

THE PROLONGZ PARTIES:

Dated: March ⬚, 2017                         RUN AWAY PRODUCTS, LLC, individually
                                             and doing business as PROLONGZ


                                             By: Jason Cardiff, President


Dated: March ⬚, 2017                         ADVANCED MEN'S INSTITUTE
                                             PROLONGZ, LLC, a California Limited
                                             Liability Company


                                             By: Jason Cardiff, President


Dated: March ⬚, 2017                         REDWOOD SCIENTIFIC TECHNOLOGIES,
                                             LLC, a California Limited Liability Company


                                             By: Jason Cardiff, President


Settlement Agreement (Version 13)
March 10, 2017
Page 18 of 22

EXECUTION DOCUMENT - FINAL- Page 19 of 39    Date: 03/15/2017   Time: 18:35

Dated: March ⬜ 2017

REDWOOD SCIENTIFIC TECHNOLOGIES,
INC., a Nevada Corporation

By: Jason Cardiff, President

Dated:March ⬜ 2017

REDWOOD SCIENTIFIC TECHNOLOGIES,
INC., a California Corporation

By: Jason Cardiff, President

Dated: March ⬜ 2017

JASON CARDIFF

Dated: March ⬜ 2017

EUNJUNG CARDIFF AKA EUNJUNG NO
AKA EUNJUNG LEE

THE FOLLOWING ENTITY AGREES TO BE BOUND BY THE PROVISIONS IN
PARAGRAPH 14 RELATING TO CIGIREX

Dated: March ⬜ 2017

CIGIREX UK LTD.

By: Jason Cardiff, President

Settlement Agreement (Version 13)
March 10, 2017
Page 19 of 22

EXECUTION DOCUMENT - FINAL- Page 20 of 39    Date: 03/15/2017   Time: 18:35

THE INTER/MEDIA PARTIES:

Dated: March /7 14, 2017

INTER/MEDIA TIME BUYING CORPORATION

By: Robert B. Yallen, President

Dated: March /7, 2017

INTER/MEDIA ADVERTISING, INC.

By: Robert B. Yallen, President

Dated: March /7, 2017

INTER/MEDIA INTERACTIVE, INC.

By: Robert B. Yallen, President

Dated: March /7, 2017

INTER/MEDIA CHARITABLE FOUNDATION

By: Robert B. Yallen, President

Settlement Agreement (Version 13)
March 10, 2017
Page 20 of 22

EXECUTION DOCUMENT - FINAL- Page 21 of 39    Date: 03/15/2017   Time: 18:35

Dated:  March 17, 2017

INTER/IMAGE PRODUCTIONS,
INCORPORATED

By: Robert B. Yallen, President


Dated: March 17, 2017

INTER/POST PRODUCTIONS, INC.

By: Robert B. Yallen, President


Dated: March 17, 2017

INTERQUANTUM, LLC

By: Robert B. Yallen, as President of
Inter/Media Time Buying Corporation, Member


Dated: March 17, 2017

INFOTECH DEVELOPMENT, INC.

By: Robert B. Yallen, as President


Dated: March 17, 2017

MEDIAPOINT NETWORK, INC.

By: Robert B. Yallen, President


Settlement Agreement (Version 13)
March 10, 2017
Page 21 of 22

EXECUTION DOCUMENT - FINAL- Page 22 of 39    Date: 03/15/2017   Time: 18:35

Dated: March 17, 2017

BELLATRIX MEDIA, INC.

By: Robert B. Yallen, President

APPROVED AS TO FORM AND CONTENT

Dated:March ___, 2017

BISNO MULVANEY, LLP

By: Peter Bisno, Esq.
Attorneys for the Inter/Media Parties

Dated: March ___, 2017

LAW OFFICES OF CHARLES H. SMITH

By: Charles H. Smith, Esq.
Attorneys for the Prolongz Parties

Settlement Agreement (Version 13)
March 10, 2017
Page 22 of 22

EXECUTION DOCUMENT - FINAL- Page 22 of 39    Date: 03/15/2017   Time: 18:35

Dated: March __, 2017                    BELLATRIX MEDIA, INC.

_____
By: Robert B. Yallen, President


APPROVED AS TO FORM AND CONTENT

Dated:March __, 2017                     BISNO MULVANEY, LLP

_____
By: Peter Bisno, Esq.
Attorneys for the Inter/Media Parties


Dated: March 15, 2017                    LAW OFFICES OF CHARLES H. SMITH

_____
By: Charles H. Smith, Esq.
Attorneys for the Prolongz Parties


Settlement Agreement (Version 13)
March 10, 2017
Page 22 of 22

# EXHIBIT 2

Accommodation Recording

RECORDING REQUESTED BY:

JASON CARDIFF
EUNJUNG CARDIFF
Mail Tax Statements to
AND WHEN RECORDED MAIL TO:

Mr. Jason Cardiff
Mrs. Eunjung Cardiff
700 West 25th Street
Upland, CA 91784

Electronically Recorded in Official Records, County of San Bernardino    6/27/2014 09:25 AM SG

**DENNIS DRAEGER**
ASSESSOR - RECORDER - CLERK
771 Document Processing Solutions

Doc #: **2014-0232231**

| | | |
|---|---|---|
| Titles: | 1 | Pages: 3 |
| Fees | | 21.00 |
| Taxes | | .00 |
| Other | | .00 |
| PAID | | 21.00 |

**APN's: 1003-321-49**

### GRANT DEED
(Excluded from Reappraisal under California Constitution Article 13A - 1 et seq.)

The Undersigned Grantor(s) declare(s): DOCUMENTARY TRANSFER TAX $0; CITY TRANSFER TAX $0.

THERE IS NO CONSIDERATION FOR THIS TRANSFER.

There is no Documentary transfer tax due. This is a Trust Transfer under Section 62(d) of the Revenue and Taxation Code: Transfer to a revocable trust. This conveyance transfers an interest into or out of a Living Trust, R & T 11930.

FOR A VALUABLE CONSIDERATION, receipt of which is acknowledged,

**Jason Cardiff and Eunjung Cardiff, husband and wife as joint tenants**

do GRANT to

**Jason Edward Thomas Cardiff and Eunjung Cardiff, Trustees, or their successors in interest, of the Jurikel Family Trust dated April 24, 2014, and any amendments thereto**

the real property in the City of Upland, County of San Bernardino, State of California, described as:

**Attached hereto as Exhibit A.**
**Commonly known as: 700 West 25th Street, Upland, CA 91784**
**Assessor's Parcel Numbers: 1003-321-49**

Dated: 4-24-2014                                  Dated: 4/24/14

*JASON CARDIFF
*Jason Cardiff                                    EUNJUNG CARDIFF

MAIL TAX STATEMENTS TO:        Jason Cardiff and Eunjung Cardiff                    1
                               700 West 25th Street
                               Upland, CA 91784

## CERTIFICATE OF ACKNOWLEDGMENT OF NOTARY PUBLIC

STATE OF CALIFORNIA                                     )
COUNTY OF ___Los angeles_____ )

On __4124 2014__ before me, _Mama Hernandez_, Notary Public, personally appeared

JASON CARDIFF AND EUNJUNG CARDIFF,

who proved to me on the basis of satisfactory evidence to be the persons whose names are subscribed to the within instrument and acknowledged to me that they executed the same in their authorized capacity, and that by their signatures on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

**WITNESS my hand and official seal.**

_____
Notary Public Signature

MARIA HERNANDEZ
Commission # 1945013
Notary Public - California
Los Angeles County
My Comm. Expires Jul 22, 2015

(Notary Public Seal)

