UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 18-2104-DMG (PLAx)** | Date | October 9, 2020 |
| --- | --- | --- | --- |

| Title | ***Federal Trade Commission v Jason Cardiff, et al.*** | Page | 1 of 28 |
| --- | --- | --- | --- |

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
| --- | --- |
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
| --- | --- |
| None Present | None Present |

**Proceedings:  IN CHAMBERS—ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT [423, 441]**

This matter is before the Court on the cross-motions for summary judgment ("MSJs") brought by Plaintiff Federal Trade Commission ("FTC") [Doc. # 423] and by Defendants Jason Cardiff and Eunjung Cardiff [Doc. # 441].  The cross-MSJs are fully briefed.  [Doc. ## 490, 491, 498, 499.]  The Court held a hearing on October 9, 2020.

For the reasons stated below, the Court **GRANTS** in part Plaintiff's MSJ as to the Cardiffs' liability and **DENIES** in part Defendants' MSJ relating to the Cardiffs' liability.

# I.
# EVIDENTIARY OBJECTIONS

The Cardiffs object to many of the FTC's Statements of Undisputed Fact because they "lack [] timeframe" and because Defendants ceased to advertise and market the three products at issue in February 2018, months before this action was filed in October 2018. *See* Defs.' Statement of Genuine Disputes [Doc. # 491-1].  Unless otherwise stated, the Court **OVERRULES** those objections because:  (1) the time frame is clear by the context of the asserted fact, (2) the FTC states the relevant time frames in the Complaint, (3) evidence in the record indicates that the products continued to be marketed and sold later in 2018, and (4) evidence of past violations is relevant to the FTC's claims.

The Cardiffs also make repeated blanket objections to Statements of Undisputed Fact as irrelevant without any support for the objection.  Where the Court determines that facts are relevant and refers to them, the Court **OVERRULES** the relevance objection.  Insofar as the Court does not rely on a given fact in rendering its decision, the Court **OVERRULES** the relevance objection as moot.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 18-2104-DMG (PLAx)** | Date | October 9, 2020 |
|---|---|---|---|

| Title | ***Federal Trade Commission v Jason Cardiff, et al.*** | Page | 2 of 28 |
|---|---|---|---|

Finally, the Court notes that a conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact. *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), *as amended* (Apr. 11, 1997). Similarly, assertions in briefs that are unsupported by citations to evidence do not give rise to disputed facts. *See* Fed. R. Civ. P 56(c)(1)(A) (requiring a party to support its factual position by "citing to particular parts of materials on the record"); *Comstock v. Humphries*, 786 F.3d 701, 709 (9th Cir. 2015) ("[A]rguments in briefs are not evidence."); *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979) (conclusory or speculative testimony in affidavits and moving papers is insufficient to raise a genuine issue of fact).

The Court addresses other evidentiary objections in its discussion below as needed.

**II.**
**BACKGROUND[1]**

**A.     The Cardiffs and their Businesses**

At all times relevant to this action, Defendants Jason and Eunjung Cardiff were owners, officers, directors and/or members of the business entity Defendants in this action:  Redwood Scientific Technologies, Inc. ("Redwood") (encompassing Redwood California, Redwood Nevada, and Redwood Delaware); Run Away Products, LLC ("Run Away"); Advanced Men's Institute Prolongz LLC ("AMI"); and Identify LLC (together, the "Entity Defendants").[2]  SUF 18-36, 45-47, 52-67.

Run Away, AMI, and Redwood are iterations of the same entity such that the Cardiffs frequently refer to them interchangeably in business records.  In 2009, Eunjung formed Run Away and was its President and manager, and Jason was a member and Vice President.  SUF 34-36.  In 2014, Eunjung formed AMI and was a member, owner, and Chief Executive Officer ("CEO"),

---

[1] Due to Defendants' failure to adhere to the Initial Standing Order's instructions when providing disputed and undisputed facts, the Court relies on the FTC's response to the Defendants' Statement of Genuine Dispute ("DGSD") for the majority of undisputed facts.  For clarity, the Court cites to the FTC's response as the Statement of Undisputed Facts ("SUF") and notes Defendants' objections where necessary.  [Doc. # 499-1.]  The Court also cites to the FTC's response to Defendants' additional Statement of Undisputed Material Facts ("DSUMF").  [Doc. # 490-1.]

[2] In 2017, Jason became the sole member and manager of Defendant Identify LLC and used it as an umbrella to register Redwood Scientific Technologies, Runaway Products, Advanced Men's Institute, and TBX-FREE as Identify's trade names.  SUF 32-33, 47-48, 254.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 18-2104-DMG (PLAx)** | Date | October 9, 2020 |
|---|---|---|---|

| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 3 of 28 |
|---|---|---|---|

while Jason was managing member, owner, and President. SUF 45, 53, 57-59, 209, 224. Eunjung changed AMI's name to Redwood Scientific Technologies, LLC in November 2014, and then converted it to its corporate form, Redwood California. SUF 61, 210-11. Between January 1, 2014 and October 3, 2018, Jason was the sole owner, President, CEO, Chief Financial Officer ("CFO"), Secretary, and director of Redwood California, and Eunjung was its owner, director, Secretary, Chief Operating Officer ("COO"), and Director of Marketing. SUF 9-24, 61-65, 256. Redwood Nevada was incorporated in December 2014, and Redwood CA became a wholly-owned subsidiary of Redwood Nevada. SUF 212-13, 215. Redwood Delaware was formed when Redwood Nevada merged with a Delaware corporation in 2017. SUF 217. The Cardiffs retained similar positions in Redwood Nevada and Redwood Delaware to the ones they held in Redwood CA. SUF 25-31, 66-67. The principal places of business for both Redwood Nevada and Redwood Delaware are in California. SUF 214, 218.

In 2017, Jason became the sole member and manager of Defendant Identify LLC and used it as an umbrella to register Redwood Scientific Technologies, Runaway Products, Advanced Men's Institute, and TBX-FREE as Identify's trade names. SUF 32-33, 47-48, 254. Jason and Eunjung were also named beneficiaries of Carols Place Trust and owner/partners (through two entities that the Cardiffs control) of Defendant Carols Place Limited Partnership, which now holds 99.9 percent of the Cardiffs' common shares in Redwood Delaware, as well as title to the Cardiffs' residence in Upland, CA. SUF 37-40, 68-71,172, 228, 278.

Redwood and other Entity Defendants were in the business of marketing what the Cardiffs call "homeopathic dissolvable thin-film strip products," including an aid to smoking cessation called TBX-FREE; an appetite suppressant and weight loss supplement called Eupepsia Thin; and a men's sexual performance product called Prolongz (together, the "Products"). SUF 233. The Products were primarily marketed to consumers through television infomercials, websites, and social media posts described in more detail below. SUF 234. As of October 22, 2018, Redwood was still selling all three products. SUF 232.

The Cardiffs do not dispute that all of the Entity Defendants, not just Redwood, were involved in selling the Products. Several Entity Defendants share office space and employees. SUF 235-36, 250-53. Danielle Walker, who worked for the Cardiffs in various capacities, including as the Director of Operations for Redwood, where she worked from late 2014 until October 2018, attested that "it was all a single business operation marketing oral film strips." SUF 249.[3] The Entity Defendants all participated in advertising the Products, applied for and obtained

---

[3] Walker was also a Defendant in this action who settled and stipulated to a permanent injunction that the Court approved on May 16, 2019. [Doc. # 114.]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | ED CV 18-2104-DMG (PLAx) | Date | October 9, 2020 |
|---|---|---|---|

| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 4 of 28 |

merchant accounts to process payments for the Products, and purchased or acted as consignees for oral film strips from suppliers in China and India.  SUF 236-39.  In response to one supplier's bank's request to clarify that all of these companies whose names appeared on invoices are related, Jason Cardiff signed a statement as President of Identify, LLC that declared that Redwood, AMI, Run Away, and Identify were "our group of companies (our sister concern companies)."  SUF 240.

Undisputed evidence shows that both Cardiffs controlled the Entity Defendants' bank accounts and used various bank accounts to meet operational costs for Redwood and their other businesses and to pay for the Cardiffs' personal expenses such as luxury car leases, cruises, resort lodging, private charter air travel, and clothing and department store purchases.  SUF 51, 72-75, 78, 170, 173-77, 234-46, 251.  Between April 2015 and May 2018, the Entity Defendants transferred almost $4 million between themselves.  SUF 264.  Both Cardiffs have also personally guaranteed payments promised by one or more of their businesses.  SUF 123, 171, 266.  While the Cardiffs assert that they invested $3 million of their "own money" into Redwood, and Eunjung asserts that she invested $800,000 personally into Redwood, no records or financial documents support either assertion.  DSUMF 1, 28.

