UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | ED CV 18-2104-DMG (PLAx) | Date | July 20, 2021 |
|---|---|---|---|

| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 1 of 8 |
|---|---|---|---|

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

Attorneys Present for Appellant(s)         Attorneys Present for Appellee(s)
None Present                                                    None Present

**Proceedings: IN CHAMBERS—ORDER RE JACQUES POUJADE AND TRUE PHARMASTRIP, INC.'S MOTION FOR RELEASE OF DEPOSITED FUNDS [576] AND THE CARDIFFS' MOTION TO ELIMINATE RECEIVERSHIP CLAIMS PROCESS [635]**

**I.
INTRODUCTION**

On May 4, 2021, third parties Jacques Poujade and True Pharmastrip, Inc. ("TPI") filed a Motion for Release of approximately $1.2 million USD ($1.56 million CAD), plus interest, held by the Receiver ("Deposited Funds"). [Doc. # 576 ("Mot.").] The Deposited Funds were transferred to the Receiver in fall 2019 to purge Poujade's civil contempt of Court. *See* 7/31/19 Hr'g Tr. at 390:14–22 [Doc. # 188]; Poujade Contempt Order at 5[1] [Doc. # 237]; Purge Contempt Order at 3 [Doc. # 238]; 8/27/19 Hr'g Tr. at 4:6–25 [Doc. # 249]. The Court found that Poujade had violated the Asset Freeze provision of the October 2018 Temporary Restraining Order ("TRO") because, despite actual knowledge of the TRO, he assisted Defendants Jason and Eunjung Cardiff in their attempt to transfer the Deposited Funds out of a bank account in TPI's name. *Id.* Now, Poujade and TPI argue that the Deposited Funds rightfully belong to TPI and should be immediately released to TPI. Mot. at 2–5.

On May 26, 2021, the Court took the motion under submission pending its ruling on the availability of monetary remedies after the Supreme Court's decision in *AMG Capital Management v. F.T.C.*, 141 S. Ct. 1341 (2021). [Doc. # 600.] TPI filed a supplemental brief arguing that *AMG* foreclosed any monetary remedies for Plaintiff the Federal Trade Commission ("FTC") in this case, therefore nullifying the basis of the Asset Freeze in the 2018 TRO and November 2018 Preliminary Injunction ("PI"). [Doc. # 604 ("Supp. Br.").] But in its Order on final remedies, the Court ruled that the FTC may still seek monetary relief post-*AMG* under a different section of the FTC Act, and that it adequately pleaded and was granted summary judgment on its claims seeking those damages. June 29, 2021 Ord. at 4–6 [Doc. # 627]. The Court thereby affirmed the continuing validity of 2018 TRO and PI's Asset Freeze and Receivership.

---

[1] All page references herein are to page numbers inserted by the CM/ECF system.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | ED CV 18-2104-DMG (PLAx) | Date | July 20, 2021 |
| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 2 of 8 |

In that Order, the Court also noted that neither the FTC nor the Cardiffs had yet substantively responded to the remaining argument in Poujade and TPI's motion: whether the Deposited Funds were ever in fact controlled or owned by the Cardiffs and thus constituted Receivership Property. *Id.* at 13. Accordingly, the Court ordered supplemental briefing. On July 7, 2021, the FTC and the Cardiffs filed supplemental responses. [Doc. ## 630 ("Cardiff Opp."), 632 ("FTC Opp.").] Poujade and TPI filed a reply. [Doc. # 634 ("Reply").]

On July 19, 2021, the Cardiffs filed a related motion to eliminate the Receivership claims process and requested an expedited briefing schedule. [Doc. # 635.]

For the reasons stated below, the Court **DENIES** Poujade and TPI's motion. The Court also sets a briefing schedule as to the Cardiffs' motion.

## II.
## DISCUSSION

The only remaining issue in Poujade and TPI's motion is their argument that TPI is not controlled or owned by the Cardiffs, and therefore the Deposited Funds are not "Receivership Property" under the TRO and PI. *See* Mot. at 8-9; Reply at 2-9. The key disagreement is whether the Court has already made factual determinations about the extent of the Cardiffs' control over the Deposited Funds, or whether the Court must make that factual ruling at this time. No party presented any additional evidence of the Deposited Funds' ownership, relying instead on the record before the Court in the summer 2019 contempt proceedings against Poujade and the Cardiffs.

**A.**     **The Court's Factual Findings in the Poujade Contempt Proceedings**

During those contempt proceedings, Hon. S. James Otero, United States District Judge, then the presiding judge in this case, ruled that the Deposited Funds must be frozen under the October 2018 TRO's "Asset Freeze" provision.

