SPERTUS, LANDES & UMHOFER, LLP
James W. Spertus (SBN 159825)
M. Anthony Brown (SBN 243848)
1990 South Bundy Drive, Suite 705
Los Angeles, California 90025
Telephone: (310) 826-4700
Facsimile: (310) 826-4711
jspertus@spertuslaw.com
tbrown@spertuslaw.com

Attorneys for Non-Party
True Pharmastrip, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Federal Trade Commission,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>Jason Cardiff, et al.,<br><br>　　　　Defendants. | Case No. ED 5:18-cv-02104-DMG-PLAx<br><br>**NON-PARTY TRUE PHARMASTRIP INC.'S RESPONSE TO RECEIVER'S AND INTER/MEDIA'S SUPPLEMENTAL ARGUMENTS (DKT. 669, 670)**<br><br>Date: TBD<br>Time: TBD<br>Place: Courtroom 8C<br>　　　Hon. Dolly M. Gee |

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ................................................................................................1

II. THE TPI MACHINES .........................................................................................1

III. INTERPLEADING THE DEPOSITED FUNDS IN A STATE COURT PROCEEDING WOULD BE UNLAWFUL ...............................4

IV. THE INER/MEDIA BRIEF .................................................................................6

V. CONCLUSION ....................................................................................................9

# TABLE OF AUTHORITIES

**CASES**                                                                                     **PAGE(S)**

*City of Morgan Hill v. Brown*,
  71 Cal. App. 4th 1114 (1999) ............................................................................. 5

*Hood v. Gonzales*,
  43 Cal. App. 5th 57 (2019) ............................................................................. 7, 8

*Netsphere, Inc. v. Baron*,
  703 F.3d at 313 ................................................................................................... 6

*Westamerica Bank v. City of Berkeley*,
  201 Cal. App. 4th 598 (2011) ......................................................................... 5, 8

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Non-party True Pharmastrip, Inc. ("TPI") replies to new arguments raised for the first time by the Receiver in his reply brief, and to Inter/Media's unauthorized filing. (Dkt. 669, 670). The Receiver's request for an order that TPI machines be held in trust for future claimants should be rejected, and there is no basis for interpleading TPI's assets in a state court proceeding.

## II. THE TPI MACHINES

The Receiver argues for the first time in its reply brief, "the receivership estate also includes various machines being used by TPI in its operations," and requests that the Court order the machines to be held "in trust for any claimant against TPI whose claim is not otherwise fully addressed by recourse to the Surplus Funds, subject to future proceedings in other courts by such claimants." (Dkt. 669, pp. 5-6). As a preliminary matter, there are no claims against TPI, other than the Receiver's prior report that he was contacted by some TPI investors who alleged that TPI was in breach of debenture agreements. Those are not claims, and they have yet to be adjudicated. There are no judgments against TPI that TPI knows about, nor any litigation. If it is true that some investors believe there are amounts due under contracts with TPI, then those investors would have recourse under those contracts. The investors identified by the Receiver are Canadian investors, and the agreements referenced by the Receiver have dispute resolution provisions that have not been triggered, and they have choice of law and venue clauses that would require the claims to be asserted in Canada under Canadian law against TPI, which is a Canadian company. For the Court to treat unsubstantiated comments from a Receiver who has not even read the underlying agreements he heard were allegedly breached as "claims" would be wrong. The Court need not get involved in disputes between TPI and its investors, and the Court cannot fairly order TPI to keep its machines

in trust for future claims against TPI that have not even been asserted. Interpleading the machines with the Deposited Funds in a Los Angeles Superior Court would foist foreign law issues on a California judge who has no knowledge or background information about these purported "claims" involving Canadian investors in a Canadian company. In fact, TPI would not be permitted to defend itself in a California court because it is not qualified to do business in California.

