UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | ED CV 18-2104-DMG (PLAx) | Date | December 2, 2021 |
| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 1 of 10 |

Present: The Honorable **DOLLY M. GEE, UNITED STATES DISTRICT JUDGE**

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Appellant(s) | Attorneys Present for Appellee(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER RE WINDUP OF RECEIVERSHIP ESTATE**

The Court has considered the filings of the parties and interested third parties regarding the wind up of the receivership in this matter. These filings are:

- The Proposed Judgment filed by the Federal Trade Commission ("FTC") on September 3, 2021 [Doc. # 651];
- Defendants' response to the Proposed Judgment [Doc. # 655];
- The Receiver's Final Report and Summary Accounting ("Final Report") [Doc. # 659];
- The FTC's Response to the Receiver's Final Report ("FTC Response") [Doc. # 660];
- True Pharmastrip, Inc.'s ("TPI") Response to the Receiver's Final Report ("TPI Response") [Doc. # 661];
- Inter/Media's Response to the Receiver's Final Report ("Inter/Media Response") [Doc. # 666];
- The Cardiffs' and VPL's Response to the Receiver's Final Report ("Cardiffs'/VPL's Response") [Doc. # 667];
- The FTC's October 4, 2021 Reply re the Receiver's Final Report ("FTC's Reply") [Doc. # 668];
- The Receiver's October 4, 2021 Reply re the Receiver's Final Report ("Receiver's Reply") [Doc. # 669];
- Inter/Media's October 4, 2021 Supplemental Response re the Receiver's Final Report ("Inter/Media's Supplemental Response") [Doc. # 670];[1]
- VPL's October 7, 2021 Status Report regarding its tax return [Doc. # 672];
- TPI's October 12, 2021 Reply re the Receiver's and Inter/Media's Replies ("TPI's Reply") [Doc. # 674];

---

[1] The Court's August 26, 2021 Order requesting briefing on the Receiver's Final Report did not specifically authorize a Reply by Inter/Media. Because Inter/Media filed its Supplemental Response in accordance with the Court's briefing schedule, however, and in the interest of resolving the issues in this case, the Court will accept and consider the Supplemental Response.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | ED CV 18-2104-DMG (PLAx) | Date | December 2, 2021 |
|---|---|---|---|
| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 2 of 10 |

- Defendants' October 17, 2021 Status Report regarding the passing of Brick Kane [Doc. # 678]; and
- Defendants' October 29, 2021 Notice of Supplemental Authority [Doc. # 680].

The Court held a videoconference hearing on this matter on November 3, 2021. Having duly considered the parties' briefs and arguments, the Court issues the following Order.

**1.  Proposed Judgment**

The FTC submitted a Proposed Judgment and a Proposed Default Judgment in accordance with the Court's Order. Defendants have stated that, subject to prior objections made, they do not object to the form of the Proposed Judgments. The Court therefore intends to adopt the FTC's Proposed Judgments.

**2.  Interpleader**

On August 26, 2021, the Court determined that because there would be no monetary judgment in this matter, there would be no claims process in this Court. [Doc. # 650.] The Court sought the Receiver's recommendation for disbursal of the remaining assets in the Receivership estate, taking into account the Court's prior orders. At the September 17, 2021 status conference, and in its Final Report, the Receiver recommended an interpleader action in state court to determine the proper distribution of the funds remaining in the Receivership estate, including the TPI Deposited Funds (discussed below).

The FTC and Inter/Media generally support this proposal. [*See* Doc. ## 661, 666.] Defendants, VPL, and TPI oppose it. [*See* Doc. ## 661, 667.]

**A.  Propriety of Interpleader**

VPL and TPI object to the use of an interpleader action to resolve competing claims to the money remaining in the Receivership estate, arguing that it is improper as a procedural vehicle.