MAIL TAX STATEMENTS TO:        Jason Cardiff and Eunjung Cardiff          2
                                700 West 25th Street
                                Upland, CA  91784

· **Exhibit "A"**

**Legal Description**

The following described real property in the City of Upland, County of San Bernardino, State of California, commonly known as **700 West 25th Street, Upland, CA  91784, AP# 1003-321-49**, and described as:

Parcel 2 or Parcel Map 15968, County of San Bernardino, State of California, as shown by map on file in Book 198 of maps, pages 81 and 82 in the office of the county recorder of said county. APN#1003-321-49

MAIL TAX STATEMENTS TO:          Jason Cardiff and Eunjung Cardiff          3
                                 700 West 25th Street
                                 Upland, CA  91784

# EXHIBIT 3

1   Peter Bisno, Esq. (SBN 85943)
    Dennette A. Mulvaney, Esq. (SBN 133423)
2   Evelyn Zarraga, Esq. (SBN 296835)
    **BISNO MULVANEY, LLP**
3   15760 Ventura Blvd., Suite 1200
    Encino, CA 91436-3042
4   Tel:    (818) 657-0300
    Fax:    (818) 657-0313
5   pbisno@bisnolaw.com

6   Attorneys for Plaintiff/Cross-Defendant INTER/MEDIA
    TIME BUYING CORPORATION; Cross-Defendants
7   INTER/MEDIA ADVERTISING, INC.; INTER/MEDIA
    INTERACTIVE, INC.; INTER/MEDIA CHARITABLE
8   FOUNDATION; INTER/IMAGE PRODUCTIONS,
    INCORPORATED; INTER/POST PRODUCTIONS,
9   INC.; INTERQUANTUM, LLC; INFOTECH
    DEVELOPMENT, INC.; MEDIAPOINT NETWORK,
10  INC.; and BELLATRIX MEDIA, INC.

11              **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**
                    **FOR THE COUNTY OF LOS ANGELES**
12

13  INTER/MEDIA TIME BUYING CORP., a          Case No.  LC 102377
    California Corporation,
14                                            [Assigned for all purposes to: Hon. Frank
                Plaintiff,                     Johnson, Dept. NW "T"]
15
        vs.                                   **JUDGMENT PURSUANT TO**
16                                            **STIPULATION**
    RUN AWAY PRODUCTS, LLC, individually and
17  doing business as PROLONGZ;  ADVANCED     Complaint filed: November 25, 2014
    MEN'S INSTITUTE PROLONGZ, LLC;            [Trial Date Vacated Pursuant to Arbitration
18  REDWOOD SCIENTIFIC TECHNOLOGIES, LLC;      Stipulation and Order]
    JASON CARDIFF, an individual; EUNJUNG
19  CARDIFF AKA EUNJUNG NO, an individual, and
    DOES 1 THROUGH 100, INCLUSIVE,
20
                Defendants.
21

22  RUN AWAY PRODUCTS, LLC, individually and
    doing business as PROLONGZ;
23
                Cross-Complainant,
24
        vs.
25
    INTER/MEDIA TIME BUYING CORPORATION,
26  a California Corporation; INTER/MEDIA
    ADVERTISING, INC., a California Corporation;
27  INTER/MEDIA INTERACTIVE, INC., a California
    Corporation; INTER/MEDIA CHARITABLE
28

ORIGINAL FILED
Northwest District

MAR 27 2017

LOS ANGELES
SUPERIOR COURT

FILED BY FAX

                                1
               **JUDGMENT PURSUANT TO STIPULATION**

1   FOUNDATION, a California Corporation;
    INTER/IMAGE PRODUCTIONS,
2   INCORPORATED, a California Corporation;
    INTER/POST PRODUCTIONS, INC., a California
3   Corporation; INTERQUANTUM, LLC, a California
    Limited Liability Company; INFOTECH
4   DEVELOPMENT, INC., a California Corporation;
    MEDIAPOINT NETWORK, INC., a California
5   Corporation; BELLATRIX MEDIA, INC., a
    California Corporation; and ROES 1 through 25,
6   inclusive,

7           Cross-Defendants.

8

9

10          **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that pursuant to Stipulation by

11   and between the parties, Plaintiff Inter/Media Time Buying Corporation., a California Corporation shall

12   have and is hereby awarded Judgment on each of the causes of action as pled in the Complaint

13   including, without limitation, the 8th Cause of Action against Defendants Run Away Products, LLC,

14   Individually and Doing Business as Prolongz; Redwood Scientific Technologies, Inc., a Nevada

15   Corporation; Redwood Scientific Technologies, Inc., a California Corporation; Redwood Scientific

16   Technologies, LLC, a California Limited Liability Company;  Advanced Men's Institute Prolongz, LLC,

17   a California Limited Liability Company; Jason Cardiff, an individual, and Eunjung Cardiff aka Eunjung

18   No aka Eunjung Lee, an individual, jointly and severally, in the amount of $ 970,725.93

19   (representing the principal amount of $1,050,000.00, together with interest accruing thereon at the rate

20   of five percent (5%) per annum from September 7, 2016 to the date of entry of this Judgment; with a

21   one-time agreed upon charge of $25,000.00, together with interest accruing thereon at the rate of five

22   percent (5%) per annum from March 10, 2017 to the date of entry of this Judgment; less any payments

23   made on or after September 7, 2016, to be applied first to accrued unpaid interest and then to the

24   principal balance) (hereafter referred to as the "Original Judgment").  Interest on the Original Judgment

25   shall continue to accrue at the rate of five percent (5%) per annum until paid in full.

26

27

28
                                              2
                            **JUDGMENT PURSUANT TO STIPULATION**

1    The allegations set forth in the 8th Cause of Action are true and correct and said allegations as

2    well as any judgment entered pursuant to this Stipulation shall be given a conclusive collateral estoppel

3    effect in any subsequent legal proceeding.

4

5

6    Dated: _____

         THE HONORABLE J.  JOHNSON
7    APPROVED AS TO FORM AND CONTENT AND SUBMITTED BY:    JUDGE OF THE SUPERIOR COURT

8

9    Dated:   3/14/2017                          BISNO MULVANEY, LLP

10

11                                               By: Peter Bisno, Esq.
                                                 Attorneys for the Plaintiff Inter/Media Time
12                                               Buying Corporation

13

14   Dated: 3/14/2017                            LAW OFFICES OF CHARLES H. SMITH

15

16                                               By: Charles H. Smith, Esq.
17                                               Attorneys for Defendants Run Away Products,
                                                 LLC, Individually and Doing Business as
18                                               Prolongz; Redwood Scientific Technologies,
                                                 inc., a Nevada Corporation; Redwood Scientific
19                                               Technologies, Inc., a California Corporation;
                                                 Redwood Scientific Technologies, LLC, a
20                                               California Limited Liability Company;
                                                 Advanced Men's Institute Prolongz, LLC, a
21                                               California Limited Liability Company; Jason
                                                 Cardiff, an individual, and Eunjung Cardiff aka
22                                               Eunjung No aka Eunjung Lee, an individual

23

24

25

26

27

28
                                          3
                        JUDGMENT PURSUANT TO STIPULATION

# EXHIBIT 4

Recorded in Official Records, County of San Bernardino



**BOB DUTTON**
ASSESSOR – RECORDER – CLERK

**C  Priority Mail**

2/07/2017
9:24 AM
JC
SAN

RECORDING REQUESTED BY:

JASON  CARDIFF

AND WHEN RECORDED MAIL TO:

JASON  CARDIFF
700 WEST 25TH STREET
UPLAND, CA 91784

Doc#:  **2017 – 0054395**

| Titles: | 1 | Pages: | 5 |
| --- | --- | --- | --- |
| Fees |  |  | 27.00 |
| Taxes |  |  | 0.00 |
| Other |  |  | 0.00 |
| PAID |  |  | $27.00 |