The Cardiffs do not dispute that they had final authority over most, if not all, business decisions regarding the Entity Defendants.  SUF 206.[4]  For example, Jason Cardiff had final approval of Redwood's websites and all Redwood product advertising online, in video, and in print.  SUF 82-83.  Eunjung Cardiff approved payment of invoices and bills, was in charge of tracking media performance, and received daily charts showing which advertisement generated each sales call.  SUF 146-47, 173, 180.  Both Cardiffs were heavily involved in the creation and final approval of advertising material for the Products, as well as decisions on when and where to place advertisements.  SUF 87-98.  The Cardiffs do not contest most of the FTC's detailed accounts of their involvement with third-party contractors' advertising campaigns for the three Products, as discussed in more detail below.  *See* SUF 114-116, 118-119 (Jason instructed a subcontractor to include claims from Redwood's website in television advertisement); SUF 122 (Jason supervised the design of Eupepsia Thin product packaging); SUF 150 (Eunjung confirmed an advertisement for TBX-FREE that stated guaranteed withdrawal-free smoking cessation); SUF 153 (Eunjung asked for the Eupepsia Thin advertisement to state "Lose up to 100 pounds"); SUF 169 (Eunjung provided the voiceover for at least two Eupepsia Thin television advertisements); SUF 124-26, 167-68 (both Cardiffs were involved in a telemarketing campaign delivering ringless voicemail

---

[4] Although the Cardiffs assert that Danielle Walker had the authority to make decisions on contracts, expenses, and advertising when the Cardiffs were not available, they do not provide evidence that Walker in fact made any decisions that the Cardiffs did not approve of, and other employees recall seeing Jason in the Redwood CA office almost daily and Eunjung in the office weekly.  SUF 206.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 18-2104-DMG (PLAx)** | Date | October 9, 2020 |
|---|---|---|---|

| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 5 of 28 |
|---|---|---|---|

messages and used their voices in recorded messages). Jason also wrote and directed creation of content for Facebook advertisements. SUF 84-85. The Court thus need not go into each undisputed fact regarding the Cardiffs' involvement in producing and approving the advertisements in detail.

**B.     Product Advertising**

Defendants purchased media time for television commercials to promote the Products through at least four media companies: Inter/Media Time Buying Corp. ("Inter/Media"), Havas Edge, Diversified Mercury Communications, LLC ("Mercury Media"), and Cannella Response Television, LLC ("Cannella"). SUF 131. In 2014, Run Away contracted with Inter/Media and Havas Edge to run advertisements about Prolongz. SUF 100-12, 619-21. From 2014 to 2018, Redwood contracted with Cannella, paying over $6.5 million to buy media time to advertise all three Products, mostly through 28-minute television informercials. SUF 135, 184. From 2017 to February 2018, Redwood contracted with Mercury Media for television advertising time for TBX-FREE and Eupepsia Thin. SUF 293, 314-16, 475-77.

**1.     TBX-FREE**

Defendants sold TBX-FREE from at least 2015 to 2018 with reported net sales of $7,227,009.27. SUF 281, 292. TBX-FREE film strips targeted people who wanted to stop smoking. SUF 280. According to the TBX-FREE packaging, each film strip contains "Laburnum anagyroides 1X." SUF 283. The purported active ingredient is cytisine. DSUMF 46. Defendants registered TBX-FREE as an "unapproved homeopathic" drug with the Federal Drug Administration ("FDA"). DSUMF 6.

Defendants advertised TBX-FREE using national television commercials, websites, social media (including Facebook, Instagram, and YouTube), print, and robocalls. SUF 293, 317-20. From 2015 to 2018, Cannella purchased media time for a total of 6,416 airings of TBX-FREE advertising. SUF 310. In late 2017 and February 2018, Mercury Media arranged for TBX-FREE commercials to be broadcast on national cable television. SUF 313-16. Below are some of the representations made in Defendants' TBX-FREE television advertising:

- TBX-FREE is ready to set you free from nicotine addiction forever and the addiction to tobacco and cigarettes.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 18-2104-DMG (PLAx)** | Date | October 9, 2020 |
|---|---|---|---|

| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 6 of 28 |
|---|---|---|---|

- Did you know the cure rate for the FDA approved patch and gum is a whopping 2 percent? That's right. A 2 percent success rate at best . . . . And what about the other 98 percent? . . . Well, we have you 100 percent covered.
- With an 88 percent success rate . . . TBX-FREE is the number one choice by smokers.
- HUNDREDS & HUNDREDS OF CLINICAL STUDIES PERFORMED ON OVER 10,600 SMOKERS!
- If you'll get your treatment started today, in as little as 30 days, you should never want to smoke another cigarette again.

SUF 322-27.

The TBXFREE.com/2 website made similar statements that the product was more effective than nicotine patches or gum and had an 88 percent success rate, among other statements. SUF 328-35. The website also stated that "[i]n clinical studies cited in The New England Journal of Medicine, the active ingredient in TBX-FREE has an 88% cure care [sic] compared to the patch and gum combined"; "Clinically Proven:  New England Journal of Medicine STOP SMOKING NOW"; and "Clinically Proven Johns Hopkins University / The New England Journal of Medicine / Harvard Health Publications / Harvard Medical School." SUF 335-38.

Jason Cardiff appears in Facebook advertisements in January 2017 making similar claims regarding the 88 percent effective rate in long-term smokers and asserting:  "Our clinical data on TBX-Free has been done by some of the greatest medical and scientific institutions anywhere that we know of, including, [sic] not limited to the New England Journal of Medicine, which ranks our product ten times more effective than nicotine-replacement therapy to stop smoking." He says TBX-FREE works "really fast, within a week, within ten days" and that "you should never need more than one month." SUF 343-50. Eunjung Cardiff's voice appeared in a ringless voicemail advertising TBX-FREE, describing it as "the stop smoking product that has changed so many lives." SUF 362.

While Eunjung asserts that thousands of customers gave positive reviews of TBX-FREE, there is no evidence of those reviews outside of her declaration. DSUMF 5.

**2.  Eupepsia Thin**

Defendants sold Eupepsia Thin from 2017 to 2018 with $1,936,459.02 million in net sales. SUF 458. They advertised Eupepsia Thin as an effective appetite suppressant and weight loss aid

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | ED CV 18-2104-DMG (PLAx) | Date | October 9, 2020 |
|---|---|---|---|

| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 7 of 28 |
|---|---|---|---|

through national television campaigns and websites. SUF 459-60, 482-522. The active ingredient is "Paulinia cupana H.B.K. et K. 1x," or guarana. SUF 194, 453; Jason Decl., Ex. 1 [Doc. # 441-2]. Cannella alone arranged for 8,039 airings of Eupepsia Thin advertisements. SUF 474.

Below are some of the representations made in Defendants' Eupepsia Thin television advertising:

- Eupepsia is a safe and effective way to help you control your appetite.
- The ingredients in Eupepsia will begin to activate in your system in less than 20 seconds. . . . In minutes, you will feel your appetite suppress, giving you control over how much you eat.
- Are you ready to lose 10, 20, even 100 pounds without following a strict and complicated diet plan?
- If you would like to lose 8-20lbs – our one month supply at [$]69.95 will work for you. If you would like to lose 20-50lbs – our three month supply at [$]169.95 will work for you.
- Current calorie reduction and meal plans have less than 5% success rate while the new product, Eupepsia Thin has a substantially higher success rate.

SUF 482-85, 504, 506, 508, 529-31. The Eupepsia Thin website promised, *inter alia*, "Lose up to 15 pounds your first month with Eupepsia Thin oral strips without diets or changing your food or lifestyle choices." SUF 508. The product packaging asserts that it is "Clinically proven to help suppress appetite between meals," and an advertising insert in the packaging claims that "Eupepsia Thin is the product with proven clinical research to help you keep the weight off for life." SUF 521-22.

The Eupepsia Thin advertisements and websites also contained testimonials from individuals claiming that they used the product to lose weight, with Dan Hogan claiming to have lost 45 pounds, Karen Spero claiming to have lost 90 pounds, and Todd Preston claiming to have lost 132 pounds. SUF 1, 493-95, 497, 513-14, 761. Each of these three testimonialists admit in declarations that they did not use Eupepsia Thing to lose weight and were instructed by the infomercial director to say that their weight loss was due to Eupepsia Thin. SUF 762-68.