The TRO's asset freeze forbids anyone from working in concert with the Cardiffs and disposing of any "Assets"—defined as "any legal or equitable interest in, right to, or claim to, any property," that are, *inter alia*, "[o]wned or controlled, directly or indirectly, by any Defendant, including, but not limited to, those for which a Defendant is a signatory on the account." TRO at 12. TPI and Poujade at no point dispute that both Cardiffs were signatories on the TD Canada bank account in TPI's name (the "TPI Account") that held the Deposited Funds. *See* July 2019 Poujade Decl. at ¶ 19 [Doc. #148-13] (describing Jason opening the TPI Account and being the sole signatory as of August 2018); July 2019 Jason Decl. at ¶¶ 14-16 [Doc. # 147-1] (describing himself as an initial director of TPI (then called Clover Cannastrip), opening the TPI Account in August 2018, adding Eunjung as a signatory on the account in September 2018, and directing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | ED CV 18-2104-DMG (PLAx) | Date | July 20, 2021 |
|---|---|---|---|
| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 3 of 8 |

payments for TPI expenses from the TPI Account in September and early October 2018); July 2019 Eunjung Decl. at ¶¶ 6, 10 (describing herself as an initial director of Clover Cannastrip/TPI and a signatory on the TPI Account) [Doc. # 147-2]; *see also* Reply at 8 [Doc. # 634] (referring to Jason's "temporary signatory authority" over the TPI Account).

In opposition, Poujade and the Cardiffs asserted that the Cardiffs had relinquished control of the Clover Cannastrip/TPI business by the time the TRO was entered on October 10, 2018, and the Cardiffs were served with it on October 12, 2018. They testified that Jason tendered his shares of TPI back to it in late August 2018, and that both Cardiffs resigned from their TPI directorships on October 8, 2018, and gave up their access to and ability to transfer funds from the TPI Account on October 9, 2018. 7/29/19 Hr'g Tr. at 107:10–18, 109:10–110:8 [Doc. # 190];

Yet, the evidentiary record indicates the Cardiffs' continuing control over aspects of Clover Cannastrip/TPI. The Cardiffs' resignations from their directorships were not filed with the British Columbia corporate registry for Clover Cannastrip/TPI until November 2018 by attorney Erwin Sui, who represented that business and other entities associated with the Cardiffs. *Id.* at 131:3-9. And the trail of the $1.2 million Deposited Funds led back to the Cardiffs. Poujade testified that the Cardiffs used the TPI Account for personal transactions. *Id.* at 138:22–139:23. On October 16, 2018, Poujade—attesting that he had no notice of the TRO despite numerous conversations with Jason and being in the same room with him—wired the Deposited Funds from the TPI Account to the trust account managed by attorney Sui. *Id.* at 132:23–133:19; Poujade Decl. at ¶¶ 31-33. After the TRO was served, Jason attempted, but failed, to transfer $40,000 from a personal account into the same trust account. 7/29/19 Hr'g Tr. at 44:12–45:19. On October 18, 2018, Poujade wired $360,000 CAD from the trust account to the account of a separate entity, Pharmastrip Corp., run by Poujade's brother. *Id.* at 169:5–22. Then, from November 2018 to May 2019, money was wired from the Pharmastrip Corp. account to the Alphatech account from which Jason Cardiff admitted to paying his personal expenses, and from which both Cardiffs acquired blank checks. *See* 7/29/19 Hr'g Tr. at 80:13–81:23, 84:8–91:14; 7/30/19 Hr'g Tr. at 217:25–218:2 [Doc. # 187]; 7/31/19 Hr'g Tr. at 315:5–9 [Doc. # 188]. Beyond the facts summarized above, the voluminous documentary record and three days of evidentiary hearings in late July 2019 unveiled many more details of the Cardiffs' and Poujade's financial dealings and the Cardiffs' involvement with Clover Cannastrip/TPI.

Based on the foregoing, the Court found it "totally unbelievable" that the Cardiffs had given up control of the TPI Account and that Poujade was not aware of the TRO when he transferred the Deposited Funds. Accordingly, the Court concluded that all three "lied and perpetuated a fraud on the Court" and that Poujade had assisted the Cardiffs in transferring the Deposited Funds in violation of the TRO's Asset Freeze. 7/31/19 Hr'g Tr. at 390:3–22. The Court held the Cardiffs and Poujade in contempt for violating the TRO. Purge Contempt Order at 2 [Doc. # 238].