The Receiver's suggestion that the TPI machines are a receivership asset is wrong for several reasons. First, the only reason the machines were even relevant to this case is because TPI made deposits for machines from the bank account that the FTC subsequently alleged was "controlled" by Jason Cardiff by virtue of Jason Cardiff once having been a signor on the account. TPI made a $57,690.13 payment on its first machine on October 9, 2018, before the TRO issued, and another $57,690.13 deposit on a second machine on October 19, 2018. Final payments on both machines and an additional deposit on a third machine were all made before August 27, 2019, and then on August 27, 2019, using funds from another source, TPI deposited the Deposited Funds with the Receiver, which included any portion of the original $1,200,000 spent on machines. Because the Deposited Funds include all amounts paid for machines, and because Jason Cardiff never "controlled" the machines, there is no valid argument that the machines are a receivership asset. If these facts are disputed, then TPI requests an evidentiary hearing to sort them out.

Second, the Receiver miscites the record. At the August 27, 2019 hearing, the Court expressly found that TPI's property, other than the highest balance of the account that had Jason Cardiff as a signor, was *not* a receivership asset. Specifically, the Court ruled as follows: "Based on what I've heard so far, the tentative would be for the Court to conclude that that has not been established." (RT 8/27/2019, p. 7; Dkt. 634-1, p.8.) The Court recognized TPI's independent

board of directors (RT 08/27/2019, pp.19-20), and ordered the Receiver to return the machines it had seized to TPI, with a requirement that TPI keep the Receiver apprised of the location of the machines:

> THE COURT: So in reference to the machines, I think the suggestion by the Court and the position taken by Mr. Spertus to allow the machines to be used under the jurisdiction of the Court, the parties would have to consent to the jurisdiction of the Court having authority over those machines to be decided at a later date based on new information. The machines can be used.
>
> . . . .
>
> So the Court will allow the machines to be used as long as the receiver has knowledge of the location of the machines. And if there's any attempt to try to remove the machines or transfer the ownership of the machines, that would be brought to the attention of the Court.
>
> With the deposit of 1.56 million [Canadian] with the custody of the receiver, it would seem to me, to the Court, that that would resolve the contempt proceedings before the Court today.

(RT 08/27/2019, p. 31.) Allowing the Receiver to inspect machines and know their location does not make them a receivership asset. Moreover, neither the Receiver nor the FTC ever produced any "new information" as ordered by the Court to support a subsequent argument that the machines or any other TPI assets were receivership assets.

Third, the Receiver cites a stipulation of the parties with a follow-on order as a basis for now claiming the machines are a receivership asset, but TPI is not a party and never stipulated to any such order. The Receiver cites to the

3
TPI'S SUPPLEMENTAL RESPONSE

stipulation between the FTC, the Receiver, and Defendants Jason Cardiff and Eunjung Cardiff (Dkt. 238, pp. 3-4), which the Court signed, but TPI never had an opportunity to be heard in connection with that order and it should not now be used against TPI.  The cited order states on its face that "[t]he FTC, the Receiver, and Defendants Jason Cardiff and Eunjung Cardiff have agreed to the filing of this order.  Non-party Jacques Poujade has not stipulated." (Dkt. 238 p.2.)  The FTC never even presented the stipulation to TPI, which owns the machines through its subsidiary Pharmastrip Corp., and because it is inconsistent with the Court's express order at the August 27, 2019 hearing, it should not now be used to transform the Court's express ruling at the hearing into a new ruling that is not supported by facts.  The Court rejected the FTC's request that TPI assets over the Deposited Funds become part of the receivership estate.

Fourth, defining assets that Jason Cardiff once controlled as receivership property does not mean those assets can be used to pay Jason Cardiff's debts.  As the Court previously recognized, tf receivership assets are to be used for claims, then "the ownership . . . becomes even more salient." (Dkt. 640 (August 5, 2021 order), p.2.)   TPI through Pharmastrip Corp. owns its machines, and loss of those machines would shut down TPI's business.  The Receiver's afterthought about holding the machines in trust for potential future claimants should be rejected, and the prior obligation to report the location of the machines to the Receiver should end when the receivership ends.