Under California law, "[a]ny . . . entity against whom double or multiple claims are made, or may be made, by two or more persons which are such that they may give rise to double or multiple liability, may bring an action against the claimants to compel them to interplead and litigate their several claims." Cal. Civ. Code § 386(b). Although the statutory language refers to a party "against whom double or multiple claims are made, or may be made," California courts have made clear that "the 'true test of suitability for interpleader is the stakeholder's disavowal of interest in the property sought to be interpleaded, coupled with the perceived ability of the court to resolve the entire controversy as to entitlement to that property without the need for the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **ED CV 18-2104-DMG (PLAx)** | Date | December 2, 2021 |
| Title | ***Federal Trade Commission v Jason Cardiff, et al.*** | Page | 3 of 10 |

stakeholder to be a party to the suit.'"  *Hood v. Gonzales*, 43 Cal. App. 5th 57, 80 (2019) (quoting *Pacific Loan Mgmt. Corp. v. Superior Court*, 196 Cal. App. 3d 1485, 1489-90 (1987)).

VPL and TPI both cite to *Westamerica Bank v. City of Berkeley* for the idea that the plaintiff in an interpleader must allege facts "showing a reasonable probability of double vexation."  201 Cal. App. 4th 598, 608 (2011).  VPL and TPI argue that because the Receiver would not be subject to liability for distributing the Receivership estate in accordance with an order from this Court, the Receiver is not a proper plaintiff in an interpleader action under California law.

The Court agrees that the Receiver would not be subject to liability for distributing the funds in accordance with a court order.  *Westamerica* does not support VPL and TPI's suggestion, however, that an interpleader plaintiff actually must be subject to liability.

In *Westamerica*, the California Court of Appeal affirmed the trial court's dismissal of an interpleader complaint filed by Westamerica Bank, which served as the escrow agent for retention funds deposited by a builder engaged by the City of Berkeley to construct a public library.  201 Cal. App. 4th at 600.  The retention funds consisted of securities that, although deposited by the builder, could be distributed to the City in the event of default by the builder.  *Id*.  After a dispute between the City and the builder, the City demanded the funds, and the builder threatened to sue the bank if the funds were released.  *Id*. at 600-01.  The bank filed an action in interpleader, naming the City and the builder as defendants.  *Id*. at 601.

The Court of Appeal affirmed the trial court's grant of a demurrer on the basis that, although the contractor threatened to sue the bank if the bank did not release the funds to the contractor, there was no "reasonable probability" that the bank would be subject to double liability if it released the funds to one party or the other.  201 Cal. App. 4th at 601.  The court closely analyzed the statutory scheme governing the escrow agreement, which created a mechanism for cities to obtain security deposits to guard against breach by contractors without preventing the contractors from earning interest on their earnings.  *Id*. at 608-612.  Based on the language and legislative history of the statute, the court concluded that there was no real dispute as to who was entitled to disbursal of the funds held in escrow—the City was clearly entitled to immediate distribution upon demand.  *Id*. at 612.  The court held narrowly that "the equitable remedy of interpleader is not available on the facts alleged when taken together with the terms of the escrow agreement."  *Id.* at 613.

VPL and TPI hang their hats on the court's discussion of the escrow agreement's "hold harmless" provision, which provided that the bank could not be sued if it complied with the statutory directive to provide the funds to the City upon demand.  *See* 201 Cal. App. 4th at 609.  But the court's analysis does not support the proposition that an interpleader plaintiff must face the possibility of legal liability.  Rather, the court emphasized the "hold harmless" provision because the provision gave the bank clear guidance that it would only be subject to liability if the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | ED CV 18-2104-DMG (PLAx) | Date | December 2, 2021 |
| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 4 of 10 |

bank refused to release the funds to the City. *Id*. at 609; *accord Placer Foreclosure, Inc. v. Aflalo*, 23 Cal. App. 5th 1109, 1115 (2018) (affirming dismissal of interpleader in light of clear statutory direction regarding how to disburse funds).

A subsequent case distinguishing *Westamerica* has made clear that a threat of suit is not an element of interpleader. *Hood*, 43 Cal. App. 5th at 76 ("At the core of the interpleader procedure is the notion that a 'claimant' is not a defendant from whom affirmative relief is sought." (citations omitted)). The cases cited by the parties opposing interpleader stand for the proposition that there must be a real contest regarding which interpleader defendant owns the property in question. That is the case here.