SPACE ABOVE FOR RECORDER'S USE ONLY

**WARRANTY DEED**

**Title of Document**

**RECORDING REQUESTED BY:**
JASON CARDIFF

**WHEN RECORDED MAIL TO:**
JASON CARDIFF
700 WEST 25TH STREET
UPLAND, CA 91784

**ASSESSOR PARCEL NO.: 1003-321-49-0-000**

**PROPERTY STREET ADDRESS:**
700 WEST 25TH STREET
UPLAND, CA 91784

SPACE ABOVE FOR RECORDER'S USE

**WARRANTY DEED**

THE UNDERSIGNED GRANTOR(S) DECLARE(S)
DOCUMENTARY TRANSFER TAX IS:  **NONE**
☐  Computed on full value of property conveyed, or ☐ computed on full value less any liens or encumbrances remaining at time of sale.
☐  Unincorporated area  ■ City of Upland

For no consideration, JASON EDWARD THOMAS CARDIFF AND EUNJUNG CARDIFF, TRUSTEES, under the JURIKEL FAMILY TRUST dated April 24, 2014 (herein, "Grantor"), whose address is 700 West 25th Street, Upland, CA 91784, hereby remises, releases and grants to JASON EDWARD THOMAS CARDIFF AND EUNJUNG CARDIFF, CO-TRUSTEES, or any successors in trust, under the CAROLS PLACE TRUST dated January 17, 2017 and any amendments thereto (herein, "Grantee"), whose address is 700 West 25th Street, Upland, CA 91784, all of Grantor's interest in and to the following described real property located in the County of San Bernardino, State of California:  **SEE LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT A**

Property street address:      700 West 25th Street, Upland, CA 91784

Grantor for the Grantor and Grantor's heirs, representatives, successors and assigns, does covenant and agree to and with Grantee and Grantee's heirs, successors and assigns, that Grantor is lawfully seized in fee of the aforesaid premises; that the same are free of all encumbrances except those appearing of record; that Grantor has good right to grant and convey the same to Grantee as aforesaid; and that Grantor will warrant and forever defend said premises against all lawful claims whatsoever.

**Consideration:**      There was no consideration for this transfer.  This is a bona fide gift to a trust for the benefit of grantor and the grantor received nothing in return.  Pursuant to R&T Code Section 11930, no documentary tax is due.

**Mail Future Tax Statements to:**

JASON EDWARD THOMAS CARDIFF
AND EUNJUNG CARDIFF, CO TRUSTEES,
700 WEST 25TH STREET
UPLAND, CA 91784

GRANTOR:

JURIKEL FAMILY TRUST dated April 24, 2014

Dated: _1-31-2017_

_____
JASON EDWARD THOMAS CARDIFF,
Trustee

> A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT.

STATE OF _CALIFORNIA_ )
COUNTY OF _SAN BERNARDINO_ )

On _01/31/2017_____, before me, _TRACY N. CARRANZA,_____, the Notary Public, personally appeared JASON EDWARD THOMAS CARDIFF, who proved to me on the basis of satisfactory evidence to be the person(s) whose name is subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature(s) on the instrument the person(s), or the entity on behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

_____        (Seal)
Signature of Notary Public

TRACY N. CARRANZA
COMM. # 2100954
NOTARY PUBLIC · CALIFORNIA
LOS ANGELES COUNTY
MY COMM. EXP. FEB. 22, 2019

**GRANTOR:**

JURIKEL  FAMILY  TRUST  dated  April 24, 2014

Dated: _1-31-2017_

_____
EUNJUNG CARDIFF, Trustee

---

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT.

---

STATE OF _CALIFORNIA_                        )
COUNTY OF _SAN BERNARDINO_          )

On _01/31/2017_____, before me, _TRACY N. CARRANZA_____, the Notary Public, personally appeared EUNJUNG CARDIFF, who proved to me on the basis of satisfactory evidence to be the person(s) whose name is subscribed to the within instrument, and acknowledged to me that ~~he~~/she/~~they~~ executed the same in ~~his/~~her~~/their~~ authorized capacity, and that by ~~his/~~her~~/their signature(s)~~ on the instrument the person(s̶), or the entity on behalf of which the person(s̶) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

_____        (Seal)
Signature of Notary Public

TRACY N. CARRANZA
COMM. # 2100954
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
MY COMM. EXP. FEB. 22, 2019

## EXHIBIT A

Parcel 2 or Parcel Map 15968, County of San Bernardino, State of California, as shown by map on file in Book 198 of maps, Pages 81 and 82 in the office of the county recorder of said county.

*The preparer of this document has been engaged solely for the purpose of preparing this instrument, has prepared the instrument only from the information given and has not been requested to provide, nor has the preparer provided, a title search, an examination of the legal description, an opinion on title or advice on the tax, legal or non-legal consequences that may arise as a result of the conveyance.  Further such preparer has not verified the accuracy of the amount of consideration stated to have been paid or upon which any tax may have been calculated nor has the preparer verified the legal existence or authority of any person who may have executed the document.  Preparer shall not be liable for any consequences arising from modifications to this document not made or approved by preparer.*

17-43981 (djr)

# EXHIBIT 5

 Dropbox - Abstracts of Judgment - Simplify your life

**RECORDED_IM Ru...t.pdf**

‹ ...

RECORDING REQUESTED BY:

    Peter Bisno, Esq.
    BISNO MULVANEY, LLP
    15760 Ventura Boulevard, Suite 1200
    Encino, CA 91436-3042

WHEN RECORDED MAIL TO:

    Peter Bisno, Esq.
    BISNO MULVANEY, LLP
    15760 Ventura Boulevard, Suite 1200
    Encino, CA 91436-3042



Recorded in Official Records, County of San Bernardino

**BOB DUTTON**
ASSESSOR – RECORDER – CLERK

6/16/2017
4:28 PM
ALS
SAN

R  Regular Mail

Doc#:  **2017–0247961**

| Titles: | 1 | Pages: | 4 |
|---|---|---|---|
| Fees | | | 50.00 |
| Taxes | | | 0.00 |
| Other | | | 0.00 |
| PAID | | | $50.00 |

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

Comments · 0

https://www.dropbox.com/sh/h4xbpoispxo1av3/AACBih8MnrTCM3pqrDguFRQ9a/Origi...   2/14/2020

EJ-001

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, address, and State Bar number):*
After recording, return to:
Peter Bisno (SBN 85943)
Bisno Mulvaney LLP
15760 Ventura Boulevard
Suite 1200
Encino, CA 91436
TEL NO.: (818) 657-0300    FAX NO. (optional): (818) 657-0313
E-MAIL ADDRESS *(Optional):* pbisno@bisnolaw.com

| [X] | ATTORNEY FOR | [X] | JUDGMENT CREDITOR | | ASSIGNEE OF RECORD |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   LOS ANGELES
STREET ADDRESS:  6230 Sylmar Avenue
MAILING ADDRESS:  6230 Sylmar Avenue
CITY AND ZIP CODE:  Van Nuys, CA 91401
BRANCH NAME:  NORTHWEST

PLAINTIFF:   INTER/MEDIA TIME BUYING CORPORATION, a California Corporation
DEFENDANT:   RUN AWAY PRODUCTS, LLC, individually & doing business as PROLONGZ, et al.