Jason Cardiff denies that he knew that people giving testimonials about their experiences with Eupepsia Thin in television advertisements had not used Eupepsia Thin to lose weight. SUF 120-121. The evidence shows, however, that Jason responded to an e-mail from contractor Ty Sherrell stating: "[I] am working on getting testimonials from people who have already lost weight

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | ED CV 18-2104-DMG (PLAx) | Date | October 9, 2020 |
|---|---|---|---|

| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 8 of 28 |
|---|---|---|---|

and I'm getting before pictures for them . . . they will still have the product and do the testimonials
but ill [sic] have before pictures from their past fat lives lol [.]" Sands Decl., Att. 3 at 38-39 [Doc.
# 434-1]. Even more telling is the fact that the infomercial regarding Eupepsia Thin was filmed
in February 2017, *before* Redwood started selling the product, further undercutting Jason's self-
serving denial. SUF 199. Defendants do not provide any evidence to contradict the sworn
declarations of the three testimonialists. SUF 121, 762.

A seal that appeared on Eupepsia Thin product packaging and Defendants' websites
denoted that Eupepsia Thin was "Made in USA." SUF 712-16.

### 3. Prolongz

Defendants sold Prolongz from 2013 to 2018 but reported only gross sales from 2015 to
2017 of $5,985,747.96. SUF 610, 615. Defendants advertised Prolongz as a male ejaculation
control product on television and on websites. According to the Prolongz label, each film strip
contains "10 mg Damiana Extract 1X and 10 mg of Ginseng Extract 1X." SUF 607. Cannella
alone arranged for 4,748 airings of Prolongz ads. SUF 634. The television advertisements state
that Prolongz substantially increases ejaculation control and increases the duration of sex. SUF
636-39. The prolongz.com website claims, *inter alia*, that Prolongz is an FDA registered drug that
is "a first of its kind product which uses Oral (sublingual) dissolvable Strip technology for the
treatment of PE" and "Prolongz is guaranteed to increase your ejaculatory control levels and
overall sexual performance." SUF 640-41, 643.

The website also claims that Prolongz was clinically tested, stating that "[i]n clinical
studies, the ingredients in Prolongz™ by Advanced Men's Institute (AMI) were proven to increase
ejaculatory control level of over 97% in men" and "[p]roven to effectively increase the length in
Sex for over 97% of Thousands of Men who have tried Prolongz." SUF 644-45.

### C. Product Substantiation

The Cardiffs admit that they did not conduct any human clinical studies of TBX-FREE as
a smoking cessation product or Eupepsia Thin as a weight loss product. SUF 194-95, 375, 535-
538, 599. Instead, they argue that the clinical studies done on the "active" ingredients of each
Product and separate articles about thin strip technology supported the Products' efficacy. *See*
DSUMF 40. Jason admits that he is not a scientific expert, noting, "I can't say I understood
everything in these articles" about thin strip technology. Cardiff Decl. at ¶ 11 [Doc. # 491-3]. The
Cardiffs also assert that the FDA "approved" the Products' packaging and labeling, even though

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 18-2104-DMG (PLAx)** | Date | October 9, 2020 |
|---|---|---|---|

| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 9 of 28 |
|---|---|---|---|

all three were in fact registered in the National Drug Code Directory as an "unapproved homeopathic" drug, which does not denote FDA approval.  DSUMF 54, 59, 65.

The Cardiffs were aware of the need for substantiation for the claims of the Products' effectiveness and provided substantiation packets to networks consisting of articles about TBX-FREE's and Eupepsia Thin's active ingredients.  SUF 157-58, 190, 192; Cardiff Decl. at ¶¶ 23-25, Ex. 1-2 [Doc. # 441-2].[5]  Eunjung in particular handled requests for substantiation.  *See, e.g.*, SUF 162-63 (she was informed that FDA approval, not just registration, was needed to satisfy certain networks); 165 (she was informed that "[t]estimonials will need to be provided, to make sure weight loss claims weren't due to being paid").

The FTC has retained experts in the fields of smoking cessation, weight-loss, and male sexual health who each concluded that Defendants' efficacy claims are not substantiated by competent and reliable scientific evidence and did not find any clinical testing of TBX-FREE, Eupepsia Thin, or Prolongz to support Defendants' "clinically proven" claims.  The Cardiffs have submitted no expert testimony rebutting the analysis of the FTC's experts.[6]

### 1.  TBX-FREE

The FTC's smoking cessation expert, Dr. Judith Prochaska, opines that Defendants do not have substantiation for the challenged TBX-FREE claims.[7]  SUF 433-437.  She says that to substantiate these claims, experts in the field of nicotine addiction would require randomized,

---

[5] It is not clear what Eunjung offered as substantiation for Prolongz besides asserting that "[t]he FDA registration is proof that our product is certified by the FDA as an over the counter drug that treats the condition[.]" SUF 160.  The package for Eupepsia Thin was put together by a contract researcher.  SUF 192.

[6] The Cardiffs argue that each of the experts' opinions should be excluded for analyzing claims made about the Products prior to February 2018.  *See, e.g.*, SUF 376, 539, 649.  As discussed below in Section III.A.2, some misleading advertisements continued after February 2018, and Defendants continued to sell the Products until October 2018.  Furthermore, the lack of substantiation for prior claims made about the Products is relevant to the Cardiffs' liability and likelihood for violations to recur.  The Court **OVERRULES** the objection.

[7] The Cardiffs argue that Dr. Prochaska's opinions should be excluded because her expert report, which was produced in support of the FTC's application for TRO in October 2018, does not comply with Rule 26(a)'s requirement to provide a list of all other cases in which she testified as an expert at trial or by deposition and a statement of the compensation to be paid for her testimony.  SUF 376.  Information may be introduced if the parties' failure to disclose the required information is substantially justified or harmless.  Fed. R. Civ. P. 37(c)(1).  The Cardiffs have not sought discovery sanctions under Rule 37, and there is no indication of harm the Cardiffs have suffered since 2018 from the lack of disclosure.  The Court **OVERRULES** the objection.

---

**CIVIL MINUTES—GENERAL**                            Initials of Deputy Clerk <u>KT</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 18-2104-DMG (PLAx)** | Date | October 9, 2020 |
|---|---|---|---|

| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 10 of 28 |
|---|---|---|---|

controlled trial evidence from a study of TBX-FREE involving nicotine-dependent subjects and comparing TBX-FREE to a placebo. Dr. Prochaska found no evidence in her independent search of scientific literature that supports the challenged TBX-FREE claims. SUF 392, 414.

The Cardiffs have conceded that the 88 percent success rate claim is false. SUF 438. That figure is not even substantiated by the studies that Jason (who has not been qualified as an expert) describes in his declaration, which involved 60 smokers, 13.8 percent of whom quit smoking during a 12-month period with the aid of cytisine, with results on par with "smokers receiving nicotine replacement therapy." Jason Cardiff Decl. at ¶ 13 [Doc. # 441-1]. Dr. Prochaska reviewed that article and other articles on the effectiveness of cytisine and noted that a few cytisine studies of a completely different product that follow the standards of experts in the field have demonstrated modest efficacy for smoking cessation. SUF 375, 421, 438. Dr. Prochaska opines that these studies cannot be extrapolated to support any of the TBX-FREE efficacy claims, let alone the claim that TBX-FREE has an 88 percent success rate, due to the differences in dosages, dosage regimens, and modes of administration. SUF 426-31.

The New England Journal of Medicine also confirmed that it did not publish clinical studies or other materials demonstrating that TBX-FREE is an effective smoking cessation product or that users of the product had an 88 percent success rate. SUF 445-46.

## 2. Eupepsia Thin

Dr. David Levitsky, the FTC's weight-loss expert, opines that Defendants' appetite suppression and weight-loss claims regarding Eupepsia Thin are not supported by reliable scientific evidence. SUF 570, 577-85, 588-97. He explains that to substantiate the efficacy claims made for Eupepsia Thin, experts in the weight-loss field would require double-blind, randomized, placebo-controlled trial evidence from a study of the product itself or from a product using the same ingredients in the same dosages; ideally, the results would be replicated by independent laboratories. SUF 555. Successful results would show statistically significant improvements on standard outcome measures, including clinical (not self-reported) measurements of weight and body fat. SUF 566-67.