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | ED CV 18-2104-DMG (PLAx) | Date | July 20, 2021 |
|---|---|---|---|
| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 4 of 8 |

To resolve in part Poujade's contempt, TPI voluntarily authorized the freeze and deposit of $1.2 million USD ($1.56 million CAD) into a trust account held by TPI and Poujade's attorney, James Spertus. 8/27/19 Hr'g Tr. at 4:12–16 [Doc. # 249]. The Court ordered that those funds held by Spertus be turned over to the Receiver and, if TPI and Poujade have "concerns regarding the final disposition of those funds at a later date in time," would have their "day in court to make certain claims and provide evidence to the Court that suggests that [they were] duped by the Cardiffs and the monies deposited are rightfully [theirs]. There may be other claimants also here." *Id.* at 14:22–15:3. The Deposited Funds were subsequently transferred to the Receiver "for the purpose of maintaining those funds pending further order of the Court." Purge Contempt Order at 3 [Doc. # 238].

**B.     The Status of the Deposited Funds**

Since then, Poujade and TPI were denied leave to intervene in this matter [Doc. # 252], and the Receiver has held the Deposited Funds in a separate account and has not paid any Receivership fees from them.

Poujade and TPI argue that the Court never made the specific factual finding that the funds are owned and controlled by the Cardiffs, and those funds therefore do not constitute "Receivership Property." In opposition, the FTC asserts that the Court already found the Deposited Funds to be Receivership Property when it rejected the Cardiffs' and Poujade's testimony and ordered the Deposited Funds to be turned over to the Receiver. FTC Opp. at 3. Separately, the Cardiffs argue that if the Court finds the Deposited Funds are Receivership Property, the Receiver's fees spent on any Poujade/TPI litigation should be paid from the Deposited Funds, and there should be no post-judgment claims process overseen by the Receiver, since the FTC has not obtained a monetary award. Cardiff Opp. at 2–7.

Examining the Court's prior findings after an extensive evidentiary hearing, the evidence before the Court, and the limited case law on equity receiverships, the Court reiterates its finding that the Deposited Funds are Receivership Property. First, the Court looks to the definition of "Receivership Property" in the TRO as any assets, wherever located, that are:

> (1) owned, controlled, or held by or for the benefit of the Receivership Entities, Jason Cardiff, or Eunjung Cardiff, in whole or in part; (2) in the actual or constructive possession of the Receivership Entities, Jason Cardiff, or Eunjung Cardiff; or (3) owned, controlled, or held by, or in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, trust, or other entity directly or indirectly owned or controlled by the Receivership Entities, Jason Cardiff, or Eunjung Cardiff, including the Jurikel Family Trust, and Carols Place Trust.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **ED CV 18-2104-DMG (PLAx)** | Date | July 20, 2021 |
| Title | ***Federal Trade Commission v Jason Cardiff, et al.*** | Page | 5 of 8 |

TRO at 6. The definition of Receivership Property is not worded in precisely the same way as the definition of assets subject to the Asset Freeze, which includes funds "directly or indirectly" controlled, including "those for which a Defendant is a signatory on the account." TRO at 12. To the extent an argument could be made that assets falling within the definition of assets subject to the Asset Freeze are not necessarily Receivership Property, the Court notes that, in the contempt proceedings, Judge Otero made his findings of contempt in reliance on additional evidence of the Cardiffs' control. The evidence clearly showed that the Cardiffs utilized the TPI Account for personal expenses and that Jason maintained sufficient control of the funds such that he, in concert with Poujade, could transfer the funds to a separate trust account, in violation of the Asset Freeze. That control indicates that the funds fall under the definition of Receivership Property. Moreover, the Court ordered the funds maintained by the Receiver, albeit segregated from other funds—it follows that they constitute Receivership Property. Thus, the Court has already made the requisite factual finding to deny Poujade and TPI's request for immediate release of the funds. It is perverse for Poujade and TPI to suggest, on this record, that the FTC failed to present evidence that the Deposited Funds are Receivership Property.