### III. INTERPLEADING THE DEPOSITED FUNDS IN A STATE COURT PROCEEDING WOULD BE UNLAWFUL

The Court knows the Deposited Funds belong to TPI.[1]  The Court should therefore not entertain requests from the Receiver to interplead the Deposited

---

[1] "The Court has reviewed the evidentiary record with regard to the question of ownership of the Deposited Funds and makes the preliminary findings that TPI is a corporate entity with a duly constituted board of directors, the Deposited Funds

4

TPI'S SUPPLEMENTAL RESPONSE

Funds in a state court proceeding. The Receiver is openly advocating for Inter/Media, a Jason Cardiff creditor that obtained a judgment against Jason Cardiff in 2017, long before TPI was even formed. The Court should not countenance advocacy from a Receiver for the benefit of a Cardiff creditor that did the advertising for the Defendants in this case. Nor should the Court condone the Receiver's effort to rename the Deposited Funds and call them "Surplus Funds", which implies that they are Cardiff assets that can be used to pay claims against Cardiff. Interpleading the "Surplus Funds" would mean interpleading the "Deposited Funds", and there is no basis to interplead the Deposited Funds because there are no adjudicated claims against TPI. TPI likely could not even appear in the interpleader action because it is not qualified to do business in California. Further research is required to know for sure, but the Receiver cites no authority for interpleading the Deposited Funds to satisfy claims against Cardiff.

More importantly, the only unadjudicated claims against TPI that have been referenced by the Receiver are claims that Canadian debenture holders may have unasserted contract claims against TPI, but those issues have nothing to do with this case. The Receiver concedes that TPI investors' claims "do not seem to involve any acts or communications by the Receiver" and "would not be a claim against the receivership estate" (Dkt. 659 at 9), and with that key fact conceded, the Court cannot order the Deposited Funds interplead in a California court. "The right to the remedy of interpleader is founded on the consideration that a person is threatened not just with double liability, but with double vexation in respect to one liability." *Westamerica Bank v. City of Berkeley*, 201 Cal. App. 4th 598, 608 (2011). An interpleader action may not be maintained "upon the

---

were raised from third-party investors, and neither Jason Cardiff nor Eunjung Cardiff own the funds, though Jason previously did have access to and control over the funds." (Dkt. 640 at 3, n.1.)

mere pretext or suspicion of double vexation; [the Receiver would have to] allege facts showing a reasonable probability of double vexation." *Id.* (citing *City of Morgan Hill v. Brown,* 71 Cal. App. 4th 1114, 1125-1126 (1999)). The Receiver has cited no facts or law to justify interpleading the Deposited Funds in a state court action, and simply declares without description or evidence that "numerous other claimants do make competing and inconsistent claims [against the Deposited Funds]", which is simply not true. (Dkt. 669, p.7.)

## IV. THE INER/MEDIA BRIEF

Working in concert with the Receiver, Inter/Media filed its own supplemental brief arguing that the Court should reallocate TPI funds to pay historical Receiver fees, and disputing TPI's references to the Court's prior orders that the Deposited Funds would be returned to TPI if there are sufficient Cardiff assets to pay the Receiver's fees. The paragraph in dispute comes from the Court's August 5, 2021 order, which reads as follows:

> The Court currently envisions the following scenario if the FTC is unable to demonstrate that a monetary judgment and consumer claims process will be based upon evidence that has been timely disclosed during the discovery process. In recognition of the Cardiffs' wrongdoing and summary judgment entered against them on 16 counts under the FTC Act, ROSCA, and other statutes and rules, *any funds that are owned by the Cardiffs should be applied first to account for Receivership fees. This includes whatever remains of Jason Cardiff's Biztank Group, LLC bank account's funds.* Then with respect to third parties' frozen assets held as Receivership Property, as a matter of equity some of the Deposited Funds claimed by TPI should be allocated to Receivership fees related to litigation over the Deposited Funds, just as VPL's frozen funds were allocated to Receivership fees related to litigation over VPL. *See Netsphere*, 703 F.3d at 313. After resolution of the Receiver's fees, the remainder of the Deposited Funds will be released to TPI, and the remainder of VPL's frozen funds and any pro rata reimbursement for receivership fees will be returned to VPL. If the FTC disputes TPI's ownership of any portion of the Deposited Funds, it can request an evidentiary hearing before the Court. *Because third-party creditors may seek remedies directly against the Cardiffs, the Receiver need not account for the claims of Inter/Media, Auctus, Amy Cardiff, or any other third-party creditor as they will have other formal avenues of redress available to them.*

(Dkt. 640, pp. 3-4 (emphasis added).)