### B.    Propriety of Interpleading the Deposited Funds

The largest source of funds remaining in the Receivership estate is the approximately $1.2 million USD deposited by TPI (the "Deposited Funds"). At the hearing on this matter, TPI argued that because there are no other claimants in this action who claim ownership of the Deposited Funds, the Deposited Funds should not be included in the interpleader action. TPI is correct that none of the parties in this action contest the ownership of the Deposited Funds. TPI is also correct that the Court previously made preliminary findings regarding TPI's ownership of the Deposited Funds *vis à vis* the parties in this case, and found "insufficient evidence in the current record that either Cardiff is an alter ego of TPI, such that ownership can be imputed to either of them." *See* August 5, 2021 Order at 3 n.1 [Doc. # 640].

The Court made these preliminary findings, however, in the context of considering how this Court would distribute the property remaining in the Receivership estate without overseeing a final claims process. August 5, 2021 Order at 3 (describing the Court's initial proposal for distribution of the remaining Receivership property if no consumer claims process was possible). Moreover, while neither of the parties to this case currently contests TPI's ownership of the Deposited Funds, the FTC noted in the hearing that this is because the FTC considers the issue moot *as to the FTC*. This Court has not made any dispositive findings regarding the ownership of the Deposited Funds. In addition, it is clear that multiple claimants who are not parties to this litigation assert claims to the Deposited Funds. After the Court issued its August 5, 2021 Order, counsel for a number of non-parties interested in the issue of TPI's ownership of the Deposited Funds have filed notices of appearance and applications to appear *pro hac vice* in this case. [Doc. ## 642, 643, 646.] The Receiver reports being approached by the same parties, who wish to assert claims against TPI regarding the Deposited Funds. Final Report at 9-10.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | ED CV 18-2104-DMG (PLAx) | Date | December 2, 2021 |
| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 5 of 10 |

The Receiver has identified a long list of claimants to funds held in the Receivership estate, including the Deposited Funds. An interpleader action[2] that allows all potential claimants an opportunity to assert their claims is the most equitable way to wind up the Receivership. The Court will adopt the Receiver's proposal to interplead the funds remaining in the Receivership estate in state court.

### 3. Reallocation of Receivership Funds

The Receiver proposes reallocating some of the funds remaining in the Receivership estate to do equity as between the parties and non-parties. The Receiver's specific proposals are discussed below.

#### A. Use of the TPI Deposited Funds to Pay for Poujade/TPI-Related Costs

On July 20, 2021, the Court issued an Order regarding Jacques Poujade and TPI's motion for release of the Deposited Funds. [Doc. # 636.] As the Court discussed in that Order, the Court has previously found that the Deposited Funds are Receivership Property. *See id.* at 4. The Court also noted that it has "consistently informed Poujade and TPI that they would litigate the issue of ownership of the Deposited Funds at a post-judgment claims proceeding." *Id*. at 5-6. In that Order, the Court instructed the Receiver to "account for the portion of its past fees associated with litigation over the Deposited Funds as paid from the Deposited Funds." *Id*. at 8.

In its Final Report, the Receiver states that it has accounted for the portion of its past fees associated with litigation over the Deposited Funds as paid from the Deposited Funds. That complies with the Court's July 20, 2021 Order.

TPI argues that this reallocation is inequitable. *See* TPI Response at 6-8. This is essentially a request for the Court to reconsider its prior orders, which the Court declines to do because TPI has not demonstrated that reconsideration is warranted under the applicable standard. *See* C.D. Cal. L. R. 7-18 (limiting grounds for reconsideration to "(a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or (b) the

---

[2] TPI asserts that it "may" not be able to defend itself in a California court because it is not qualified to do business in California. Although a foreign corporation that transacts intrastate business in California without obtaining a certificate of qualification may not "maintain" an action in a California court, *see* Cal. Corp. Code § 2203, TPI does not indicate that it is such a corporation. Even if it is, this restriction does not extend to the defense of an action. *See Conseco Mktg., LLC v. IFA & Ins. Servs., Inc.,* 221 Cal. App. 4th 831, 840 (2013) ("A foreign corporation transacting intrastate business which has failed to qualify with the Secretary of State may nevertheless defend an action brought against it in state court and may also commence an action in state court; it may not, however, maintain an action commenced prior to qualification, except upon the satisfaction of certain conditions.") (citing *United Medical Management Ltd. v. Gatto*, 49 Cal. App. 4th 1732, 1739 (1996)). TPI has not explained why it cannot defend its interests in a California court interpleader action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | ED CV 18-2104-DMG (PLAx) | Date | December 2, 2021 |
| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 6 of 10 |

emergence of new material facts or a change of law occurring after the Order was entered, or (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered."). Two other issues raised by TPI, however, are discussed below.