FOR RECORDER'S USE ONLY

CASE NUMBER:
LC 102377

| ABSTRACT OF JUDGMENT—CIVIL AND SMALL CLAIMS | | Amended |

FOR COURT USE ONLY

1. The [X] judgment creditor  [ ] assignee of record applies for an abstract of judgment and represents the following:
   a. Judgment debtor's
      Name and last known address

   > Run Away Products, LLC,
   > individually and doing business as Prolongz
   > 250 West First Street, Suite 310
   > Claremont, CA 91711

   b. Driver's license no. [last 4 digits] and state:        [X] Unknown
   c. Social security no. [last 4 digits]:                   [X] Unknown
   d. Summons or notice of entry of sister-state judgment was personally served or mailed to *(name and address):*
      Eunjung No, a.k.a. Eunjung Cardiff, as Agent for Service of Process,
      250 West First Street, Suite 310, Claremont, CA 91711

2. [X] Information on additional judgment debtors is shown on page 2.

3. Judgment creditor *(name and address):*
   INTER/MEDIA TIME BUYING CORPORATION,
   a California Corporation,
   22120 Clarendon Street, Woodland Hills, CA 91367
   Date:  March 30, 2017

   Peter Bisno, Esq., Attorney for Judgment Creditor
   (TYPE OR PRINT NAME)

4. [ ] Information on additional judgment creditors is shown on page 2.

5. [ ] Original abstract recorded in this county:
   a. Date:
   b. Instrument No.:

                                   ▶ _____
                                        (SIGNATURE OF APPLICANT OR ATTORNEY)

6.  Total amount of judgment as entered or last renewed:
    $ 970,725.93

7. All judgment creditors and debtors are listed on this abstract.

8. a.  Judgment entered on *(date):* March 27, 2017
   b.  Renewal entered on *(date):*

9. [ ] This judgment is an installment judgment.

[SEAL]   APR 2 7 2017
This abstract issued on *(date):*
Sherri R. Carter, Executive Officer/Clerk

10. [ ] An [ ] execution lien [ ] attachment lien is endorsed on the judgment as follows:
    a.  Amount: $
    b.  In favor of *(name and address):*

11.  A stay of enforcement has
    a. [X] not been ordered by the court.
    b. [ ] been ordered by the court effective until *(date):*

12. a. [X] I certify that this is a true and correct abstract of the judgment entered in this action.
    b. [ ] A certified copy of the judgment is attached.
    Clerk, by _____, Deputy
              L. ROMERO

Form Adopted for Mandatory Use
Judicial Council of California
EJ-001 [Rev. July 1, 2014]

ABSTRACT OF JUDGMENT—CIVIL AND SMALL CLAIMS

Legal Solutions Plus

Page 1 of 2
Code of Civil Procedure, §§ 488.480, 674, 700.190

| PLAINTIFF:   INTER/MEDIA TIME BUYING CORPORATION, a California Corporation<br>DEFENDANT:   RUN AWAY PRODUCTS, LLC, individually & doing business as PROLONGZ, et al. | COURT CASE NO.:<br><br>LC 102377 |
|---|---|

**NAMES AND ADDRESSES OF ADDITIONAL JUDGMENT CREDITORS:**

13. Judgment creditor *(name and address):*    14. Judgment creditor *(name and address):*

15. |___| Continued on Attachment 15.

**INFORMATION ON ADDITIONAL JUDGMENT DEBTORS:**

16.         Name and last known address

Redwood Scientific Technologies, Inc.,
a Nevada Corporation
250 West First Street, Suite 310
Claremont, CA 91711

Driver's license no. [last 4 digits] and state:
|x| Unknown
Social security no. [last 4 digits]: |x| Unknown

Summons was personally served at or mailed to *(address):*
Jason Cardiff, President
250 West First Street, Suite 310
Claremont, CA 91711

17.         Name and last known address

Redwood Scientific Technologies, Inc.,
a California Corporation
250 West First Street, Suite 310
Claremont, CA 91711

Driver's license no. [last 4 digits] and state:
|x| Unknown
Social security no. [last 4 digits]: |x| Unknown

Summons was personally served at or mailed to *(address):*
Jason Cardiff, President
250 West First Street, Suite 310
Claremont, CA 91711

18.         Name and last known address

Redwood Scientific Technologies, LLC,
a California Limited Liability Company
250 West First Street, Suite 310
Claremont, CA 91711

Driver's license no. [last 4 digits] and state:
|x| Unknown
Social security no. [last 4 digits]: |x| Unknown

Summons was personally served at or mailed to *(address):*
Jason Cardiff, President
250 West First Street, Suite 310
Claremont, CA 91711

19.         Name and last known address

Advanced Men's Institute Prolongz, LLC,
a California Limited Liability Company
250 West First Street, Suite 310
Claremont, CA 91711

Driver's license no. [last 4 digits] and state:
|x| Unknown
Social security no. [last 4 digits]: |x| Unknown

Summons was personally served at or mailed to *(address):*
Jason Cardiff, as Member/Manager
250 West First Street, Suite 310
Claremont, CA 91711

20. |x| Continued on Attachment 20.

EJ-001 [Rev. July 1, 2014]        **ABSTRACT OF JUDGMENT—CIVIL AND SMALL CLAIMS**        Page 2 of 2

| PETITIONER/PLAINTIFF: | INTER/MEDIA TIME BUYING CORPORATION | CASE NUMBER: |
|---|---|---|
| RESPONDENT/DEFENDANT: | RUN AWAY PRODUCTS, LLC, et al. | LC 102377 |

**ATTACHMENT 20:**

**INFORMATION ON ADDITIONAL JUDGMENT DEBTORS:**

21.        Name and last known address

Jason Cardiff
700 West 25th Street
Upland, CA 91784

*LN*

Driver's license no. [last 4 digits] and state:

[ X ]  Unknown

Social security no. [last 4 digits]:        [ X ]  Unknown

Summons was personally served at or mailed to *(address):*

Jason Cardiff

250 West First Street, Suite 310

Claremont, CA 91711

22.        Name and last known address

Eunjung Cardiff, aka
Eunjung No, a.k.a. Eunjung Lee
700 West 25th Street
Upland, CA 91784

*LN*

Driver's license no. [last 4 digits] and state:

[ X ]  Unknown

Social security no. [last 4 digits]:  5246        [ ]  Unknown

Summons was personally served at or mailed to *(address):*

Eunjung Cardiff

250 West First Street, Suite 310

Claremont, CA 91711



Legal
Solutions
& Plus

# EXHIBIT 6

## SETTLEMENT AGREEMENT

This SETTLEMENT AGREEMENT (the "Agreement") is made as of this 21st day of January, 2020, by and between ROBB EVANS & ASSOCIATES LLC, as receiver ("Receiver") over, among other entities and persons, Jason Cardiff ("Jason"), Eunjung Cardiff ("Eunjung"), and The Carols Place Trust ("Trust"), on the one hand, and INTER/MEDIA TIME BUYING CORPORATION ("Inter/Media"), on the other hand, in reference to and in consideration of the following:

## RECITALS

A. By order entered on October 10, 2018, the United States District Court for the Central District of California ("District Court") appointed the Receiver as the temporary receiver over various entities and persons, including without limitation Jason, Eunjung, and the Trust, in that certain action entitled *Federal Trade Commission v. Jason Cardiff, et al.*, Central District of California Case No. 5:18-cv-2104-SJO-PLA ("Action"), thereby creating a receivership estate ("Receivership Estate"). The District Court's order appointing the Receiver enjoined, with exceptions not relevant here and absent leave of court, "all ... creditors ... and other persons seeking to establish or enforce any claim, right, or interest against or on behalf of the receivership defendants ... from ... taking action that would interfere with the exclusive jurisdiction of this Court over the [Receivership Estate] including, but not limited to ... commencing, prosecuting, or continuing a judicial ... action or proceeding against the Receivership Entities [or] filing or enforcing any lien on any Asset of the Receivership Entities." This injunction, which the Receiver contends remains in place, is hereinafter referred to as the "Stay of Actions."