Dr. Levitsky reviewed the purported substantiation that Defendants submitted to the FTC and determined that it does not support the efficacy claims. SUF 568, 570, 576-84. In addition, Dr. Levitsky's own review of the scientific literature regarding the purported main ingredient of Eupepsia Thin—Paullinia Cupana H.B.K. 1X (caffeine)—found no studies that can be extrapolated to the product. SUF 569-70, 572-75. Dr. Levitsky stated that some research suggests

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | ED CV 18-2104-DMG (PLAx) | | Date | October 9, 2020 |
|---|---|---|---|---|

| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 11 of 28 |
|---|---|---|---|

that high doses (more than 400 mg) of caffeine are associated with appetite suppression, but that there is no evidence that Eupepsia Thin, a homeopathic product, contains that much caffeine or that caffeine consumption causes weight loss. SUF 573-75.

In addition, as discussed above, the Eupepsia Thin advertisements and websites used false testimonials from individuals who did not use Eupepsia Thin to lose weight. SUF 762-63.

Defendants' claim on Eupepsia Thin product packaging and their websites that Eupepsia Thin was "Made in USA" is also false, as the Cardiffs were aware that Eupepsia Thin strips and packaging was manufactured in China and India. SUF 712-16, 718-21.

### 3. Prolongz

Dr. Hossein Sadeghi-Nejad, an expert in urology and sexual medicine, opines that Defendants have no reliable science to support the Prolongz ejaculation control claims. SUF 704-05. Dr. Sadeghi-Nejad says that to substantiate the Prolongz claims of increased ejaculatory control and treatment or prevention of premature ejaculation, experts in his field would require randomized, double-blind, properly controlled human clinical testing of Prolongz or a substantially similar product using the same dosage and route of administration. SUF 664-671. Dr. Sadeghi-Nejad has found no relevant evidence in the scientific literature that meets these standards. SUF 683-703.

He also reviewed the purported substantiation material Defendants provided to the FTC—a pilot survey and a collection of journal articles on other products—and opines that Defendants' substantiation does not meet the standards of experts in the field. SUF 683-702. The pilot survey sponsored by Defendants did not have a randomized control group. SUF 686. The study lasted only one week and involved only 29 test subjects and was thus too short and too small to yield accurate and reliable results. SUF 687-89. The scientific literature compiled by Defendants on the purported active ingredients in Prolongz was not comparable either to the dosage or to the route of administration of Prolongz. SUF 694-702.

### D. Consumer Contact, Shipping, and Billing Programs

### 1. Money-back guarantee

Defendants advertised money-back guarantees for the Products. SUF 725-36. For example, Jason claimed in a TBX-FREE Facebook video, "We have a lifetime money-back

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 18-2104-DMG (PLAx)** | Date | October 9, 2020 |
|---|---|---|---|

| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 12 of 28 |
|---|---|---|---|

guarantee.  So for any reason if it doesn't work, you don't even need to ship it back."  SUF 726. In Eupepsia Thin television advertisements, the following words would appear on screen—"MONEY BACK GUARANTEE LIFETIME 1-800-5551212 thinliferx.com"—while the spokeswoman says, "We are so confident that Eupepsia will work for you, it comes with a lifetime guarantee."  SUF 732.

In many instances, however, Defendants denied refunds to consumers based on refund policies and conditions that had never been disclosed to consumers.  SUF 743, 747, 753.  In practice, Defendants limited their "lifetime" guarantee to 30 days.  SUF 738.  In addition, Jason instructed his customer service staff to cap daily refunds not to exceed daily revenue, in contravention of the product guarantees.  SUF 749-54.  This resulted in backlogs of customers waiting to receive their refunds.  SUF 755.

### 2.   Autoship plans and unauthorized charges

For most of the time they sold the Products, Defendants enrolled consumers who ordered the Products into unauthorized autoship programs, which resulted in consumers being repeatedly charged for additional shipments.  SUF 772-76.  Although the Cardiffs assert that Redwood "had a strict policy to not place anyone on autoship unless the customer was fully aware of the autoship and agreed to the terms and conditions of the program," the Cardiffs fail to provide any proof of this "strict policy" besides Jason's declaration.  SUF 798.  Several customers reported not being told about the autoship enrollment, and an FTC investigator making an undercover purchase of TBX-FREE experienced the same undisclosed autoship enrollment.  SUF 810-16.  Redwood employees confirm that until late 2017, Cardiff told his sales representatives not to disclose the autoship plan at time of purchase for purchases made on the phone.  Moreover, even after autoship disclosures were added to sales call scripts, sales representatives often failed to mention the disclosures or added customers to autoship policies regardless of the customer's preference.  SUF 785-87, 798, 799-08, 811-12.  Defendants thus made unauthorized charges on consumers' credit and debit cards and made it difficult for consumers to cancel recurring charges.  SUF 748-57, 783, 815-19, 821-24, 826, 829-33, 839-41, 847, 822, 825.  As for purchases made online, Defendants' websites contained information about an auto-ship/recurring billing program on the "terms and conditions" page of the websites and made auto-ship the default feature.  SUF 775-83.  Payment processing consultants informed Jason Cardiff that failure to disclose the auto-ship program on the websites' checkout page was improper.  SUF 777-83.

Defendants processed unauthorized charges on stored debit and credit cards of consumers who had made only a one-time purchase, sometimes over a year after the consumer's original

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | ED CV 18-2104-DMG (PLAx) | | Date | October 9, 2020 |
|---|---|---|---|---|

| Title | *Federal Trade Commission v Jason Cardiff, et al.* | | Page | 13 of 28 |
|---|---|---|---|---|

purchase.  SUF 839-52.  Jason denies this.  The FTC has submitted testimony of Redwood employees and documentary evidence of emails Jason sent or received indicating his approval of a scheme to process unauthorized autoship enrollments and charges on the debit or credit cards of consumers who had made only one-time purchases.  According to one employee, Jason directed a group of employees to initiate these charges, telling them they had to successfully charge at least $10,000 per day, and threatening to fire at least one of them if she did not comply.  SUF 839, 843-44, 848-52.  An email from a Redwood employee reads, "Per Jason [t]he straight sale 1 month supply orders between December 21, 1017 [sic] – January 22, 2018 will be placed on continuity." Melendez Decl., Att. 6 at 38 [Doc. # 428-3].  When an employee emailed that she tried to process over 300 orders but most of the cards were declined due to expiration, Jason responded "Increase the year," referring to the expiration date.  *Id.*, Att. 6 at 73 [Doc. # 428-3].  The emails indicate Jason's knowledge and approval of a Redwood policy of making unauthorized charges.  He provides no supporting evidence for his denial.

Between January and April 2018, Defendants processed unauthorized charges for at least 1,500 consumers.  SUF 847.[8]

### 3.  Ringless voicemail messages

In early 2018, Defendants contracted with two services to deliver 2.5 million prerecorded ringless voicemail messages straight to consumers' voicemails.  SUF 856-57.  More than 1.5 million messages were delivered to consumers.  SUF 178-79, 856-57, 859.

Jason controlled the telemarketing campaigns that delivered ringless voicemail messages, and his voice is heard in two recorded messages promoting male sexual enhancement products in a campaign that ran from February 2018 through July 2018.  SUF 124-25, 938.  Eunjung's voice is heard in a ringless voicemail message promoting TBX-FREE that went straight to consumers' voicemail boxes.  SUF 167-68.  She also approved payment for the ringless voicemail contracts. SUF 178-79.

### 4.  Rengalife

From March to July 2018, the Cardiffs developed and began a multilevel marketing program called Rengalife.  SUF 201-05, 863-72, 879.  Via Facebook, their website, and an email to consumers who had previously purchased the Products, including an undercover FTC

---

[8] This campaign of unauthorized charges began over four months after Defendants received the FTC's Civil Investigative Demand ("CID") and continued until the FTC filed suit to enforce the CID.  SUF 1-2, 4-6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 18-2104-DMG (PLAx)** | Date | October 9, 2020 |
|---|---|---|---|

| Title | ***Federal Trade Commission v Jason Cardiff, et al.*** | Page | 14 of 28 |
|---|---|---|---|

investigator, Defendants promised that anyone joining Rengalife for a minimum monthly spend of $199.80 would make a minimum annual salary of $7,200 and unlimited earning potential when they sold oral film strip products to others.  SUF 870, 873, 878-91, 897.  Jason's control over this program is undisputed.  SUF 127-28.

Although Jason asserts that no one signed up, the email sent to the FTC investigator claimed that over 200 individuals had signed up between March 26, 2018 and April 9, 2018, and declarations from Rengalife members and Danielle Walker show that the Rengalife program did successfully recruit members.  SUF 869, 873-75.  The Cardiffs admit that they did not have actual earnings data from Rengalife members to substantiate their earnings claims, and the FTC expert Dr. Stacie Bosley attests that nearly all Rengalife members would be forced to be in a negative financial position due to purchasing more film strips than they could sell.  SUF 898-99, 933-36. Jason halted the program in July 2018.  SUF 863.