Contrary to Poujade and TPI's argument, the Cardiffs need not be found to control TPI in order for the funds to be Receivership Property, so long as the Cardiffs were found to control the specific Deposited Funds. Nor does it matter what was the source of the Deposited Funds if they were within the Cardiffs' dominion and control. At the August 27, 2019 contempt hearing, the Court tentatively concluded that the FTC had not established that the Cardiffs owned or controlled TPI outright. The FTC had sought to freeze and remit to the Receiver two separate quantities of Canadian money. The first was the $1.2 million USD/$1.56 million CAD Deposited Funds that had been held first in the TPI Account, before Jason and Poujade transferred the money to the trust account managed by attorney Sui. The second was $2.2 million CAD in money raised by TPI that was wired directly from investors to the Sui trust account. *See* 8/7/19 Hr'g Tr. at 6:9–7:13; *see also* FTC Mot. for Contempt at 16 [Doc. # 134-2]. Although the $2.2 million CAD ended up in the same trust account, it never went through the TPI Account on which the Cardiffs were signatories. The Court tentatively concluded that the FTC had not established by clear and convincing evidence that the Cardiffs owned or controlled the $2.2 million CAD, "either directly or indirectly," although the Court was open to receiving more evidence on the matter. 8/27/19 Hr'g Tr. at 7:1–13 [Doc. # 249]. The Court confirmed its tentative factual finding by not later ordering Poujade to turn over the $2.2 million CAD to purge his contempt. *See* Purge Contempt Order at 3 [Doc. # 238] (finding that the transfer of $1.2 million USD to the Receiver resolved Poujade's contempt proceedings as to the money at issue). This previous factual finding does not negate the Court's explicit finding that the Cardiffs *did* sufficiently control the TPI Account and the $1.2 million USD transferred out of it after the TRO was served.

Moreover, the Court consistently informed Poujade and TPI that they would litigate the issue of ownership of the Deposited Funds at a post-judgment claims proceeding. At the August 2019 hearing, the Receiver stated that it would hold the funds separately until the Court made an

Case 5:18-cv-02104-DMG-PLA   Document 636   Filed 07/20/21   Page 6 of 8   Page ID
#:33859

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | ED CV 18-2104-DMG (PLAx) | Date | July 20, 2021 |
|---|---|---|---|
| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 6 of 8 |

additional ruling as to where the money should go. *Id.* at 10:14–18. The Court acknowledged that Poujade and TPI "have concerns regarding the final disposition of those funds at a later date in time," so they would later be able "to make certain claims and provide evidence to the Court that suggests that [they were] duped by the Cardiffs and the monies deposited are rightfully [theirs]." *Id.* at 14:22–15:3. Poujade and TPI's attorney then reiterated that his clients "want to argue and establish through facts that [the Deposited Funds are] not a receivership asset" and do not "fall within the scope of the TRO." The Court responded:

> Yes. And I don't think anyone is—I don't think there's any disagreement there. It seems that you should have—your client should have their day—its day in court regarding whether the funds, you know, rightfully belong to—or portions of the funds rightfully belong to your client.

*Id.* at 15:4–17. Although Poujade and TPI interpret the Court's comment as agreeing with them that the Deposited Funds are not Receivership Property, the context makes it clear that the Court was merely agreeing that they should have the chance to argue and establish additional facts. The Court then re-emphasized in its Order denying Poujade and TPI's motion to intervene that their "interests will be adequately protected in a post-judgment proceeding." January 10, 2020 Order at 8 [Doc. # 252].

Finally, maintaining an asset freeze and receivership over the Deposited Funds is not contrary to case law. The Ninth Circuit has held, in a similar equity receivership context, that "the inherent equitable power of a district court allows it to freeze the assets of a nonparty when that nonparty is dominated and controlled by a defendant against whom relief has been obtained." *S.E.C. v. Hickey*, 322 F.3d 1123, 1125 (9th Cir.), *opinion amended on denial of reh'g*, 335 F.3d 834 (9th Cir. 2003). In that case, a federal agency had obtained a monetary judgment against the defendant for violating federal securities laws, as well as a post-judgment contempt order against the defendant for failure to disgorge his unlawful gains. *Id.* at 1126. The district court ordered an asset freeze over the assets of a real estate brokerage nominally owned by the defendant's mother, but in fact wholly controlled by the defendant, to the extent the defendant used a rubber stamp of his mother's name to validate documents requiring a signature. *Id.* at 1126–27, 1133. In affirming the asset freeze, the Ninth Circuit emphasized, however, that "mere fact of control over assets whose title belongs to a third party does not justify freezing the third party's assets . . . . Instead, the critical control relationship is between the wrong-doing defendant and the third-party entity." *Id.* at 1133. Consistent with *Hickey*, the Court here did not order all of TPI's assets frozen and remitted to the Receiver's control. Indeed, TPI was specifically able to retain control over the $2.2 million CAD additionally sought by the FTC. But because the record demonstrates the Cardiffs' control over the Deposited Funds in the TPI Account, the Court concluded that the Cardiffs exhibited sufficient control over the money contained therein to justify the asset freeze. *See id.* (affirming the asset freeze due to the extent of the defendant's control). That amount of control also puts the Deposited Funds under the scope of Receivership Property.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 18-2104-DMG (PLAx)** | Date | July 20, 2021 |
|---|---|---|---|
| Title | ***Federal Trade Commission v Jason Cardiff, et al.*** | Page | 7 of 8 |

The Court therefore sees no reason to revisit its prior factual findings. Poujade and TPI provide no new evidence refuting the Court's findings as to the Cardiffs' actual control over the Deposited Funds, even though the Court offered them an opportunity to do just that. Thus, they have demonstrated no grounds to release the Deposited Funds prior to final judgment and an orderly claims process.