Inter/Media's supplemental brief attacks TPI's references to this paragraph, and argues that "[c]ontrary to TPI's contention, the most natural reading of the language block quoted above is that the Court directed the Receiver to first account for Receivership fees using money other than the Deposited Funds, and then modify the accounting to reallocate the portion of the fees incurred as a result of Mr. Poujade's contempt." (Dkt. 670, p.3:9-13.)

Inter/Media's argument cannot be reconciled with the Court's August 5, 2021, order. Specifically, the Court recognized that the Defendants' wrongful conduct caused this litigation and ruled that "*any funds that are owned by the Cardiffs should be applied first to account for Receivership fees. This includes whatever remains of Jason Cardiff's Biztank Group, LLC bank account's funds.*" (Dkt. 640, pp. 3-4.) TPI is not cherry-picking language and cites the Court's exact words. The Court impliedly recognized that TPI is a third party that has nothing to do with any of the conduct alleged in the Complaint. It has taken TPI years to unwind arguments made by the Receiver that the Deposited Funds belong to Jason Cardiff, and now on the eve of securing the return of its funds the Receiver changed course to advocate for Inter/Media. Inter/Media then jumped on the bandwagon so that it can try to collect its judgment aby arguing for a reallocation of the Deposited Funds to Receiver's fees so that the amount of Cardiff assets can be increased for Inter/Media's benefit. The result would not be fair or equitable. The Court expressly ruled that "the Receiver need not account for the claims of Inter/Media, Auctus, Amy Cardiff, or any other third-party creditor as they will have other formal avenues of redress available to them." (*Id.*) TPI respectfully requests that the Court not change that ruling now.

Inter/Media also argues that interpleader of the "Surplus Funds" is necessary and appropriate but cites authorities the prohibit interpleader under the circumstances of this case. Specifically, Inter/Media cited *Hood v. Gonzales*, 43

Cal. App. 5th 57, 80 (2019), which holds exactly the opposite of the proposition for which it was cited by Inter/Media. *Hood* involved an interpleader action filed by an attorney facing competing claims from other attorneys with liens against settlement proceeds he held in his trust account, and the court in *Hood* ruled that interpleader was appropriate in that case because the attorney holding the settlement proceeds faced liability to at least six separate claimants with liens against those proceeds. First, the court in *Hood* concluded that the client had waived his objection to the interpleader on appeal because he had agreed to the interpleading in the trial court proceedings below. *Hood*, 43 Cal. App.5th at 71 ("Gonzales on appeal is estopped to assert, and/or otherwise forfeited his objection, that the court erred in using the interpleader mechanism to resolve the competing claims of defendants to the settlement funds.") Second, the court address the appeal on the merits and ruled that the interpleader in that case was proper because "Hood faced potential exposure for intentional interference with prospective economic advantage if he paid directly to Gonzales any portion of the Cano settlement funds from his client trust account, or turned over to Gonzales the check already endorsed by Jacobs, in disregard of the rights and/or liens of the lienholders . . . ." *Id.* at 78.

Unlike the attorney in *Hood* facing competing claims from multiple lienholders, the Receiver faces no liability in this case from compliance with the Court's order to return the Deposited Funds to TPI. For that reason, this case is governed by *Westamerica Bank v. City of Berkeley*, 201 Cal. App. 4th 598, 608 (2011), which holds that an interpleader action may not be maintained "upon the mere pretext or suspicion of double vexation; [the Receiver would have to] allege facts showing a reasonable probability of double vexation." Because the Receiver cannot be held liable to potential claimants by following an order from the Court to disburse the Deposited Funds to TPI, interpleader is not allowed. Any potential TPI claimants would have to file their only litigation against TPI

wherever appropriate, just as anyone with an unadjudicated claim would have to do.

## V. CONCLUSION

For the foregoing reasons, TPI respectfully requests that the Court order the Receiver to distribute the full amount of the Deposited Funds ($1.2 million) back to TPI through undersigned counsel.  There are ample Cardiff assets available to pay any outstanding Receiver fees.

Respectfully submitted,

Dated:  October 12, 2021          SPERTUS, LANDES & UMHOFER, LLP

By:   /s/ James W. Spertus
      James W. Spertus
      M. Anthony Brown

      Attorneys for True Pharmastrip, Inc.