### i. Propriety of Receivership Fees Charged to Deposited Funds

TPI argues that the Receiver has charged the Deposited Funds for costs that cannot reasonably be attributed to litigation over the ownership of the Deposited Funds. In particular, TPI notes that nearly half the fees the Receiver attributes to TPI were incurred after Jacques Poujade's contempt motion was resolved. TPI also accuses the Receiver of charging TPI for nearly all its activities during this period, even though not all its activities were related to the litigation over the Deposited Funds. TPI Response at 8-9.

TPI's argument is factually incorrect. An order was entered in the Poujade contempt motion on August 27, 2019, but the issue was not resolved with that order. Poujade continued to litigate the issue long afterward, including objecting to the FTC's proposed order regarding the Deposited Funds [*see* Doc. # 226 and associated filings], moving to intervene in this litigation [*see* Doc. # 231 and associated filings], an *ex parte* application seeking modification or a stay of the order [*see* Doc. # 243 and associated filings], an appeal to the Ninth Circuit, briefing on another contempt motion in 2020 [*see* Doc. # 342 and associated filings], and briefing this year on Poujade and TPI's motion for return of the Deposited Funds [*see* Doc. # 576 and associated filings].

TPI does not object to any specific billing entry by the Receiver. Absent any specific objections by TPI, the Court will accept the Receiver's calculation of which litigation costs should be allocated to TPI.

### ii. Reallocation to Redwood

In its Final Report, the Receiver proposes a slight deviation from the Court's July 20, 2021 Order. The Receiver notes that the Court ordered the Receivership fees related to the litigation over the Deposited Funds reallocated to VPL, but asserts that VPL actually paid only a small portion of those fees—only $1,003.90—and instead proposes reallocating those funds to Redwood, the entity which actually paid most of those costs. The Receiver proposes that this approach is more equitable. *See* Final Report at 8.

TPI objects to the reallocation of funds to Redwood on the basis that the Court's August 5, 2021 Order provided that Cardiff funds should be applied first to cover Receivership costs. *See* TPI Response at 4-5 [Doc. # 661]; *see also* August 5, 2021 Order at 3 [Doc. # 640].

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | ED CV 18-2104-DMG (PLAx) | Date | December 2, 2021 |
|---|---|---|---|
| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 7 of 10 |

VPL argues that reallocation of funds to Redwood would be inequitable, since VPL has paid an outsize share of the Receivership costs over the course of the Receivership. VPL argues that the funds should instead be reallocated to VPL.

The Court agrees with the Receiver that reallocating these funds to the parties who initially paid them is the most equitable outcome. The Court previously made clear that TPI funds should be used to pay for some of the Receivership's costs incurred in litigating the ownership of the Deposited Funds. *See* July 20, 2021 Order at 8. While the Court was initially of the impression that most of the Receivership costs incurred in litigating the TPI/Poujade contempt issues were paid from VPL funds, that was factually incorrect. The Receiver has pointed out that most of those costs were paid from Redwood funds. The Receiver has reallocated those funds to the entities which paid those costs, restoring the *status quo ante*.[3] The Court therefore adopts the Receiver's recommendation to reallocate these funds from the Deposited Funds to Redwood.[4]

VPL argues that, if the Court allows reallocation of a portion of the Deposited Funds to reimburse Redwood for Receivership fees, it should also allow for reimbursement of VPL for Receivership fees. VPL makes several arguments regarding who should reimburse those fees, including the FTC and TPI. VPL also submits a declaration from an accountant that purports to trace all the remaining funds in the Receivership estate to VPL. VPL finally argues that the FTC should reimburse VPL for all Receivership costs because the Receivership was invalid from its inception.