B. Based upon the Receiver's initial appointment in the Action, the Receiver claims and contends that it became a lien creditor over all of the assets of the receivership defendants, including without limitation Jason and Eunjung, individually and as trustees of the Trust, and the Trust itself, including without limitation over that certain real property located in San Bernardino County, commonly known as 700 West 25th Street, Upland, California 91784 (legally described on Exhibit 1 hereto) ("Residence"), which is the residence of Jason and Eunjung and is vested to them as trustees of the Trust. The Residence was transferred from Jason and Eunjung, as Trustees of the Jurikel Family Trust dated April 24, 2014, to Jason and Eunjung, as trustees of the Trust, via a Warranty Deed dated January 31, 2017, and recorded in the San Bernardino County Official Records ("Official Records") on February 7, 2017 as instrument no. 2017-0054395.

C. The District Court made the Receiver's appointment permanent in various later orders, including without limitation, by preliminary injunctions entered in the Action on October 24, 2018, November 8, 2018, and February 26, 2019, continuing in effect the Receiver's rights, claims, and contentions.

D. Inter/Media disputes the Receiver's claims and contentions, and itself claims to be a judgment creditor of Jason and Eunjung, individually, by virtue of that certain Judgment Pursuant to Stipulation ("Original Inter/Media Judgment") entered for $970,725.93 in a state

3536229.6 | 078410-0061                                                   1

court action entitled *Inter/Media v. Run Away Products, LLC etc. et al.*, Los Angeles County Superior Court Case No. LC102377 ("2377 Action"). Inter/Media also claims to have recorded an abstract of judgment in the Official Records on June 16, 2017 as instrument no. 2017-0247961, concerning the Original Inter/Media Judgment ("Abstract"), which Inter/Media claims created a lien on the Residence in favor of Inter/Media ("Lien").

E.       Inter/Media further contends that the Original Inter/Media Judgment was entered pursuant to a Stipulation for Entry of Judgment, which provides for entry of an amended Judgment in favor of Inter/Media in the 2377 Action (in a larger amount than the Original Inter/Media Judgment, and with the amended Judgment to relate back to the date of entry of the Original Inter/Media Judgment) upon an uncured default under the Settlement Agreement concerning the 2377 Action (such amended Judgment, "Amended Inter/Media Judgment"). No Amended Inter/Media Judgment has yet been entered in the 2377 Action to date and the Receiver contends that the 2377 Action is subject to the Stay of Actions. The Original Inter/Media Judgment and any Amended Inter/Media Judgment that may be entered in the 2377 Action are hereinafter referred to individually and collectively as the "Inter/Media Judgment."

F.       Inter/Media further claims that in connection with the Settlement Agreement concerning the 2377 Action, Jason, Eunjung, Redwood Scientific Technologies, Inc., and certain other affiliated entities (individually and collectively, "Redwood Obligors") executed security agreements granting Inter/Media security interests in certain personal property to secure payment of the Inter/Media Judgment.

G.       Inter/Media also claims to have recorded a notice of pending action against the Residence on May 30, 2018 in the Official Records as instrument no. 2018-0196083 (*"Lis Pendens"*) giving notice of a second state court action initiated by Inter/Media concerning the claimed fraudulent transfer of the Residence to Jason and Eunjung as trustees of the Trust to avoid the Inter/Media Judgment, which matter is pending in that certain state court action entitled *Inter/Media v. Jason Cardiff etc. et al.*, Los Angeles County Superior Court Case No. LC107302 ("Fraudulent Transfer Action"). The Receiver contends that the Fraudulent Transfer Action is subject to the Stay of Actions.

H.       Based on the Inter/Media Judgment, the Abstract, the *Lis Pendens*, and the Fraudulent Transfer Action, Inter/Media claims to be a lien holder as to the Residence, which lien is claimed by Inter/Media to be superior to the liens and rights of the Receiver and the Receivership Estate as to the Residence ("Inter/Media Residence Claims").

I.       The Receiver disputes the Inter/Media Residence Claims. In particular, the Receiver disputes that Inter/Media has obtained any lien over the Residence. The Receiver further claims and asserts (which Inter/Media disputes) that by operation of law the Receiver owns and controls all fraudulent transfer and/or avoidance actions as to any and all assets of the Receivership Estate, including without limitation, as to the Residence, held by any creditor or claimant of Jason and Eunjung or the Trust, and any other assets of Jason and Eunjung or the Trust, including without limitation as to the Fraudulent Transfer Action.

J.     The Receiver and Inter/Media have concluded that the likely value of the Residence is less than the total claims secured by liens against it, whether held separately by the Receiver or by Inter/Media, and the Residence should be sold at this time to preserve the equity value thereof for all of the claimants, whether the Receivership Estate or Inter/Media.

K.     However, the outstanding disputes between the Receiver and Inter/Media are precluding a motion to the District Court for authority for the Receiver to sell the Residence.

L.     The parties hereto have examined the various claims and contentions of the Receiver and of Inter/Media in detail. While each disagrees with the other about the Residence and the respective claims and contentions as to whom the equity in the Residence belongs, both agree that there is no equity in the Residence for Jason and Eunjung or the Trust, based on the claimed liens against it, whether or not the District Court enters a judgment against them in the Action, that preservation of the equity in the Residence for creditors of Jason and Eunjung and the Trust is a paramount concern, and that it would not be cost effective for the Receiver and Inter/Media to litigate their differences and disputes to a final determination, conclusion, and judgment. Additionally, there are the ever-present risks to each of the parties of adverse rulings and of the fees, costs, and expenses of resolving these disputes through a litigated solution.

M.     For those reasons, the parties hereto have separately concluded that a negotiated resolution of their disputes as to the equity in the Residence is desirable and preferable, and are entering into this Agreement for those reasons and to facilitate the Receiver seeking authority from the District Court to sell the Residence at this time.

NOW, THEREFORE, in consideration of the facts set forth above, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by each of the parties hereto, the parties hereto stipulate and agree as follows:

1.     Recitals. The Recitals set forth above are true and correct, and are incorporated into this Agreement in their entirety.

2.     Effective Date of Agreement. Subject to any conditions subsequent hereto, the "Effective Date of this Agreement" is the date upon which all of the following have occurred: (a) the Agreement is fully executed by the parties hereto and timely delivered as required herein, and (b) an order is entered in the Action no later than March 31, 2020, approving this Agreement ("Settlement Order") and authorizing the Receiver to conduct a sale ("Sale") of the Residence (but not addressing at that time the ultimate approval of the Buyer and confirmation of the actual Sale of the Residence by the District Court).

3.     Settlement Motion. Not later than five (5) days after the full execution and delivery of this Agreement, and each ancillary agreement which is to be executed and delivered, and the completion of any necessary meet and confer processes with the parties to the Action, the Receiver shall file a noticed motion in the Action seeking approval of this Agreement and entry of the Settlement Order.

4.     Sale of Residence. The parties hereto agree that the Receiver shall have the right to sell the Residence upon entry of an order from the District Court authorizing the Receiver to

12

conduct a Sale process for the Residence, and, except as expressly set forth in Section 6, below, Inter/Media will not interfere with, or object to, the exercise by the Receiver of such rights and will cooperate in the sale of the Residence as reasonably requested by the Receiver.