**E.       FTC investigation**

The FTC issued a Civil Investigative Demand (CID) on August 3, 2017.  SUF 1.  The CID's specifications required that Redwood produce documents and information pertaining to the advertising of TBX-FREE and Eupepsia Thin oral film strips and pertaining to autoship programs and unauthorized charges.  SUF 2.  The CID and accompanying cover letter instructed Redwood to preserve all documents that may be responsive to the CID's requests.  Redwood failed to timely comply with the CID, and the FTC initiated an enforcement action against Redwood on October 30, 2017 in the U.S. District Court for the Central District of California, No. CV 17-07921-SJO (PLAx) (C.D. Cal. 2017) (Otero, J.) [Doc. # 1].  On January 15, 2018, Judge Otero issued an order compelling Redwood to comply with the FTC's CID, and on March 6, 2018, he issued an order for Redwood to show cause why it should not be held in contempt for failure to comply with the CID.  SUF 5-6.

Between March 22 and June 14, 2018, the FTC received voluminous records from Redwood that did not contain any video advertising or dissemination schedules for TBX-FREE or Eupepsia Thin.  SUF 7, 9.[9]  Video advertising and dissemination schedules also were not found in Redwood's offices after Judge Otero issued the initial TRO in the instant case on October 10, 2018.  SUF 10.  The parties dispute whether the Cardiffs destroyed documents relating to the Products' advertising.  SUF 11-14.

---

[9] Although Defendants argue that they "would have included" those schedules and video advertising in the "data dumps provided to the FTC," they do not point to any evidence that they did so.  SUF 9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | ED CV 18-2104-DMG (PLAx) | | Date | October 9, 2020 |
|---|---|---|---|---|
| Title | *Federal Trade Commission v Jason Cardiff, et al.* | | Page | 15 of 28 |

The FTC did not issue a warning letter to Defendants.  DSUMF 12.

**F.    The Instant Action**

On October 10, 2018, the FTC filed a Complaint for Permanent Injunction and Other Equitable Relief under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), against the Cardiffs and Entity Defendants, alleging that the Cardiffs "have for years operated a fraudulent multi-pronged scheme that has bilked consumers out of millions of dollars through baseless advertising claims for products that purport to alleviate serious health conditions, while also enrolling consumers in unwanted autoship programs that have resulted in millions of dollars in unauthorized charges." Compl. at ¶ 1 [Doc. # 1].  That day, the Court issued a Temporary Restraining Order ("TRO") freezing the Cardiffs' assets and appointing a Temporary Receiver.  [Doc. # 29.]  On November 8, 2018, the Court entered a Preliminary Injunction maintaining the asset freeze and receiver appointment.  [Doc. # 59.]

In brief, since November 2018, the Court has held the Cardiffs in contempt several times for failure to abide by the Court's Orders to turn over documents and funds; approved a settlement between the Receiver and Inter/Media (which has a state court judgment against the Cardiffs) to divide the proceeds of the sale of the Cardiffs' residence; issued another TRO and Preliminary Injunction putting Cardiff's new company, VPL Medical Inc., under receivership under the terms of the original Preliminary Injunction; denied multiple attempts to alter the Preliminary Injunction and/or remove the Receiver; and denied a motion to stay pending appeal of the VPL Preliminary Injunction to the Ninth Circuit and a U.S. Supreme Court decision on the scope of injunctive relief under Section 13(b) of the FTC Act.

In the Order denying the Cardiffs' *Ex Parte* Application to stay the proceedings, however, the Court recognized that the United States Supreme Court will likely decide whether restitution is available under Section 13(b) in its decision on a pair of cases:  *F.T.C. v. Credit Bureau Center*, 937 F.3d 764 (7th Cir. 2019), *cert. granted*, 2020 WL 3865251 (U.S. July 9, 2020), and *F.T.C. v. AMG Capital Management, LLC*, 910 F.3d 417 (9th Cir. 2018), *cert. granted*, 2020 WL 3865250 (U.S. July 9, 2020) (together, the "Consolidated Appeals").  [Doc. # 485.]  The Court did not find a stay of the cross-MSJs on the Cardiffs' liability to be necessary, but noted that a stay at a later date may be appropriate due to uncertainty regarding the breadth and scope of the remedy.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 18-2104-DMG (PLAx)** | Date | October 9, 2020 |
|---|---|---|---|

| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 16 of 28 |
|---|---|---|---|

## III.
## LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.

The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, Rule 56(c) requires the nonmoving party to "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(c), (e)); *see also Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (*en banc*) ("Rule 56 requires the parties to set out facts they will be able to prove at trial."). "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). "Rather, it draws all inferences in the light most favorable to the nonmoving party." *Id.* Nonetheless, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

When faced with cross-motions for summary judgment, the Court considers each motion on its own merits to determine whether the Rule 56 summary judgment standard is satisfied. *Fair Housing Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). Where the issues before the Court are questions of law, the case is particularly "well suited" for summary judgment. *Del Real, LLC v. Harris*, 966 F. Supp. 2d 1047, 1051 (E.D. Cal. 2013); *see also Asuncion v. Dist. Dir. of U.S. Immigration & Naturalization Serv.*, 427 F.2d 523, 524 (9th Cir. 1970) (district court properly resolved motion for summary judgment where issues presented were comprised solely of questions of law).

**CIVIL MINUTES—GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 18-2104-DMG (PLAx)** | Date | October 9, 2020 |
|---|---|---|---|

| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 17 of 28 |

**IV.**
**DISCUSSION**

The FTC moves for summary judgment on each of its claims under the FTC Act, Restore Online Shoppers' Confidence Act ("ROSCA"), Electronic Fund Transfer Act ("EFTA"), and the Telemarketing Sales Rule ("TSR") and seeks a permanent injunction prohibiting Jason and Eunjung Cardiff from engaging in deceptive or unfair business practices and ordering equitable monetary relief in the amount of $18,213,899.

The Cardiffs move for summary judgment on each of the FTC's claims, arguing that: (1) the FTC treated Defendants unfairly by choosing to litigate rather than issuing a warning letter; (2) Defendants discontinued sales and marketing prior to the FTC filing this action and had reasonable basis to believe in the efficacy of their products; (3) the FTC Act does not support the FTC's "common enterprise" theory; (4) Section 13(b) of the FTC Act does not provide for restitution; and (5) when calculating a restitution award, reliance may not be imputed to every consumer.

The Court first considers the Cardiffs' motion.

**A.     The Cardiffs' Motion for Summary Judgment**

The Court already has dispensed with one of the Cardiffs' arguments regarding its authority to order monetary equitable relief under Section 13(b) of the FTC Act, notwithstanding *Liu v. Securities and Exchange Commission*, 140 S. Ct. 1936 (2020).  *See* March 10, 2020 Order at 5-7 [Doc. # 305]; July 7, 2020 Order at 6-9 [Doc. # 388]; September 9, 2020 Order at 6 [Doc. # 485]. Since the issuance of this Court's rulings in this regard, no new authority has abrogated *Federal Trade Commission v. H.N. Singer, Inc.*, 668 F.2d 1107 (9th Cir. 1982), which construed Section 13(b) to give courts the "'authority to grant any ancillary relief necessary to accomplish complete justice,'" including the "power to order restitution."  *Id.* at 1113.  Indeed, binding Ninth Circuit decisions after *Singer* have confirmed that Section 13(b) permits equitable monetary relief.  *See, e.g.*, *F.T.C. v. AMG Capital Mgmt.*, LLC, 910 F.3d 417, 426 (9th Cir. 2018), *cert. granted*, 2020 WL 3865250 (U.S. July 9, 2020); *F.T.C. v. AT&T Mobility*, 883 F.3d 848, 864 (9th Cir. 2018). After the Supreme Court decided *Liu*, this Court held that *Liu* did not displace well-established Ninth Circuit precedent because its holding was cabined to a provision of the Securities and Exchange Act.  July 7, 2020 Order at 8 [Doc. # 388].  In that same vein, the Ninth Circuit's recent decision in *Securities and Exchange Commission v. Yang*, No. 19-55289, (9th Cir. Aug. 6, 2020), does not affect the Court's ability to grant restitutionary relief under the FTC Act.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | ED CV 18-2104-DMG (PLAx) | Date | October 9, 2020 |
|---|---|---|---|

| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 18 of 28 |

The Court has also previously held that there is no requirement that funds frozen to pay a possible restitutionary award be traceable to the alleged illegal activity. July 7, 2020 Order at 5 n.4. [Doc. # 388] (citing *F.T.C. v. Commerce Planet, Inc.*, 815 F.3d 593, 601 (9th Cir. 2016) (finding tracing requirements have never applied in Section 13(b) cases)). In that same Order, the Court found that the FTC provided sufficient notice to Defendants of the basis of its equitable monetary relief. *Id.* at 6. The Cardiffs have not provided any reason for the Court to reconsider its prior rulings.