It is less clear, however, what form that claims process will take, and how it will be managed by the Receiver. Because the 2018 PI remains in place, the Court has already rejected the Cardiffs', Poujade's, and TPI's arguments that the Receivership must be immediately terminated due to vacatur of the 2018 TRO and PI. *See* May 4, 2021 Order at 3 [Doc. # 577] (noting that the PI remains in place pending a ruling on the final remedy); May 24, 2021 Order at 8 [Doc. # 598] (restating that the PI remains in effect); June 29, 2021 Order at 12-13 [Doc. # 627] (setting forth an orderly process for concluding the litigation and Receivership). But as the Cardiffs assert in their July 19, 2021 motion, without any monetary relief for consumers, there need not be any accounting on consumers' behalf before the Receiver releases the remaining Receivership Property. [Doc. # 635.] The Court therefore queries how a Receiver-managed post-judgment claims process will be structured to provide the most efficient and equitable manner in which to resolve third party claims. It is also as yet unresolved who will be responsible for paying the Receiver's fees incurred in administering any post-judgment claims process.[2]

Accordingly, the Court will order the Receiver to account for the Deposited Funds in its final accounting. In light of the Receiver's substantial effort to recover those funds in order to enforce the Court's TRO and PI, that includes retroactively applying the Deposited Funds toward paying Receivership fees associated with litigating the funds' ownership and Poujade's contempt. Because of the arguments raised by the Cardiffs' newly-filed motion, the Court will also order the FTC to meet and confer with the Receiver and file a status report to explain what process will be used to resolve the disbursement of Receivership Property (including details of how the post-judgment claims process will be structured, who would be eligible to submit claims, how notice of the claims process would be disseminated, and the proposed timing of that process). The FTC should include in its report the proposed timing of the filing of the final fee application and accounting, in order that the Court may set a schedule for resolving the default judgment motions, entering the final judgment, and concluding this litigation.

### III.
### CONCLUSION

In light of the foregoing, the Court **DENIES** TPI and Poujade's motion for immediate release of the Deposited Funds and **ORDERS** the following:

---

[2] The Court ruled that the FTC is responsible for paying any *VPL-related* Receiver's fees accrued after April 22, 2021, but has not yet resolved who is responsible for paying other types of Receiver's fees going forward. May 24, 2021 Order at 7 [Doc. # 598].

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | ED CV 18-2104-DMG (PLAx) | Date | July 20, 2021 |
|---|---|---|---|
| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 8 of 8 |

1. The Receiver shall account for the portion of its past fees associated with litigation over the Deposited Funds as paid from the Deposited Funds. As a matter of equity, the Receiver should not calculate reductions for any amount of fees already paid that are traceable to the Defendant entities or the Cardiffs' personal assets. The Receiver shall instead calculate reductions for the previously accounted-for fees paid from money belonging to VPL—money acquired later in this litigation and belonging in part to non-party Bobby Bedi.

2. The FTC shall meet and confer with the Receiver and file a report on or before **July 27, 2021**, explaining: (1) whether any remaining Receivership Property may be released without a formal post-judgment claims process administered by the Receiver and this Court; (2) the timeline and procedures for the claims process, disbursing Receivership Property, and closing this case, including when the Receiver would file its final fee application and accounting; (3) the proposed timing of the Receiver's recommendation for how to disburse remaining Receivership Property and close this case in the most equitable and economical manner; (4) the timing for the motions for default judgment and entry of final judgment; and (5) any other matters the FTC and/or the Receiver thinks are necessary to raise at this juncture. The report should also address the Cardiffs' arguments in their latest motion to the extent it bears on the claims process. [Doc. # 635.]

    a. The parties and any interested non-parties shall meet and confer and file a *joint* status report on or before **August 3, 2021**, with their responses to the FTC's report.

    b. The Court will not require further briefing on the Cardiffs' motion [Doc. # 635] as this Order and the process set forth herein renders it moot. The August 27, 2021 hearing on the Cardiffs' motion is **VACATED**.

3. The Court shall hold a video status conference at on **August 6, 2021 at 2:00 p.m.**

**IT IS SO ORDERED.**