The Court disagrees. First, what remains of VPL funds are *the Cardiffs'* share of the VPL funds. Therefore, any claim that Bedi has to those funds must be asserted against the Cardiffs. Second, the Court has previously found that the Receivership was lawful under pre-existing binding Ninth Circuit authority, and VPL's thinly-veiled request for the Court to reconsider its prior orders is unavailing. *See, e.g.*, July 20, 2021 Order at 7.[5] Here, the Court has ordered that

---

[3] The Receiver also notes that reallocating those funds to Redwood allows Inter/Media, a non-party whose claims have been long delayed by this litigation, to assert its claim to those funds. The Court emphasizes that the claims of Inter/Media and other potential creditors will be resolved through the interpleader action, not in this Court. The Court also notes its skepticism regarding Inter/Media's apparent position that it has a claim to all of the Deposited Funds, and not just the amounts reallocated to Redwood by the Receiver's accounting. The Court agrees with Inter/Media, however, that the reallocation should operate *nunc pro tunc* to restore Redwood's position at the time of the initiation of contempt proceedings.

[4] There are three Redwood defendants in this action: Redwood Scientific Technologies, Inc. (California), Redwood Scientific Technologies, Inc. (Nevada), and Redwood Scientific Technologies, Inc. (Delaware). To the extent possible, the Receiver should reallocate funds to the Redwood entity that actually paid the fees in question. If that is not possible, the Receiver should reallocate the funds *pro rata* according to the assets of each entity at the time the fees were paid.

[5] Moreover, although the Court previously suggested that the FTC should be responsible for some of the Receivership's costs, that suggestion was in the context of a post-judgment consumer claims process. *See* July 20,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | ED CV 18-2104-DMG (PLAx) | Date | December 2, 2021 |
|---|---|---|---|
| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 8 of 10 |

TPI should pay for the Receivership costs that it and Jacques Poujade caused, and that the entity which actually paid for those costs should be reimbursed. Because VPL was not the entity that actually paid for those costs, there is no justification for reimbursing VPL from these funds.

**4.     Other Issues**

   **A.     Tax Issues**

The Receiver asserts that tax claims against the Cardiffs are the responsibility of the Receivership estate. *See* Final Report at 7. The Receiver has allocated a $64,279.56 tax claim *pro rata* to three balances the Receiver attributes to the Cardiffs: the VPL, Cardiff, and Biztank balances. *Id.* Inter/Media appears to argue that these claims should be included in the interpleader.

In establishing the Receivership, this Court ordered the Receiver to cooperate with state and federal law enforcement agencies and to prevent the inequitable distribution of assets. *See* Preliminary Injunction at 23-24 [Doc. # 46]. It would not be equitable to allow pre-Receivership claims by governmental entities—with whom the Receiver is bound to cooperate—to be included in the interpleader action. The Court therefore will accept the Receiver's recommendation to charge these claims *pro rata* to the three balances the Receiver attributes to the Cardiffs.

The Receiver notes that it still must prepare and file VPL's 2020 tax return. *See* Final Report at 11. In its status report, VPL explains that it has already prepared and filed its 2020 tax return. *See* October 7, 2021 Status Report [Doc. # 672]. The Court therefore discharges the Receiver's obligation to prepare VPL's 2020 tax return.

   **B.     TPI Machines**

The Receiver suggests in its Reply that machines owned by TPI and currently subject to monitoring by the Receiver should be held in trust for future claimants against TPI. Receiver's Reply at 5-6.

Although the Court previously ordered that the Receiver would have jurisdiction over the machines [*see* Doc. # 238 at 3-4], the machines were not transferred to the Receivership estate to purge Jacques Poujade's contempt. The Court previously found that the FTC had not established that the Cardiffs owned or controlled any of TPI's asserts "either directly or indirectly," except the Deposited Funds. The Receiver also does not identify a mechanism by which these machines could be held in trust after the dissolution of the Receivership. The Court therefore finds that there

---

2021 Order at 7. Because there will be no consumer claims process, the Court will not order the FTC to pay the costs of the Receivership.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | ED CV 18-2104-DMG (PLAx) | Date | December 2, 2021 |
| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 9 of 10 |

is no basis to hold these machines in trust after the Receivership is dissolved and they should be returned to TPI's full possession and control.

**5.     Receiver's Seventh Fee Application and Final Fee Request**

After reallocating funds as discussed above, the Receiver calculated its fees incurred from April 22, 2021 through August 31, 2021 (the "Seventh Fee Application"). The total amount is $226,945.60. The Receiver proposes charging the amount *pro rata* to three balances the Receiver attributes to the Cardiffs: the VPL, Cardiff, and Biztank balances. Final Report at 6.