5.     Partial Release of Abstract; Withdrawal of *Lis Pendens*.   No later than five (5) days after the Effective Date of this Agreement, Inter/Media shall cause to be executed and delivered in trust to the Receiver pending any ruling by the District Court on the motion for authority to sell, and any Sale thereafter of, the Residence (a) a partial release of the Abstract as to the Residence only ("Release"), and (b) a notice of withdrawal of the *Lis Pendens* ("Withdrawal"), both for ultimate recordation in the Official Records, for the Receiver to use to close any sale of the Residence approved by the District Court. The Release and the Withdrawal shall be in the form of Exhibits 2 and 3 hereto respectively. The Receiver may only use the Release and the Withdrawal to effectuate and to close any Sale of the Residence approved by the District Court that provides for payment to Inter/Media as set forth in Paragraph 7 below. Should the effectiveness of this Agreement cease, the Receiver shall return to Inter/Media the unrecorded and unfiled Release and Withdrawal. Upon written demand by the Receiver or the escrow holder for the sale of the Residence, Inter/Media agrees to execute any and all other documents reasonably requested to facilitate the sale of the Residence and the release of the Lien, and/or to effectuate the Release and/or the Withdrawal, all in accordance with this Agreement.

6.     Agreements Concerning Claimed Liens; Rights to Object to Sale.   Except as otherwise set forth herein, and following the entry of a Settlement Order and as to a Sale of the Residence, (a) the Receiver agrees that concerning the Residence it shall not seek to avoid or set aside the Lien, or otherwise assert or claim that the priority of any lien or other interest that the Receiver may have in the Residence is senior in priority to the Lien; and (b) Inter/Media agrees that concerning the Residence it shall not seek to avoid or set aside any lien or other interest claimed by the Receiver, or otherwise assert or claim that the priority of the Lien or other interest that Inter/Media may have in the Residence is senior in priority to the liens and other interests of the Receiver to the Residence; *provided, however*, that nothing otherwise prevents the Receiver from using the Release and the Withdrawal to effectuate and to close a Sale of the Residence approved by the District Court. Further, (c) the Receiver agrees that Inter/Media reserves the right to object to or challenge the adequacy of the actual Sale price obtained by the Receiver for the Sale of the Residence when the Receiver seeks ultimate approval of the buyer and confirmation of the Sale price, even if the Sale price otherwise complies with and satisfies the requirements of 28 U.S.C. § 2001, or any other applicable statute or law.

7.     Allocation of Sale Price; Waiver of Surcharge Rights.   In the event that an actual Sale of the Residence is approved by the District Court (including the Sale price thereof), and such Sale closes, then the Receiver agrees to cause to be paid directly from the Sale escrow, and Inter/Media agrees to accept, fifty percent (50%) of the Net Sale Proceeds in full satisfaction of the Lien, which shall be paid to Inter/Media through and at the close of escrow, from the Sale of the Residence by the Receiver. Inter/Media shall apply the portion of the Net Sale Proceeds Inter/Media receives as a credit against the Inter/Media Judgment on a dollar-for-dollar basis. As used herein, the term "Net Sale Proceeds" means the gross sales proceeds from the Sale of the Residence less amounts secured by any consensual liens on the Residence senior in priority to the Lien and any lien for due and unpaid real property taxes on the Residence, the amount of any

unpaid assessments on the Residence, any commissions due to brokers in connection with the sale of the Residence, the seller's portion of any accruals to be paid upon the closing of the Sale, any other amounts required to be paid at closing pursuant to applicable law, and escrow and title fees associated with the Sale. The Receiver waives any right to recover from Inter/Media any other costs or expenses of preserving or disposing of the Residence.

8.     No Prejudice; Reservation of Rights.   Except to the extent that Inter/Media's receipt of Net Sale Proceeds reduces the amount of the Inter/Media Judgment, and other than with respect to the Residence, nothing in this Agreement shall prejudice or affect Inter/Media's remaining claims against (or liens against the property of) Jason, Eunjung, the Receivership Estate, any of the other judgment debtors under the Inter/Media Judgment, any of the defendants to the Fraudulent Transfer Action, or any of the Redwood Obligors. Inter/Media reserves the right to file a creditor's claim in the Action, to seek relief from the Stay of Actions for any purpose whatsoever (except insofar as doing so would interfere with the exercise by the Receiver of its right to market the Residence as set forth in this Agreement). The Receiver, in turn, acknowledges Inter/Media's right to file a creditor's claim in the Action as part of the claims resolution process the Receiver intends to administer, but reserves its right to object to the amount and scope of Inter/Media's claim. Similarly nothing in this Agreement shall prejudice or affect the Receiver's rights under the orders of the Court in the Action concerning or addressing the Receiver and/or the Receivership Estate, including without limitation any remaining claims against (or liens against the property or assets of) Jason, Eunjung, the Trust, any other defendant or receivership entity in the Action, and any assets of the Receivership Estate, now existing or hereafter arising.

9.     Conditions Subsequent.   Should the District Court not approve and enter an order authorizing the Receiver to market and sell the Residence by March 31, 2020, or by such later date as the parties hereto may agree in writing, either party hereto may withdraw from this Agreement by providing written notice thereof to the other party, with no adverse effect or consequences to such party or the other party for having entered into this Agreement, which will be deemed to have been null and void *ab initio*, for all purposes.

10.    No Admission of Liability.   Nothing in this Agreement shall be construed as an admission by any party hereto that the claims against such party have merit.

11.    Time is of Essence.   Time is of the essence with respect to any act, payment, or performance under this Agreement.

12.    Default.   In the event that either party defaults in its obligations under this Agreement, the other party may exercise any and all available rights and remedies at law or in equity.

13.    Notices.   All notices and other communications which are required or may be given hereunder shall be in writing and shall be duly given if sent by e-mail and concurrently mailed by U.S. Mail, postage prepaid and addressed to the other party at the address set forth herein:

If to the Receiver:    Robb Evans & Associates LLC
11450 Sheldon Street
Sun Valley, CA 91352-1121
Attention: Brick Kane
Email: bkane@robbevans.com

with a copy to:    Frandzel Robins Bloom & Csato, L.C.
1000 Wilshire Boulevard, 19th Floor
Los Angeles, CA 90017
Attention: Michael G. Fletcher, Esq.
Email: mfletcher@frandzel.com

If to Inter/Media:    Attention: Peter Bisno, Esq.
Inter/Media Time Buying Corporation
15760 Ventura Boulevard, Suite 1200
Encino, CA 91436
Email: pbisno@bisnolaw.com

with a copy to:    Hemar, Rousso & Heald, LLP
15910 Ventura Boulevard, 12th Floor
Encino, CA 91436
Attention: Christopher D. Crowell, Esq.
Email: ccrowell@hrhlaw.com

or at any other address as may be given by any party to the other party by notice in writing pursuant to the provisions hereof. Notices will be deemed given and received on the next business day following the day such notice is mailed and sent in the manner described above.

14.    Opportunity for Consultation with Counsel. Each of the parties hereto has had an opportunity to consult with legal counsel of its own choice with respect to the advisability of making the settlement provided for herein, and with respect to the advisability of executing this Agreement, and prior to the execution of this Agreement each of the parties hereto reviewed it, had the opportunity to make any desired changes, and signed the Agreement to indicate that each has approved the Agreement as to its form and content. Each of the parties hereto and each of their legal and other advisors have made such investigation of the facts pertaining to the Agreement, and all of the matters pertaining thereto, as each of them deem necessary. This Agreement has been carefully read by, the contents hereof are known by, and it has been signed freely by each person executing this Agreement.

15.    Neutral Interpretation. This Agreement is the product of the joint negotiations between the parties hereto. The interpretation and/or enforcement of this Agreement is not to be interpreted more strongly in favor of one party or the other.