Due to the uncertainty about the scope and breadth of restitutionary relief under Section 13(b), however, the Court will defer ruling and entering judgment on the remedies in this case until after the Supreme Court has rendered its decision in the Consolidated Appeals.

The Court turns next to the new arguments raised in the Cardiffs' MSJ as to their liability.

**1. Selective prosecution and failure to issue warning letters**

The Cardiffs acknowledge that "the selective prosecution doctrine has not been applied in civil cases brought by agencies." Defs.' Reply at 6; *see, e.g.*, *United States v. Armstrong*, 517 U.S. 456, 463 (1996) (noting that a criminal defendant may assert that a "prosecutor has brought the charge for reasons forbidden by the Constitution"); *Rodriguez v. Cal. Highway Patrol*, 89 F. Supp. 2d 1131, 1140 (N.D. Cal. 2000) ("[W]hile *Armstrong* is a case of critical importance in the criminal context, it is less instructive in a civil case such as the present one."). Furthermore, even if they could raise selective prosecution in this context, the Cardiffs have not articulated any reason why the FTC's enforcement action against them violates their constitutional rights. *See Wayte v. United States*, 470 U.S. 598, 608 (1985) (holding that equal protection prohibits the government from selectively prosecuting an individual on the basis of race, ethnicity, or religion); *Blackledge v. Perry*, 417 U.S. 21, 27 (1974) (holding that due process prohibits a prosecutor from vindictively prosecuting a defendant for the defendant's exercise of a statutory, procedural, or other protected right).

The Cardiffs also acknowledge that there is "certainly nothing in the statute that *requires* pre-suit warning of a lawsuit." Defs.' Reply at 5. The Court therefore denies Defendants' summary judgment motion to the extent it relies on the selective prosecution argument.[10] *Id.* at 6.

---

[10] Related to this argument is Defendants' assertion that the FTC did not engage in good-faith settlement discussions with them. *See* Defs.' MSJ at 14-15. The FTC objects to disclosure of settlement discussions. Pl.'s Opp. at 27-28. The Court agrees that the content of settlement discussions is not relevant to the legal disputes at issue here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 18-2104-DMG (PLAx)** | Date | October 9, 2020 |

| Title | ***Federal Trade Commission v Jason Cardiff, et al.*** | Page | 19 of 28 |

### 2.   Voluntary cessation of illegal conduct

The Cardiffs also argue that Redwood had ceased all of its purportedly deceptive, unfair, or otherwise illegal conduct months before the FTC brought this action.  Defs.' Reply at 8-9.  The Cardiffs have previously raised this argument in their motion to dissolve the Preliminary Injunction [Doc. # 265], and the Court rejected it as a matter of law and fact.  March 10, 2020 Ord. at 4-5 [Doc. # 305].

Even if a violation of the FTC Act has ceased, an injunction will issue under §53(b) if there is reason to believe that the past conduct is "likely to recur."  *FTC v. Evans Prods. Co.*, 775 F.2d 1084, 1087 (9th Cir. 1985); *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) (holding to obtain an injunction, the FTC must show there is a "cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive").  As the Court held when it denied reconsideration of the Preliminary Injunction, not only were Defendants' statements that Redwood's operations had ceased not credible, but "[e]ven if Defendants had stopped business operations prior to the filing of the Complaint, the presence of products, shipping boxes, labels, and receipt of an order demonstrates that Defendants were likely to engage in future business operations."  March 10, 2020 Ord. at 4-5 [Doc. # 305.]  Furthermore, the Cardiffs admit that Defendants were still selling TBX-FREE, Eupepsia Thin, and Prolongz on October 12, 2018, when the Complaint was filed.  SUF 232.  Although they argue that the Products' sales were *de minimis* after July 2018, when Redwood began winding down operations, and that Redwood ceased doing business in September 2018, Eunjung has attested that she was still paying Redwood employees in October 2018 when the TRO was entered.  DSUMF 22a, 25; Eunjung Decl. at ¶ 7 [Doc. # 147-2].  It is uncontroverted that, according to Internet Archive captures of ordertbxfree.com, as late as September 17, 2020, TBX-FREE was still advertised as having an 88% success rate, despite the Cardiffs acknowledging the deceptive nature of that statistic.  *See* Sands Decl., Att. 12 [Doc. # 499-2].  In addition, the Cardiffs started using paid robocalls on February 14, 2018, and continued to deliver ringless voicemails until July 2018.  SUF 124-25, 320.  Jason also worked on developing Rengalife until July 2018.  SUF 201.

"Mere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave '[t]he defendant . . . free to return to his old ways.'"  *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1238 (9th Cir. 1999) (quoting *United States v. Concentrated Phosphate Export Ass'n., Inc.*, 393 U.S. 199, 203 (1968)).  Here, the Court notes that the egregiousness of the Cardiffs' knowing misrepresentations about the efficacy of the Products, years of profiting off the Products, total lack of "protestations of repentance," and plans to continue in the film strip business indicate likelihood of engaging in similar unfair acts or practices in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 18-2104-DMG (PLAx)** | Date | October 9, 2020 |
|---|---|---|---|

| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 20 of 28 |
|---|---|---|---|

future. *United States v. Or. State Med. Soc.*, 343 U.S. 326, 333 (1952); *see also F.T.C. v. Accusearch Inc.*, 570 F.3d 1187, 1202 (10th Cir. 2009); *S.E.C. v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980). Moreover, the Cardiffs' demonstrated eagerness to launch new business ventures without any assurances—sincere or otherwise—that consumer protection violations will not recur heightens the likelihood that they will engage in similar deceptive practices in the absence of court intervention.

### 3. Common enterprise

Defendants cite no legal authority for their argument that there is no common enterprise liability in an FTC enforcement action. Rather, courts routinely apply the elements for determining common enterprise in FTC cases at the summary judgment stage. *See, e.g.*, *F.T.C. v. Elegant Sols., Inc.*, No. SA CV 19-1333-JVS (KESx), 2020 WL 4390381, at *11 (C.D. Cal. July 6, 2020) (granting summary judgment and finding that defendants operated as a common enterprise); *F.T.C. v. Consumer Def., LLC*, No. CV 18-00030-JCM (BNWx), 2019 U.S. Dist. LEXIS 225283, at *5-6 (D. Nev. Dec. 5, 2019) (same); *FTC v. AMG Servs.*, No. CV 12-00536-GMN (VCFx), 2017 U.S. Dist. LEXIS 66689, at *26-28 (D. Nev. May 1, 2017) (same). The Ninth Circuit has held that "[w]here corporate entities operate together as a common enterprise, each may be held liable for the deceptive acts and practices of the others." *F.T.C. v. Grant Connect, LLC*, 763 F.3d 1094, 1105 (9th Cir. 2014). A common enterprise may be demonstrated by "strongly interdependent economic interests or the pooling of assets and revenues." *F.T.C. v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1143 (9th Cir. 2010). Here, the undisputed facts indicate that the Cardiffs and the Entity Defendants are all involved in the sale of the Products and that money, products, and employees flowed freely between them. The FTC has amply shown that the Cardiffs are beneficiaries and masterminds of a common enterprise to sell the Products through the Entity Defendants, which constitute various iterations and shells of one another.[11]

Furthermore, individuals are liable for corporate violations of the FTC Act if they (1) "participated directly in the deceptive acts or had the authority to control them and (2) [ ] had knowledge of the misrepresentations, [were] recklessly indifferent to the truth or falsity of the misrepresentation, or [were] aware of a high probability of fraud along with an intentional avoidance of the truth." *F.T.C. v. John Beck Amazing Profits, LLC*, 865 F. Supp. 2d 1052, 1082 (C.D. Cal. 2012) (quoting *F.T.C. v. Stefanchik*, 559 F.3d 924, 931 (9th Cir. 2009)). The Cardiffs

---

[11] Although the uncontroverted facts tend to support a finding that the Entity Defendants and the Cardiffs were also alter egos, the Court need not specifically address that argument because it has found common enterprise liability and individual liability.