The Receiver seeks $36,991.80 in fees and $4,469.00 in costs for the Receiver, and $184,028.00 in fees and $1,456.80 in costs for the Receiver's counsel, Frandzel Robins Bloom and Csato, L.C. ("FRBC"). The Court previously approved the Receiver's fees through and including April 21, 2021. [Doc. ## 223, 224, 307, 514, 555, 598.]

The Seventh Fee Application includes 11.3 hours of work by the Receiver relating to researching Defendants' Limelight CRM database, performed at the FTC's request. These hours are attributed to Brick Kane (0.3 hours), Anita Jen (0.1 hours), Flora Jen (10.1 hours), and Tiffany Chung (0.8 hours). Because the Court excluded evidence regarding the Limelight CRM database as a Federal Rule of Civil Procedure 37 discovery sanction [Doc. # 627], the Court finds that it would be unfair to charge the Receivership estate for research relating to this evidence and will deduct these hours from the Receiver's bill. The Court therefore deducts $3,423.15 from the Receiver's fee application.

Moreover, as in prior fee applications, the Court has identified instances of block billing by the Receiver (Anita Jen and Carl DeCius) and FRBC (Craig Welin and Hal Goldflam). Because block billing renders more difficult determinations regarding the reasonableness of the Receiver's fees, the Court will impose a percentage cut, as it has in the past. [*See* Doc. ## 555, 598.] The Court will impose a 5% across the board cut as to the Receiver's and FRBC's fees. The Receiver shall pay itself $31,890.22 in fees and $4,469.00 in costs, and shall pay FRBC $174,826.60 in fees and $1,456.80 in costs. The Court adopts the Receiver's recommendation regarding the source of the fees: the Receiver shall charge its fees to the three balances attributed to the Cardiffs.

The Receiver also estimates that it will incur $68,358.50 in fees from August 31, 2021 until the Receivership estate is wound up. Final Report at 6. The Receiver seeks an order authorizing payment of that amount without a further order from this Court. *See* Final Report, Jen Decl., at ¶ 8 [Doc. # 659-1].

The Court declines to grant the Receiver's final fee request at this juncture. Instead, the Receiver shall post $68,358.50 with the Clerk of Court, to be held in trust for payment of the Receiver's post-judgment final bill. The Receiver shall file its final fee application within 10 days

| | | |
|---|---|---|
| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk KT |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | ED CV 18-2104-DMG (PLAx) | Date | December 2, 2021 |
|---|---|---|---|
| Title | *Federal Trade Commission v Jason Cardiff, et al.* | Page | 10 of 10 |

of completing the wind up of the Receivership. The parties and interested non-parties may file any responses within seven days. The Court will then rule on the Receiver's final fee request. If any amount remains after the Court rules on the Receiver's final fee application, the money will be added to the amount in interpleader.

**6.   Conclusion**

In light of the foregoing,

1. The Court adopts the Receiver's recommendations, except that:
   a. The machines belonging to TPI shall be returned to TPI's possession and control; and
   b. The Receiver is discharged of its obligation to prepare and file VPL's 2020 tax return.
2. The Court approves the Receiver's Seventh Fee Request in the amounts of $31,890.22 in fees and $4,469.00 in costs for the Receiver and $174,826.60 in fees and $1,456.80 in costs for FRBC;
3. The Receiver shall file an interpleader action and dissolve the Receivership, subject to the reallocation of funds described in the Receiver's Final Report and the modifications specified in the above Order;
4. At the time the Receiver files the interpleader action, the Receiver shall submit to this Court a Proposed Order discharging the Receiver;
5. The Receiver shall post $68,358.50 with the Clerk of Court, to be held in trust for payment of the Receiver's post-judgment final bill. The Receiver shall file its final fee application within 10 days of completing the wind up of the Receivership. The parties and interested non-parties may file any responses within seven days. The Court will then rule on the Receiver's final fee request. If any amount remains after the Court rules on the Receiver's final fee application, the money will be added to the amount in interpleader;
6. The Court will enter its Order terminating the asset freeze and Receivership and discharging the Receiver; and
7. The Court will enter the Final Judgment against Jason Cardiff and Eunjung Cardiff, and the Default Judgment as to the Corporate Defendants.

**IT IS SO ORDERED.**