16.    Inter/Media Representation and Warranty. Inter/Media warrants and represents that as of November 15, 2019, the balance owed on the Original Inter/Media Judgment is $817,330.47.

3536229.6 | 078410-0061    6

17.     Mutual Representations and Warranties.  Subject to entry of the Settlement Order, each of the parties hereto hereby represents and warrants to one another, and covenants and agrees with one another, as follows:

A.     Each party executing this Agreement has the full legal right, power and authority to enter into and perform this Agreement. This Agreement is a valid and binding obligation of each of the parties hereto, enforceable against each of them in accordance with its terms. Each person executing this Agreement in a representative capacity has been duly authorized to do so by all appropriate actions.

B.     Except as expressly stated in this Agreement, no party hereto or any other person has made any statement or representation to any party to this Agreement regarding the facts relied upon by them in entering into this Agreement, and no party hereto has relied upon any statement, representation, or promise of any other person or entity in executing this Agreement except as expressly stated in this Agreement.

C.     The terms of this Agreement are contractual and not a mere recital.

18.     Integration/Modification in Writing.  This Agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof, and supersedes all other agreements, oral or written, between the parties hereto with respect to the subject matter hereof. No covenants, agreements, representations or warranties of any kind whatsoever have been made by any party hereto, except as specifically set forth in this Agreement. No claim of waiver, modification, consent, or acquiescence with respect to any provision of this Agreement shall be made against any party hereto, except upon the basis of a written instrument executed by or on behalf of such party.

19.     Attorney Fees.  In the event of any default in payment or performance hereunder, and if a party employs an attorney to bring suit on account of such default or to otherwise enforce such payment or performance, the party not in breach shall be entitled to be reimbursed for all reasonable attorney fees and costs incurred, including without limitation those incurred in each and every action, suit or proceeding, including any and all appeals and petitions therefrom.

20.     Survival of Agreement.  Except as set forth in paragraph 9 hereof, all covenants, representations, warranties and agreements contained in this Agreement shall survive the execution of this Agreement by the parties hereto, the delivery of documents and any performance on account of the obligations set forth herein.

21.     Successors and Assigns.  Except as set forth in paragraph 9 hereof, the provisions of this Agreement shall be binding upon and inure to the benefit of each of the parties hereto, and their respective successors in interest and assigns.

22.     Governing Law and Jurisdiction.  This Agreement shall be governed by and construed in accordance with the laws of the State of California, and/or of the United States as the case may be. The District Court has sole jurisdiction to interpret this Agreement and resolve any disputes hereunder.

23.     Headings. The headings of paragraphs of this Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

24.     Counterparts. This Agreement may be executed and delivered in any number of counterparts, each of which, when executed and delivered, shall be original, and all of which together shall constitute the same agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

INTER/MEDIA TIME BUYING
CORPORATION

By: _____
    HUNTINGTON SACHS, ESQ.
Its: SECRETARY

ROBB EVANS & ASSOCIATES LLC,
as Receiver over Jason Cardiff and other
related entities and individuals

By: _____

Its: Deputy to the Receiver

APPROVED AS TO FORM:

FRANDZEL ROBINS BLOOM
& CSATO, L.C.

By: _____
    Michael Gerard Fletcher
    Attorneys for Receiver ROBB EVANS
    & ASSOCIATES LLC, as Receiver
    over Jason Cardiff and other related
    entities and individuals

HEMAR ROUSSO & HEALD, LLP

By: _____
    Christopher D. Crowell
    Attorneys for INTER/MEDIA TIME
    BUYING CORPORATION

Exhibit 1

## Legal Description for 700 West 25th Street, Upland, CA 91784

THE FOLLOWING DESCRIBED REAL PROPERTY IN THE COUNTY OF
SAN BERNARDINO, STATE OF CALIFORNIA:

PARCEL 2 OF PARCEL MAP 15968, IN THE COUNTY OF SAN
BERNARDINO, STATE OF CALIFORNIA, AS SHOWN BY MAP ON FILE IN
BOOK 198 OF MAPS, PAGES 81 AND 82 IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY.

18

**Exhibit 2**

**Release**

Peter Bisno, Esq. (State Bar No. 85943)
BISNO MULVANEY, LLP
15760 Ventura Boulevard, Suite 1200
Encino, California 91436
Telephone: (818) 657-0300
Facsimile: (818) 657-0313

Attorneys for Plaintiff INTER/MEDIA TIME
BUYING CORPORATION; Cross-Defendants
INTER/MEDIA ADVERTISING, INC.;
INTERMEDIA INTERACTIVE, INC.;
INTERMEDIA CHARITABLE
FOUNDATION; INTER/IMAGE
PRODUCTIONS, INCORPORATED;
INTER/POST PRODUCTIONS, INC.;
INTERQUANTUM, LLC; INFOTECH
DEVELOPMENT, INC.; MEDIAPOINT
NETWORK, INC.; and BELLATRIX MEDIA,
INC.

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF LOS ANGELES, NORTHWEST DISTRICT

| | |
|---|---|
| INTER/MEDIA TIME BUYING CORP., a California corporation<br><br>Plaintiff,<br><br>v.<br><br>RUN AWAY PRODUCTS, LLC, individually and doing business as PROLONGZ; ADVANCED MEN'S INSTITUTE PROLONGZ, LLC; REDWOOD SCIENTIFIC TECHNOLOGIES, LLC; JASON CARDIFF, an individual; EUNJUNG CARDIFF AKA EUNJUNG NO, an individual, and DOES 1 THROUGH 100, INCLUSIVE,,<br><br>Defendants. | Case No. LC102377<br>Unlimited Civil Jurisdiction<br><br>**NOTICE OF RELEASE OF JUDGMENT LIEN CAUSED BY THE RECORDING OF AN ABSTRACT OF JUDGMENT ONLY AS TO REAL PROPERTY COMMONLY KNOWN AS 700 WEST 25TH STREET, UPLAND, CA 91784 (ASSESOR'S PARCEL NUMBER 1003-321-49)** |

3536229.6 | 078410-0061                    10

19

RUN AWAY PRODUCTS, LLC, individually and doing business as PROLONGZ,

Cross-Complainant,

v.

INTER/MEDIA TIME BUYING CORPORATION, a California Corporation; INTER/MEDIA ADVERTISING, INC., a California Corporation; INTER/MEDIA INTERACTIVE, INC., a California Corporation; INTER/MEDIA CHARITABLE FOUNDATION, a California Corporation; INTER/IMAGE PRODUCTIONS, INCORPORATED, a California Corporation; INTER/POST PRODUCTIONS, INC., a California Corporation; INTERQUANTUM, LLC, a California Limited Liability Company; INFOTECH DEVELOPMENT, INC., a California Corporation; MEDIAPOINT NETWORK, INC., a California Corporation; BELLATRIX MEDIA, INC., a California corporation; and ROES 1 through 25, inclusive,

Cross-Defendants.

PLEASE TAKE NOTICE that the judgment lien in the instant action created by the

recording of an Abstract of Judgment on June 16, 2017, as Instrument No. 2017-0247961, in the

Official Records of the County of San Bernardino, is hereby being released by Plaintiff and

Judgment Creditor INTER/MEDIA TIME BUYING CORP., a California corporation, *only* as to

the real property commonly known as 700 WEST 25TH STREET, UPLAND, CA 91784, which

real property is identified via its Assessor's Parcel Number of 1003-321-49, and the legal

description for which is set forth immediately below:
THE FOLLOWING DESCRIBED REAL PROPERTY IN THE COUNTY OF SAN BERNARDINO, STATE OF CALIFORNIA:

PARCEL 2 OF PARCEL MAP 15968, IN THE COUNTY OF SAN BERNARDINO, STATE OF CALIFORNIA, AS SHOWN BY MAP ON FILE IN BOOK 198 OF MAPS, PAGES 81 AND 82 IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

11

DATED _____, 2020          BISNO MULVANEY, LLP
                                      PETER BISNO

                                      By: _____

                                            PETER BISNO
                                            Attorneys for Plaintiff INTER/MEDIA TIME
                                            BUYING CORPORATION

A notary public or other officer completing this certificate verifies only the identity of the
individual who signed the document to which this certificate is attached, and not the truthfulness,
accuracy, or validity of that document.