**CIVIL MINUTES—GENERAL**                    Initials of Deputy Clerk <u>KT</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | ED CV 18-2104-DMG (PLAx) | Date | October 9, 2020 |
|---|---|---|---|

| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 21 of 28 |
|---|---|---|---|

do not seriously dispute that they controlled the Entity Defendants and it is uncontroverted that they had knowledge of the misrepresentations in advertising or were recklessly indifferent to the falsity of the misrepresentations.

\* \* \*

For the foregoing reasons, Defendants' MSJ is **DENIED**, to the extent it argues against the Cardiffs' liability.

**B.      The FTC's Motion for Summary Judgment**

  **1.  FTC Act claims (Counts 1-12)**

The FTC brings 12 claims against Defendants for violations of Section 5(a) and Section 12 of the FTC Act.  Section 5(a) prohibits deceptive and unfair acts or practices in or affecting commerce.  15 U.S.C. § 45(a).  Section 12 prohibits false advertisements for food, drugs, devices, services, or cosmetics in or affecting commerce.  15 U.S.C. § 52.  The Cardiffs do not dispute that TBX-FREE, Eupepsia Thin, and Prolongz are drugs within the definition of Section 12.  *Cf. F.T.C. v. SlimAmerica, Inc.*, 77 F. Supp. 2d 1263, 1266 & 1272 (S.D. Fla. 1999) (holding that diet pills are a "food" and/or "drug" for purposes of Section 12).

For both Section 5(a) and Section 12 violations, the FTC "will find an act or practice deceptive if, first, there is a representation, omission, or practice that, second, is likely to mislead consumers acting reasonably under the circumstances, and third, the representation, omission, or practice is material." *F.T.C. v. Pantron I Corp.*, 33 F.3d 1088, 1095 (9th Cir. 1994) (citation omitted); *see also F.T.C. v. Gill*, 265 F.3d 944, 950 (9th Cir. 2001).  The FTC may assert a "falsity" theory, in which it must prove that the express or implied message conveyed by the advertising is false, or the "reasonable basis theory," in which it must prove that the advertiser lacked a reasonable basis to assert the message was true.  *Pantron I Corp.*, 33 F.3d at 1096.  To determine whether an advertiser has satisfied the reasonable basis requirement, the Court must determine first "what level of substantiation the advertiser is required to have for his advertising claims[,]" then "whether the advertiser possessed that level of substantiation." *Id.*  Defendants must establish what substantiation they relied on, and the FTC must show that the substantiation is inadequate. *John Beck Amazing Profits, LLC*, 865 F. Supp. 2d at 1067.

A misleading impression is material if it "involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." *F.T.C. v.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 18-2104-DMG (PLAx)** | Date | October 9, 2020 |
|---|---|---|---|

| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 22 of 28 |

*Cyberspace.com, LLC*, 453 F.3d 1196, 1201 (9th Cir. 2006) (citation and quotation marks omitted).  If the Court finds that "no reasonable factfinder could conclude that the [advertisement] was not likely to mislead consumers acting reasonably under the circumstances in a way that is material," the Court may grant summary judgment on the FTC Act violations.  *Id.*

An act is unfair under Section 5(n) if it causes substantial injury not outweighed by countervailing benefits to consumers or competition, and that consumers themselves could not reasonably have avoided.  15 U.S.C. § 45(n); *see also F.T.C. v. Neovi, Inc.*, 604 F.3d 1150, 1155 (9th Cir. 2010).

### a.   False or unsubstantiated efficacy and false proof claims (Counts 1-6)

The FTC's first six counts against Defendants are based on false or unsubstantiated efficacy and false proof for each of the three Products.  The Cardiffs themselves refer to the Products' advertising prior to February 2018 as "potentially misleading," and they offer no expert opinions to rebut Plaintiff's expert opinions that the Products' advertising is unsubstantiated.  Defs.' Opp. at 12.  Instead, the Cardiffs argue that they reasonably believed that the Products were effective based on scientific literature regarding their "active" ingredients.  *Id.* at 15.  They have no expert qualifications to justify their "reasonable" belief, however, and the studies they cite regarding cytisine's effect on smoking cessation and guarana's effect on appetite suppression do not support the claims Defendants made about TBX-FREE's and Eupepsia Thin's efficacy.  As for Prolongz, Defendants did conduct a pilot study of its effect on 29 participants.  But according to the FTC's expert, that study was unreliable, and it did not "prove[] to effectively increase the length in Sex for over 97% of *Thousands* of Men who have tried Prolongz."  SUF 644-45 (emphasis added). Accordingly, the FTC's experts have shown that the Cardiffs' alleged substantiation is inadequate both as to the efficacy of the Products as well as to the truthfulness of claims that any of the Products have been "clinically proven" to affect consumers' health.  It is immaterial whether the Cardiffs believed they were acting in good faith by relying on the studies they had read, when they have acted with "reckless indifference" to the falsity of their statements by concocting numbers and ignoring advertisers' and networks' requests for greater substantiation. *Network Servs. Depot*, 617 F.3d at 1140.

What is material is the proven effectiveness of products that promise quick results on three important consumer health concerns:   smoking cessation, weight loss, and male sexual performance.  Defendants ran ads untruthfully claiming that: TBX-FREE has an 88% success rate, is endorsed by the New England Journal of Medicine, and is more effective than nicotine patches or gum; Eupepsia Thin is guaranteed to result in weight loss fast without a change in diet; and

---

**CIVIL MINUTES—GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | ED CV 18-2104-DMG (PLAx) | Date | October 9, 2020 |
|---|---|---|---|

| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 23 of 28 |
|---|---|---|---|

Prolongz is clinically proven to work for thousands of men.  These guarantees of success, testimonials, clinical studies, and endorsements by prominent academic institutions are certainly material to a consumer purchasing the Products.

Accordingly, the Court **GRANTS** summary judgment on Counts 1 through 6 for violations of Sections 5(a) and 12 of the FTC Act.

**b.  False "Made in the United States" advertising (Count 7)**

The FTC has authority under Section 5 to regulate claims of U.S. origin in advertising.  *See "Made in USA" and Other U.S. Origin Claims*, 62 Fed. Reg. 63756, 1997 WL 737641 (Dec. 2, 1997).  The FTC recognizes two types of U.S. origin statements:  unqualified and qualified.  *Id.* An unqualified statement claims only that the product is of U.S. origin, while a qualified statement goes on to explain the source of the ingredients.  *Id.*  The FTC distinguishes between statement types because consumers expect that products labeled with unqualified statements of U.S. origin contain a high amount of U.S. content.  *Id.* at *63763.  Accordingly, the FTC permits unqualified statements of U.S. origin only when "all or virtually all" of the ingredients are domestic; that is, the product must contain no more than a *de minimis* amount of foreign content and have "been last substantially transformed in the United States."  *Id.* at *63756.

It is undisputed that Eupepsia Thin strips are made in India and China.  Defendants' employees attest that the product packaging was also made in China.  Walker Decl. at ¶ 48 [Doc. # 424-1]; Wu Decl. at ¶¶ 8, 12-13 [Doc. # 428-5].  Jason admits that "the products were received from China and India in bags containing 500 strips per bag.  The products were removed, ETC." Jason Decl. at ¶ 83 [Doc. # 491-3].  The Cardiffs cite no evidence about what transformation the strips underwent once they arrived in the United States.  Their Opposition provides inadmissible argument regarding the cost of "organizing the strips, inserting them into plastic cartridges with labeling, [and] sealing them in plastic bags with labeling."  Defs.' Opp. at 23.  Even if the Court could take those assertions into consideration, the Court finds as a matter of law that "all or virtually all" of the Eupepsia Thin strips were not made of domestic ingredients or substantially transformed in the United States, thus rendering an unqualified "Made in USA" statement false.

The Court **GRANTS** summary judgment on Count 7 for violation of Section 5(a) of the FTC Act for a false unqualified U.S. origin claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 18-2104-DMG (PLAx)** | | Date | October 9, 2020 |
|---|---|---|---|---|
| Title | *Federal Trade Commission v Jason Cardiff, et al.* | | Page | 24 of 28 |

### c.  False money-back guarantee (Count 8)

The Cardiffs do not dispute that Defendants advertised money-back guarantees, including lifetime money-back guarantees, but that any consumer that received a refund for a Product needed to satisfy certain steps and restrictions first.  This constitutes a material deceptive act or practice that is likely to mislead.  *See FTC v. Think Achievement Corp.*, 144 F. Supp. 2d 993, 1005-06, 1012 (N.D. Ind. 2000) (granting summary judgment where defendants falsely represented that program came with money-back guarantee without disclosing material conditions before purchase), *aff'd*, 312 F.3d 259 (7th Cir. 2002).