State of California                    )
County of Los Angeles                  )

On                  , 2020, before me,                 , a Notary Public, personally appeared
, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.


Signature        _____

## PROOF OF SERVICE

I, the undersigned, declare and certify as follows:

I am over the age of eighteen years, not a party to the within action and employed in the County of Los Angeles State of California. I am employed in the office of BISNO MULVANEY, LLP, members of the Bar of the above-entitled Court, and I made the service referred to below at their direction. My business address is 15760 Ventura Boulevard, Suite 1200, Encino, California 91436-3042.

On _____, 2020, I served true copy(ies) of the **NOTICE OF RELEASE OF JUDGMENT LIEN CAUSED BY THE RECORDING OF AN ABSTRACT OF JUDGMENT ONLY AS TO REAL PROPERTY COMMONLY KNOWN AS 700 WEST 25TH STREET, UPLAND, CA 91784 (ASSESOR'S PARCEL NUMBER 1003-321-49),** to the party(ies) on the attached service list.

### SEE ATTACHED SERVICE LIST

**BY MAIL:** I placed the envelope for collection and mailing at Los Angeles, California. The envelope was mailed with postage fully prepaid. I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

I certify under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on _____, 2020, at Los Angeles, California.

_____

## SERVICE LIST

JASON EDWARD THOMAS CARDIFF, individually
and as Co-Trustee of the JURIKEL FAMILY TRUST
dated April 24, 2014 and as Co-Trustee of the CAROLS
PLACE TRUST dated January 17,2017
700 West 25th Street
Upland, CA 91784

EUNJUNG CARDIFF aka EUNJUNG NO, individually
and as Co-Trustee of the JURIKEL FAMILY TRUST
dated April 24, 2014 and as Co-Trustee of the CAROLS
PLACE TRUST dated January 17, 2017
700 West 25th Street
Upland, CA 91784

## Exhibit 3

## Withdrawal

Peter Bisno, Esq. (State Bar No. 85943)
BISNO MULVANEY, LLP
15760 Ventura Boulevard, Suite 1200
Encino, California 91436
Telephone: (818) 657-0300
Facsimile: (818) 657-0313

Attorneys for Plaintiff INTER/MEDIA TIME
BUYING CORPORATION

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF LOS ANGELES, NORTHWEST DISTRICT

| | |
|---|---|
| INTER/MEDIA TIME BUYING CORPORATION<br><br>Plaintiff,<br><br>v.<br><br>JASON EDWARD THOMAS CARDIFF, individually and as Co-Trustee of the JURIKEL FAMILY TRUST dated April 24, 2014 and as Co-Trustee of the CAROLS PLACE TRUST dated January 17,2017; EUNJUNG CARDIFF aka EUNJUNG NO, individually and as Co-Trustee of the JURIKEL FAMILY TRUST dated April 24, 2014 and as Co-Trustee of the CAROLS PLACE TRUST dated January 17, 2017; and DOES 1-100 INCLUSIVE,<br><br>Defendants. | Case No. LC107302<br>Unlimited Civil Jurisdiction<br><br>**NOTICE OF WITHDRAWAL OF NOTICE OF PENDING ACTION (LIS PENDENS) REGARDING REAL PROPERTY COMMONLY KNOWN AS 700 WEST 25TH STREET, UPLAND, CA 91784** |

3536229.6 | 078410-0061                          16

25

NOTICE IS HEREBY GIVEN that Plaintiff INTER/MEDIA TIME BUYING

CORPORATION ("Plaintiff") withdraws its Notice of Pending Action against Defendants

JASON EDWARD THOMAS CARDIFF, individually and as Co-Trustee of the JURIKEL

FAMILY TRUST dated April 24, 2014 and as Co-Trustee of the CAROLS PLACE TRUST

dated January 17,2017; EUNJUNG CARDIFF aka EUNJUNG NO, individually and as Co-

Trustee of the JURIKEL FAMILY TRUST dated April 24, 2014 and as Co-Trustee of the

CAROLS PLACE TRUST dated January 17, 2017 and DOES 1-100 INCLUSIVE

("Defendants"), which was recorded in the Office of the County Recorder of San Bernardino

County on May 30, 2018, as Instrument Number 2018-0196083.

The withdrawal of the Notice of Pending Action affects the real property commonly

known as 700 West 25th Street, Upland, CA 91784, title to which Plaintiff is informed and

believes is currently vested to JASON CARDIFF AND AMY CARDIFF, TRUSTEES OF THE

JASON CARDIFF AND AMY E.P. CARDIFF FAMILY TRUST DATED JULY 14, 2005, and

legally described as follows:

THE FOLLOWING DESCRIBED REAL PROPERTY IN THE COUNTY OF SAN
BERNARDINO, STATE OF CALIFORNIA:

PARCEL 2 OF PARCEL MAP 15968, IN THE COUNTY OF SAN BERNARDINO, STATE OF CALIFORNIA, AS
SHOWN BY MAP ON FILE IN BOOK 198 OF MAPS, PAGES 81 AND 82 IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY.

DATED: _____, 2020    BISNO MULVANEY, LLP
                            PETER BISNO

                   By:    _____

                            PETER BISNO
                            Attorneys for Plaintiff INTER/MEDIA TIME
                            BUYING CORPORATION

A notary public or other officer completing this certificate verifies only the identity of the
individual who signed the document to which this certificate is attached, and not the truthfulness,
accuracy, or validity of that document.

State of California                              )
County of Los Angeles                       )

On                   , 2020, before me,                        , a Notary Public, personally appeared
, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.


Signature       _____

27

## PROOF OF SERVICE

I, the undersigned, declare and certify as follows:

I am over the age of eighteen years, not a party to the within action and employed in the County of Los Angeles State of California. I am employed in the office of BISNO MULVANEY, LLP, members of the Bar of the above-entitled Court, and I made the service referred to below at their direction. My business address is 15760 Ventura Boulevard, Suite 1200, Encino, California 91436-3042.

On _____, 2020, I served true copy(ies) of the **NOTICE OF WITHDRAWAL OF NOTICE OF PENDING ACTION (LIS PENDENS) REGARDING REAL PROPERTY COMMONLY KNOWN AS 700 WEST 25TH STREET, UPLAND, CA 91784**, to the party(ies) on the attached service list.

### SEE ATTACHED SERVICE LIST

**BY MAIL:** I placed the envelope for collection and mailing at Los Angeles, California. The envelope was mailed with postage fully prepaid. I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

I certify under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on _____, 2020, at Los Angeles, California.

_____

## SERVICE LIST

JASON EDWARD THOMAS CARDIFF, individually
and as Co-Trustee of the JURIKEL FAMILY TRUST
dated April 24, 2014 and as Co-Trustee of the CAROLS
PLACE TRUST dated January 17,2017
700 West 25th Street
Upland, CA 91784


EUNJUNG CARDIFF aka EUNJUNG NO, individually
and as Co-Trustee of the JURIKEL FAMILY TRUST
dated April 24, 2014 and as Co-Trustee of the CAROLS
PLACE TRUST dated January 17, 2017
700 West 25th Street
Upland, CA 91784