The Court **GRANTS** summary judgment on Count 8 for violation of Sections 5(a) and 12 of the FTC Act.

### d.  Deceptive testimonials (Count 9)

Based on the uncontroverted fact that Jason knew that the Eupepsia Thin testimonialists had already lost weight without taking Eupepsia Thin, the Cardiffs acted with reckless indifference to the falsity of the testimonials, which were material to consumers.  *See, e.g.*, *FTC v. Grant Connect, LLC*, 827 F. Supp. 2d 1199, 1228 (D. Nev. 2011) (granting summary judgment on FTC's deception count where defendants presented no evidence showing that certain testimonials were genuine), *aff'd in part and vacated in part on other grounds*, 763 F.3d 1094 (9th Cir. 2014). Jason's summary denial of knowledge in his declaration is insufficient to create a dispute of material fact where there is documentary evidence that he knew and approved of the contractor hiring testimonialists who had already lost weight without using Eupepsia Thin, and that the testimonials were filmed before Redwood even began selling the product.   *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), *as amended* (Apr. 11, 1997).

The Court **GRANTS** summary judgment on Count 9 for violation of Sections 5(a) and 12 of the FTC Act.

### e.  Failure to adequately disclose and misrepresentation of automatic enrollment in autoship plans (Counts 10 and 11)

The FTC has submitted testimony of former Redwood employees indicating that Jason instructed them not to disclose the autoship program to consumers and, when they did, they falsely reassured customers they would not be enrolled in an autoship program.  When an FTC investigator bought TBX-FREE undercover, he was not informed of the autoship program.  Online customers

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 18-2104-DMG (PLAx)** | Date | October 9, 2020 |
| --- | --- | --- | --- |

| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 25 of 28 |
| --- | --- | --- | --- |

were also enrolled by default into an autoship program despite no notice of enrollment at the checkout page, with autoship terms buried in the terms and conditions section of a website. The Cardiffs have submitted no evidence, other than general denials, showing that they made the required disclosures or corrected any misrepresentations, and they have failed to create a genuine dispute of material fact.

Failing to inform consumers that they will be enrolled in an autoship program that includes monthly charges is a material omission that is likely to mislead reasonable consumers. Misrepresentations about the autoship program are also material and likely to mislead reasonable consumers. *See F.T.C. v. Grant Connect, LLC*, 827 F. Supp. 2d 1199, 1224 (D. Nev. 2011), *aff'd in relevant part* 763 F.3d 1094 (9th Cir. 2014) (finding a monthly membership fee not adequately disclosed in violation of the FTC Act where it was buried in the terms and conditions in fine print).

The Court **GRANTS** summary judgment on Counts 10 and 11 for violations of Sections 5(a) and 12 of the FTC Act.

### f.   Unfairly charging customers regarding autoship plan (Count 12)

Although Jason generally attests that customers always had an autoship option when purchasing the Products, the testimony and documentary facts show that Jason knew and approved of a program by which Redwood employees directly charged customers' saved debit and credit cards without their consent.  By not citing to supporting evidence, the Cardiffs have failed to create a genuine dispute of material fact on this issue.

Clearly, charging consumers without their consent (1) injures them, (2) without any increase in services or benefits, and (3) is not at all avoidable, given the lack of disclosure that consumers would be charged for an autoship program.  *See Neovi*, 604 F.3d at 1157; *see also F.T.C. v. Commerce Planet, Inc.*, 878 F. Supp. 2d 1048, 1079 (C.D. Cal. 2012), *aff'd in relevant part*, 642 F. App'x 680 (9th Cir. 2016) (granting summary judgment against defendant that signed consumers up for a continuity program without their consent).

The Court **GRANTS** summary judgment on Count 12 for unfair practices under Section 5(n) of the FTC Act.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 18-2104-DMG (PLAx)** | Date | October 9, 2020 |
|---|---|---|---|

| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 26 of 28 |

### 2. Restore Online Shoppers' Confidence Act claim (Count 13)

In 2010, Congress passed the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. §§ 8401-05, to promote consumer confidence in online commerce. Section 4 of ROSCA generally prohibits charging consumers for goods or services sold in transactions effected on the Internet through a negative option feature, which is defined as "an offer or agreement to sell or provide any goods or services, a provision under which the customer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer." 16 C.F.R. § 310.2(w); *see* 15 U.S.C. § 8403. A seller may only use a negative option feature if the seller: (a) clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information; (b) obtains the consumer's express informed consent before making the charge; and (c) provides a simple mechanism to stop recurring charges. 15 U.S.C. § 8403.

For the reasons stated above, there is no genuine dispute of material fact that Defendants employed a negative option feature in which consumers were enrolled in a monthly autoship program that shipped products to them without consent and unless consumers took the affirmative step to cancel the autoship program (and sometimes, even then, were not able to effectuate a cancellation).

The Court **GRANTS** summary judgment on Count 13 for violation of ROSCA.

### 3. Electronic Fund Transfer Act claim (Count 14)

The Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §§ 1693-1693r, and its implementing Regulation E, 12 C.F.R. Part 1005, regulate the rights, liabilities, and responsibilities of participants in electronic fund transfer systems. Violations of EFTA and Regulation E as set forth in Paragraphs 116 and 117 also constitute violations of the FTC Act. 15 U.S.C. § 1693o(c).

The record shows that Defendants (1) debited consumers' bank accounts on a recurring basis without obtaining a written authorization signed or similarly authenticated from consumers for preauthorized electronic fund transfers from their accounts, and (2) debited bank accounts on a recurring basis without providing to the consumer a copy of a written authorization signed or similarly authenticated by the consumer for preauthorized electronic fund transfers from the consumer's account, thereby violating Section 907(a) of EFTA, 15 U.S.C. § 1693e(a), and Section 1005.10(b) of Regulation E, 12 C.F.R. § 1005.10(b). The Cardiffs have not provided evidence raising a genuine dispute of material fact regarding their failure obtain required written

**CIVIL MINUTES—GENERAL**

Initials of Deputy Clerk <u>KT</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 18-2104-DMG (PLAx)** | Date | October 9, 2020 |
|---|---|---|---|

| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 27 of 28 |
|---|---|---|---|

authorizations for certain bank transfers from consumers. *See Grant Connect*, 827 F. Supp. 2d at 1231-32.

The Court **GRANTS** summary judgment on Count 14 for violation of EFTA.

### 4. Telemarketing Sales Rule claim (Count 15)

Section 310.4(b)(1)(v) of the FTC's Telemarketing Sales Rule ("TSR") prohibits initiating an outbound telephone call that delivers a prerecorded message to induce the purchase of any good or service. 16 C.F.R. § 310.4(b)(1)(v). The Cardiffs admit that Defendants used two companies to send prerecorded ringless voicemails to 1.5 million consumers advertising the Products and have provided no evidence that Defendants obtained from recipients of the calls an express agreement in writing authorizing the placement of such calls. *See id.* § 310.4(b)(1)(v)(A).

The Court **GRANTS** summary judgment on Count 15 for violation of the TSR.

### 5. Misrepresentation regarding earnings claim (Count 16)

The Cardiffs admit that they did not have earnings data to substantiate claims of sure earnings from becoming a member of Rengalife. The FTC's expert concluded that nearly all Rengalife members would be forced to be in a negative financial position due to purchasing more films trips than they could sell. Although the Cardiffs aver that they abandoned Rengalife quickly when they realized it would not be profitable, they have not shown a genuine dispute of material fact that they in fact made misrepresentations regarding earnings claims. The Court finds that Defendants' Rengalife emails, website, and Facebook posts and livestreams made material misrepresentations in a manner likely to mislead reasonable consumers. *See F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009).

The Court **GRANTS** summary judgment on Count 16 for violation of Section 5(a) of the FTC Act.

**V.**
**CONCLUSION**

In light of the foregoing, the Court **GRANTS in part** the FTC's MSJ as to the Cardiffs' liability and **DENIES in part** the Cardiffs' MSJ relating to the Cardiffs' liability.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 18-2104-DMG (PLAx)** | Date | October 9, 2020 |
|---|---|---|---|

| Title | ***Federal Trade Commission v Jason Cardiff, et al.*** | Page | 28 of 28 |
|---|---|---|---|

The Court defers ruling and judgment on the proper remedy pending the Supreme Court's decision in the Consolidated Appeals. The parties shall file a joint status report within 15 days of the Supreme Court's ruling, proposing a new briefing schedule as to the remedies phase, if appropriate.

Unless and until the Court orders otherwise, the Preliminary Injunctions [Doc. ## 59, 389] remain in effect.

**IT IS SO ORDERED.**